## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL MANUFACTURING
AND ENGINEERING SERVICES
COMPANY, LTD.,

                **Plaintiff,**

    **v.**

SEMICONDUCTOR ENERGY
LABORATORY COMPANY, LTD.,

                **Defendant.**

Case No. 1:06-CV-01230 JDB

## DEFENDANT SEMICONDUCTOR ENERGY LABORATORY COMPANY, LTD.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, defendant Semiconductor Energy Laboratory Company, Ltd. ("SEL") hereby moves for an order of dismissal of the Complaint filed by International Manufacturing and Engineering Services Company, Ltd. ("IMES") against SEL on July 7, 2006.

SEL respectfully requests the Court dismiss IMES' Complaint because IMES has failed to demonstrate that this Court has personal jurisdiction over SEL pursuant to Rule 12(b)(2) or subject matter jurisdiction pursuant to Rule 12(b)(1); nor does IMES have standing to bring this action. SEL additionally requests dismissal of the Complaint because IMES has failed to state any claim upon which relief can by granted by this Court pursuant to Rule 12(b)(6).

This motion to dismiss is based on the accompanying memorandum in support of the motion, submitted herewith, and the exhibits thereto.

Dated: October 13, 2006                    Respectfully submitted,

                                           By: /s/ Michael J. McKeon
                                           Michael J. McKeon (Bar No. 759780)
                                           Brian T. Racilla (Bar No. 473395)
                                           Joshua B. Pond (Bar No. 494722)
                                           FISH & RICHARDSON P.C.
                                           1425 K Street, N.W., 11th Floor
                                           Washington, D.C.  20005
                                           Tel:  (202) 783-5070
                                           Fax:  (202) 783-2331

                                           Counsel for Defendant Semiconductor Energy
                                           Laboratory Company, Ltd.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INTERNATIONAL MANUFACTURING AND ENGINEERING SERVICES COMPANY, LTD.,** | |
| **Plaintiff,** | Case No. 1:06-CV-01230 JDB |
| **v.** | |
| **SEMICONDUCTOR ENERGY LABORATORY COMPANY, LTD.,** | |
| **Defendant.** | |

**DEFENDANT SEMICONDUCTOR ENERGY LABORATORY
COMPANY, LTD.'S MEMORANDUM IN SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................2

I.    THE JAPANESE PARTIES ........................................................................3

II.   PROCEDURAL AND FACTUAL OVERVIEW ............................................4

      A.    The IMES v. Eastman Kodak Complaints ..........................................4

      B.    The IMES v. SEL Complaint ...........................................................4

      C.    The IMES/SEL/Kodak Interference Request.......................................6

ARGUMENT .......................................................................................................6

I.    ANY ONE OF IMES' SEVERAL FAILURES TO DEMONSTRATE THIS
      COURT'S JURISDICTION COMPELS THE DISMISSAL OF IMES'
      COMPLAINT AGAINST SEL...........................................................................6

      A.    IMES' Claims Fail For Lack Of Personal Jurisdiction Because SEL
            Does Not Have A Patent ......................................................................7

      B.    IMES' Claims Against SEL Also Fail For Lack Of Subject Matter
            Jurisdiction ...........................................................................................9

            1.    There Is No Diversity Jurisdiction Because Both IMES And
                  SEL Are Japanese Foreign Aliens Under 28 U.S.C. § 1332......................10

            2.    There Is No Federal Question Jurisdiction Under 28 U.S.C.
                  § 1338(a) Because IMES' Common Law Tort Claims of
                  Unfair Competition And Injurious Falsehood Do Not "Arise
                  Under" The Federal Patent Laws ...........................................................12

            3.    Even If IMES' Claims Arose Under The Patent Laws, They Fail For
                  Lack Of Subject Matter Jurisdiction Because The Patent Office Has
                  Exclusive Jurisdiction To Determine Priority Of Invention Between
                  Competing Patent Applications ...............................................................16

II.   IMES' FAILURE TO DEMONSTRATE STANDING TO BRING THE
      PRESENT ACTION ALSO WARRANTS THE DISMISSAL OF IMES'
      COMPLAINT AGAINST SEL...........................................................................18

A.     IMES Cannot Demonstrate That It Has Suffered An Imminent, Concrete, Or Particularized Injury-In-Fact ........................................................................19

B.     IMES' Alleged Injury Is Not Redressable By This Court ....................................20

III.     FOR EACH OF IMES' COUNTS AGAINST SEL, IMES HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FED. R. CIV. P. 12(b)(6) ..................................................................................................21

A.     IMES Has Failed To State A Claim For Unfair Competition Against SEL ..........22

    1.     IMES' Claim Does Not Fall Within the Extremely Limited Scope Of The Tort Of Unfair Competition From The Misappropriation Of An Intangible Idea.....................................................................................22

    2.     IMES Has Failed To Plead Facts Necessary To Establish Unfair Competition.................................................................................................24

        a.     IMES did not, and cannot, plead an "independent wrongdoing" as required by the law..........................................................................25

        b.     IMES did not, and cannot, plead a "recognized right" in its intangible idea as required by the law............................................27

    3.     To The Extent IMES Has Alleged A Cognizable Claim Of Unfair Competition And This Court Otherwise Has Jurisdiction, It Now Is Barred By The Statute Of Limitations ........................................................29

B.     IMES Has Failed To State A Claim For Injurious Falsehood Against SEL ...........................................................................................................................30

    1.     IMES Did Not, And Cannot, Plead Facts Necessary To Establish Injurious Falsehood's Heightened "Special Damages" Requirement.............................................................................................31

    2.     Plaintiff Did Not, And Cannot, Plead Facts Necessary To Establish SEL's Alleged Falsehood "Concern[ed] Plaintiff's Property Or Product" .................................................................................................33

    3.     To The Extent IMES Has Alleged A Cognizable Claim Of Injurious Falsehood And This Court Otherwise Has Jurisdiction, It Now Is Barred By The Statute Of Limitations.......................................34

CONCLUSION..............................................................................................................................35

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Pages**

*Aetna Life Ins. Co. v. Haworth* .........................................................................21
    300 U.S. 227 (1937)

*Aflex Corp. v. Underwriters Labs., Inc.* .............................................................34
    No. 89-55440, 1990 WL 129482 (9th Cir. 1990)

*Airport Surface Techs., L.L.C. v. FieldTurf, Inc.* ...................................16, 17, 18
    268 F. Supp. 2d 999 (N.D. Ill. 2003)

*Am. Tel. & Tel. Co. v. Integrated Network Corp* ...............................................15
    972 F.2d 1321 (Fed. Cir. 1992)

*Art Metal-U.S.A., Inc. v. United States* .........................................30, 32, 33, 34
    753 F.2d 1151 (D.C. Cir. 1985)

*Bailey v. Grand Trunk Lines New England* ...................................................11
    805 F.2d 1097 (2d Cir. 1986)

*Baker v. Carr* ....................................................................................................19
    369 U.S. 186 (1962)

*Bayles v. K-Mart Corp.* ......................................................................................7
    636 F. Supp. 852 (D.D.C. 1986)

*Blackman v. Hustler Magazine, Inc.* ...........................................................25, 27
    620 F. Supp. 1501 (D.D.C. 1984)

*Bd. of Regents, The Univ. of Texas Sys. v. Nippon Tel. & Tel. Corp.* ...........14, 16
    414 F.3d 1358 (Fed. Cir. 2005)

*Bonzel v. Pfizer, Inc.* ...............................................................................10, 15, 16
    439 F.3d 1358 (Fed. Cir. 2006)

*Browning v. Clinton* ......................................................................................31, 32
    292 F.3d 235 (D.C. Cir. 2002)

*Business Equip. Ctr., Ltd. v. DeJur-Amsco Corp.* ...........................................24
    465 F. Supp. 775 (D.D.C. 1978)

*Calvetti v. Antcliff* ............................................................................................22
    346 F. Supp. 2d 92 (D.D.C. 2004)

*Capon v. Eshhar*..................................................................................................1, 2, 16
    418 F.3d 1349 (Fed. Cir. 2005)

*Catalyst & Chem. Servs., Inc. v. Global Ground Support* .................................22
    350 F. Supp. 2d 1 (D.D.C. 2004)

*Cheney Bros. v. Doris Silk Corp.* ...............................................................23, 28
    35 F.2d 279 (2d Cir. 1929)

*Christianson v. Colt Indus. Operating Corp.*.............................................12, 13
    486 U.S. 800 (1988)

*City of Littleton v. Z.J. Gifts D-4, L.L.C.* .......................................................19
    541 U.S. 774 (2004)

*Confold Pac., Inc. v. Polaris Indus., Inc.*.......................................2, 23, 25, 27
    433 F.3d 952 (7th Cir. 2006)

*Conley v. Gibson* ..............................................................................................21
    355 U.S. 41 (1957)

*Consolidated World Housewares, Inc. v. Finkle* .......................12, 14, 15, 16, 17
    831 F.2d 261 (Fed. Cir. 1987)

*Crow Creek Sioux Tribe v. Brownlee* ...............................................................21
    331 F.3d 912 (D.C. Cir. 2003)

*Curtis v. Time, Inc.*...........................................................................................28
    147 F. Supp. 505 (D.D.C. 1957)

*DAG Enters., Inc. v. Exxon Mobil Corp.* ........................................................24
    No. Civ. A. 00-0182(CKK), 2001 WL 34778782 (D.D.C. Sept. 30, 2001)

*Doe v. State of Israel*.........................................................................................21
    400 F. Supp. 2d 86 (D.D.C. 2005)

*Dove v. Wash. Metro. Area Transit Auth.*.......................................................35
    402 F. Supp. 2d 91 (D.D.C. 2005)

*EEOC v. St. Francis Xavier Parochial Sch.* ....................................................10
    117 F.3d 621 (D.C. Cir. 1997)

*Florida Audubon Soc. v. Bentsen*.........................................................18, 19, 21
    94 F.3d 658 (D.C. Cir. 1996)

*Flotech, Inc. v. E. I. DuPont de Nemours Co.* ...........................................................33, 34
    627 F. Supp. 358 (D. Mass. 1985)

*Fowler v. Curtis Publ'g Co.* ...........................................................................33, 32
    182 F.2d 377 (D.C. Cir. 1950)

*Furash & Co. v. McClave* ...................................................................................24
    130 F. Supp. 2d 48 (D.D.C. 2001)

*FW/PBS, Inc. v. City of Dallas* ...........................................................................19
    493 U.S. 215 (1990)

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas* ..................................... 20, 21
    90 F.3d 479 (Fed. Cir. 1996)

*Golden Palace, Inc. v. Nat'l Broad. Co.* ...............................................30, 31, 32
    386 F. Supp. 107 (D.D.C. 1974), *aff'd without opinion*
    530 F.2d 1094 (D.C. Cir. 1976)

*Henneberry v. Sumitomo Corp. of Am.* ..............................................................18, 34
    415 F. Supp. 2d 423 (S.D.N.Y. 2006)

*Hodgson v. Bowerbank* .......................................................................................11
    9 U.S. 303 (1809)

*Hunter Douglas, Inc. v. Harmonic Design, Inc.* .................................................15
    153 F.3d 1318 (Fed. Cir. 1998)

*Int'l News Service v. Associated Press* ................................................................28
    248 U.S. 215 (1918)

*J & M Sidewinders, Inc. v. Valeo Sylvania, L.L.C.* ............................................29
    No. Civ. 05-40094, 2005 WL 1801987 at *2 (E.D. Mich. July 28, 2005)

*Jim Arnold Corp. v. Hydrotech Sys., Inc.* .........................................................15
    109 F.3d 1567 (Fed. Cir. 1997)

*King & King, Chartered v. Harbert Int'l, Inc.* ..................................................21
    436 F. Supp. 2d 3 (D.D.C. 2006)

*Kokkonen v. Guardian Life Ins. Co. of Am.* .....................................................10
    511 U.S. 375 (1994)

*Lee v. Bankers Trust Co.* ......................................................................................9
    166 F.3d 540 (2d Cir. 1999)

*Lujan v. Defenders of Wildlife* ..................................................................10, 18, 19, 20
    504 U.S. 555 (1992)

*McBride v. Pizza Hut, Inc.* ......................................................................................35
    658 A.2d 205 (D.C. 1995)

*McKevitt v. Pallasch* ...............................................................................................28
    339 F.3d 530 (7th Cir. 2003)

*Midwest Indus., Inc. v. Karavan Trailers, Inc.* ......................................................15
    175 F.3d 1356 (Fed. Cir. 1999)

*Mopex, Inc. v. Am. Stock Exch., LLC* .....................................................................29
    No. 02 Civ. 1656, 2002 U.S. Dist. LEXIS 3532 (N.D.N.Y. 2003)

*Murray v. Gemplus Int'l, S.A.* ...........................................................................13, 20
    No. Civ. A. 02-6265, 2002 WL 32107942 (E.D. Pa. Oct. 29, 2002)

*Naartex Consulting Corp. v. Watt* ..........................................................................11
    722 F.2d 792 (D.C. Cir. 1983),
    *cert. denied*, 467 U.S. 1210 (1984)

*Nachtman v. Jones & Laughlin Steel Corp.* ...........................................................26
    235 F.2d 211 (3rd Cir. 1956)

*Nat'l Patent Devel. Corp. v. T.J. Smith & Nephew Ltd.* .......................................9, 10
    877 F.2d 1003 (D.C. Cir. 1989)

*Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.* ......................................................29
    297 F. Supp .2d 463 (N.D.N.Y. 2003)

*O'Brien v. Westinghouse Elec. Corp.* ......................................................................26
    293 F.2d 1 (3rd Cir. 1961)

*Penigar v. Bell Helicopter Textron, Inc.* .................................................................15
    31 Fed. Appx. 160 (5th Cir. 2001)

*Pratt v. Paris Gas Light & Coke Co.* .......................................................................12
    168 U.S. 255 (1897)

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.* ...........................................7, 8, 9
    332 F. Supp. 2d 63 (D.D.C. 2004)

*Ray v. Proxmire* ......................................................................................................24
    581 F.2d 998 (D.C. Cir. 1978)

*Saadeh v. Farouki* .................................................................................10
    107 F.3d 52 (D.C. Cir. 1997)

*Scanwell Labs., Inc. v. Thomas* ........................................................24
    521 F.2d 941 (D.C. Cir. 1975)

*Slip Track Sys., Inc. v. Metal-Lite, Inc.* ............................................17
    304 F.3d 1256 (Fed. Cir. 2002)

*Speedco, Inc. v. Estes* .......................................................................15
    853 F.2d 909 (Fed. Cir. 1988)

*Totten v. Norton* ...........................................................................10, 11
    421 F. Supp. 2d 115 (D.D.C. 2006)

*Uroplasty, Inc. v. Advanced Uroscience, Inc.* ..................................13
    239 F.3d 1277 (Fed. Cir. 2001)

*Valley Forge Christian Coll. v. Ams. United for* ...............................19
    *Separation of Church & State, Inc.*,
    454 U.S. 464 (1982)

*Vantage Point, Inc. v. Parker Bros., Inc.* .........................................29
    529 F. Supp. 1204 (E.D.N.Y. 1981)

*Whetstone Candy Co. v. Nat'l Consumers League* ..................30, 31, 32
    360 F. Supp. 2d 77 (D.D.C. 2004)

## **STATUTES**

28 U.S.C. § 1332 .......................................................................9, 10, 11

28 U.S.C. § 1338 ...............................................6, 9, 12, 13, 14, 15, 16

35 U.S.C. § 100 ....................................................................................9

35 U.S.C. § 102 ................................................................................1, 16

35 U.S.C. § 135 .........................................................................1, 16, 17

35 U.S.C. § 291 ...................................................................................17

35 U.S.C. § 293 ......................................................................6, 7, 8, 9, 10

District of Columbia Official Code §§ 12-301, 36-401 .........................23, 29, 35

## RULES

Fed. R. Civ. P. 9 .........................................................................................31, 33

Fed. R. Civ. P. 12 ...............................................9, 10, 13, 16, 21, 31, 33, 34

## CONSTITUTIONS

U.S. Const. Art. III.......................................................................................18

## SECONDARY SOURCES

5 Charles Alan Wright & Alan R. Miller, *Federal Practice and Procedure* § 1310 (2d ed. 1990) ...............................................................31

53 C.J.S. *Libel & Slander; Injurious Falsehood* § 322 (2006).........................................31

54 C.J.S. *Limitations of Actions* § 98 (2006) ...................................................29

Dobbs, Dan B., *The Law of Torts* §§ 456, 459 (2000)........................22, 24, 25, 27, 29, 30

*Restatement (Second) of Torts* §§ 623, 633 (1977)......................................................31, 35

*Restatement (Third) of Unfair Competition* § 38 (1995) ...........................................24, 27

## <u>INTRODUCTION</u>

This is a lawsuit filed by one Japanese company against another disputing intangible rights to a patent that may never be granted.  None of the operative facts are alleged to have occurred in the District of Columbia, but rather are alleged to have transpired during a technology conference held in Germany almost five years ago in November of 2001.  In particular, it is alleged that, during the conference, one Japanese professor – Junji Kido – gave a presentation on organic light emitting devices ("OLEDs") and another Japanese professor – Testsuo Tsutsui – filed a patent application in the United States Patent Office claiming Kido's "novel concepts and ideas," concepts and ideas that Kido was purportedly "induced into disclosing" to "dispel the skepticism of his peers" when "Tsutsui pressed him for details and explanations after his presentation had concluded."

There are no allegations of trade secret misappropriation or patent infringement; indeed, the allegations relate to nothing more than unprotected concepts and manufactured questions of inventorship related to patent applications now pending in the Patent Office.  Neither Plaintiff International Manufacturing and Engineering Services Company, Ltd. ("IMES") nor Defendant Semiconductor Energy Laboratory Company, Ltd. ("SEL") has a patent for the "novel concepts and ideas" allegedly misappropriated.  In fact, IMES already has asked the Patent Office to resolve the issue of inventorship in the event the Patent Office eventually determines that (1) these "ideas" are indeed patentable and (2) IMES' and SEL's patent applications actually conflict.  At bottom, this is a matter of pure contingency that is exclusively within the province of the Patent Office, not the province of a district court.[1]

---

[1]  The Patent Office has a long-established procedure for resolving conflicts between two pending patent applications.  It is called an "interference" proceeding and is intended to resolve an issue of who was the first to invent what is claimed in two different applications claiming the same thing. *See* 35 U.S.C. §§ 102(g), 135(a); *Capon v. Eshhar*, 418 F.3d 1349, 1351 (Fed. Cir.

Apparently without thought or investigation, IMES hastily cobbled together and filed this flawed Complaint against SEL alleging counts of unfair competition and injurious falsehood. The Complaint filed in this case is largely cribbed from another filed by IMES six months earlier in a different court against a different company. IMES' Complaint there, in contradiction to its allegation here, alleges that it was Eastman Kodak Company employee Ching Tang, not Professor Tsutsui, who purportedly "pressed" and "tricked" Kido into disclosing the "novel concepts and ideas" and that it was Tang, not Tsutsui, that filed a patent application in the Patent Office.

The allegations in IMES' Complaint are wholly without merit, and the Complaint has been filed merely to stifle SEL's research efforts and impugn the reputation of Dr. Tsutsui, one of Japan's leading scientists. For purposes of this motion, however, it is clear enough that the Complaint is devoid of actionable substance and that IMES' pleading deficiencies—including failures to establish jurisdiction, demonstrate standing, and state a claim upon which relief can be granted by this Court—are dispositive and warrant the dismissal of this case against SEL.

### BACKGROUND

Over the course of 22 pages and more than 120 paragraphs, IMES attempts in vain to plead a legally cognizable claim in its July 7, 2006 Complaint against SEL. While IMES invokes a dizzying array of legal terms—"unjustly enriched," "proprietary information," "trade secret," "confidential information," "pirating," "ongoing attempt to exclude," "constructive trust," and "cloud over...ownership," to name a few,[2] IMES conjures only two claims against

---

2005). An interference proceeding can commence only when the Patent Office determines that the claims in the pending patent application are otherwise patentable. *See Capon*, 418 F.3d at 1351.

[2] "Proliferation of terms is a bane of the law." *Confold Pac., Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 957 (7th Cir. 2006) (J. Posner)

SEL—unfair competition and injurious falsehood, *see* Compl. ¶¶ 74-102, 103-120, respectively—that are based on the same inscrutable recitation of facts.

## I.     THE JAPANESE PARTIES

This Complaint arises from an alleged dispute between IMES and SEL, both of which are Japanese corporations with principal places of business in Japan.  IMES is a Japanese corporation with an "address" located in the Prefecture of Kanagawa, Japan.  Compl. ¶ 2.  SEL is a Japanese corporation with a "principal place of business" also located in the Kanagawa Prefecture of Japan.  *Id.* ¶ 3.  Other than a vague statement that IMES is "authorized to do business" in the United States, IMES has not alleged any further information regarding the parties' contacts with the United States or the District of Columbia.  *Id.* ¶ 2.

Both IMES and SEL are involved in the research and development of light emitting devices (LEDs), semiconductors, and related technologies, and both Japanese corporations are seeking patents in the field of "organic light emitting devices" (OLEDs).  *Id.* ¶¶ 8, 9, 18, 45.  To further its research and development of OLEDs, SEL works with Professor Tetsuo Tsutsui, Ph.D., "a Professor at Kyushu University in Japan" who assigned an OLED patent application to SEL.  *Id.* ¶¶ 45, 101.  Likewise, to further its research and development of OLEDs, IMES works with Professor Junji Kido, Ph.D., "a professor at Yamagata University in Japan" and "independent contractor of IMES in Japan" who assigned an OLED patent application to IMES. *Id.* ¶¶ 9, 18.  The allegedly overlapping information about certain OLED technology in these patent applications is the gravamen of IMES' Complaint against SEL.  *See, e.g.*, *id.* ¶ 1.

II.    **PROCEDURAL AND FACTUAL OVERVIEW**

    A.    **The IMES v. Eastman Kodak Complaints**

IMES' Complaint against SEL is the latest launched by IMES against other companies involved in the research and development of OLED technology. On December 23, 2005, IMES filed a complaint against Eastman Kodak Company ("Kodak") in the Southern District of New York alleging "unfair competition" and "constructive trust" arising from the alleged misappropriation by Kodak and its employee, Ching Tang, of IMES' proprietary ideas and concepts regarding OLED technology from Professor Kido at the November 2001 European Conference On Organic Electronics And Related Phenomena, held in Potsdam, Germany ("the German Conference"). The action was transferred to the Western District of New York on March 29, 2006. On June 30, 2006, IMES filed an amended complaint against Kodak alleging "unfair competition," "injurious falsehood," and "constructive trust" ("Kodak Complaint") arising from the same alleged misappropriation of IMES' so-called proprietary ideas and concepts regarding OLED technology from Professor Kido at the German Conference. The Kodak Complaint is attached hereto as Exhibit A.

    B.    **The IMES v. SEL Complaint**

On July 7, 2006, a few days after filing the amended Kodak Complaint, IMES filed a nearly-identical complaint against SEL in the instant action making the same allegations of "unfair competition" and "injurious falsehood" and seeking a "constructive trust" over SEL's patent applications. *See, e.g.*, Compl. ¶¶ 74-102 (unfair competition), 103-120 (injurious falsehood), 95 (constructive trust). Tellingly, the causes of action asserted against SEL are based on the very same acts alleged by IMES to have been taken by Ching Tang at the German Conference.

Indeed, a comparison of these two complaints reveals that Plaintiff has merely changed (1) the name of the defendant from Kodak to SEL, (2) the defendant's allegedly false filing from "Kodak's U.S. Patent No. 6,872,472" to "SEL's '843 application," and (3) the name of the alleged misappropriator from Ching Tang to Professor Tsutsui. *Compare, e.g.,* Compl. ¶¶ 22-52 *with* Kodak Compl. ¶¶ 22-54 (nearly duplicate descriptions of the details of Tang's and Tsutsui's alleged "misappropriation"). The similarities between the complaints are clearly shown in a document comparison attached as Exhibit B hereto.[3]

As seen from IMES' Complaint against SEL, IMES claims that a "misappropriation" occurred in 2001 at the German Conference. Compl. ¶ 22. The crux of IMES' misappropriation allegation is that Professor Tsutsui "publicly questioned" Dr. Kido who, "in the excitement to dispel the skepticism of his peers," was induced to answer Tsutsui's questions. *Id.* ¶¶ 36-43. Professor Kido's answers allegedly constituted "confidential and trade secret information of IMES" because they were the basis of Professor Kido's U.S. Patent Application No. 10/393,952 ("the '952 application")—an application filed after the German Conference, which he assigned to IMES. *Id.* ¶¶ 18, 77-78. IMES contends this somehow constitutes an "unpermitted [*sic*] appropriation of Plaintiff's Invention" and thus a "wrongful act." *Id.* ¶ 98. IMES asserts that Professor Tsutsui used Dr. Kido's answers to his questions in U.S. Patent Application No. 10/309,843 ("the '843 application"), which Professor Tsutsui assigned to SEL. *Id.* ¶¶ 47, 101. Plaintiff's Complaint alleges this so-called "misappropriation" and use of Plaintiff's idea in a patent application constitutes unfair competition and injurious falsehood. *See, e.g., id.* ¶ 1.

---

[3] While SEL has no opinion on the viability or accuracy of IMES' allegations against Kodak and Dr. Tang, IMES' wholesale copying of its allegations from the Kodak Complaint has resulted in significant legal deficiencies and substantive inaccuracies in this case.

C.    **The IMES/SEL/Kodak Interference Request**

The allegations in IMES' Complaint are simply false and have no basis in fact. In any event, however, any dispute that IMES may have concerning the issue of who actually invented the subject matter at issue should be resolved in the Patent Office, not in a district court. IMES has tacitly acknowledged this point—by filing papers on March 3, 2005, attached hereto as Exhibit C, "Suggesting An Interference" in the Patent Office between the '843 application and the '952 application. The request also seeks to have the Patent Office resolve the question of inventorship vis-à-vis Kodak as well. We discuss this in more detail below.

## ARGUMENT

IMES' Complaint suffers from numerous deficiencies that are fatal to the continuation of this action—including failures to demonstrate that this Court has jurisdiction over the matter at hand, that IMES has standing to bring the asserted causes of action against SEL, and that IMES has asserted claims upon which relief can be granted—each of which independently support SEL's motion to dismiss IMES' Complaint.

I.    **ANY ONE OF IMES' SEVERAL FAILURES TO DEMONSTRATE THIS COURT'S JURISDICTION COMPELS THE DISMISSAL OF IMES' COMPLAINT AGAINST SEL**

IMES' Complaint names a defendant and alleges two causes of action over which this Court has no personal jurisdiction, no subject matter jurisdiction, and no original jurisdiction *ab initio*. First, defendant SEL does not have a patent related to IMES' alleged causes of action, as required by the federal patent long-arm statute, 35 U.S.C. § 293, that is the sole basis relied upon by IMES in its attempt to establish personal jurisdiction over SEL. Next, IMES has failed to demonstrate subject matter jurisdiction, because there is no diversity of citizenship between the two Japanese parties and neither of the causes of action alleged by IMES against SEL arise under the patent laws pursuant to 28 U.S.C. § 1338(a). Lastly, because IMES is seeking what amounts

6

to an interference proceeding, IMES is precluded from bringing this action before this Court until it has exhausted all of its remedies in the Patent Office.  Each of these grounds independently supports SEL's motion to dismiss.

### A.    IMES' Claims Fail For Lack Of Personal Jurisdiction Because SEL Does Not Have A Patent

It is well established that the plaintiff bears the burden of establishing personal jurisdiction over the defendant by alleging "specific facts" in the complaint on which personal jurisdiction can be based; conclusory allegations are insufficient.  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 332 F. Supp. 2d 63, 66 (D.D.C. 2004) (citation string omitted) (granting motion to dismiss for lack of personal jurisdiction); *see also Bayles v. K-Mart Corp.*, 636 F. Supp. 852, 853-54 (D.D.C. 1986) (granting motion to transfer for lack of personal jurisdiction). In this case, IMES claims this Court has personal jurisdiction over SEL solely on the basis of a federal long-arm statute codified at 35 U.S.C. § 293.[4]  Compl. ¶ 5.  In particular, Section 293 states:

> Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be ***served process or notice of proceedings affecting the patent or rights thereunder***. If the person designated cannot be found at the address given in the last designation, or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

35 U.S.C. § 293 (2005) (emphasis added).

The plain language of the statute provides the U.S. District Court for the District of Columbia personal jurisdiction over a foreign "patentee" for cases "affecting the patent or rights thereunder."  *Id.*   As summarized by this Court,

---

> [Section 293] confers on the United States District Court personal jurisdiction over *patentees* who do not reside in the United States if the foreign *patentee* fails to designate in writing a person in the United States for receipt of process, or if that person cannot be found, *and* the claims at issue in the case respect[ing] the foreign patentee's *patent or rights thereunder*.

*Purdue Research*, 332 F. Supp. 2d at 66 (emphasis added).  This Court further clarified the scope of the long-arm statute by finding it "may exercise personal jurisdiction *only if* the dispute may be characterized as 'respecting [the nonresident's] *patent or rights thereunder*." *Id.* at 70 (emphasis added).

However, despite the clear language of Section 293, IMES fails to allege that SEL is a "foreign patentee" with a "patent or rights thereunder" related to IMES' claims at issue in this case.  *See* Compl. *passim*.  The absence of these critical allegations is telling, and this fatal deficiency cannot be corrected by IMES because no such SEL patent exists.  Indeed, IMES concedes this very point at the beginning of its Complaint when it describes the nature of its action against SEL as arising from

> SEL's actions in misappropriating the proprietary ideas and concepts of plaintiff IMES and using those ideas and concepts to file *certain patent applications* that are based substantially, if not entirely, upon those ideas and concepts.  Those *patent applications* filed by SEL have caused the diminution in value of Plaintiff's Invention and of Plaintiff's corporation as a whole.

Compl. ¶ 1 (emphasis added).

IMES' attempt to expand the jurisdictional scope of Section 293 into the amorphous and inscrutable realm of patent applications should be rejected because it is contrary to both the plain language of Section 293 and statutory definitions provided in Title 35 of the United States Code.  The scope of the statute plainly is limited to those cases involving a "patent" or rights attached to such patent (*i.e.*, "rights thereunder"), and because there is no "clearly expressed legislative intention to the contrary," the actual language of Section 293 should be "regarded as conclusive."

*Nat'l Patent Devel. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1008 (D.C. Cir. 1989) (citation string omitted) (examining the legislative history of Section 293).

Additionally, the extension of Section 293 to cover a defendant that merely owns an application for a patent directly conflicts with the statutory definition of "patentee" as being "not only the patentee to whom ***the patent was issued*** but also the successors in title to the patentee." 35 U.S.C. § 100 (emphasis added).  Such attempts to distort the meaning and scope of a statute are prohibited.  *See*, *e.g.*, *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir.1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation and that judicial review must end at the statute's unambiguous terms." (citations omitted)).

Because the case filed by IMES respects only certain patent applications currently pending before the Patent Office and not any patents that have been issued to SEL, IMES cannot rely on Section 293 to demonstrate personal jurisdiction over SEL, and IMES' Complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  *See, e.g.*, *Purdue Research*, 332 F. Supp. 2d at 70-71.

**B.      IMES' Claims Against SEL Also Fail For Lack Of Subject Matter Jurisdiction**

According to the Complaint "[t]his Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship)" and "28 U.S.C. § 1338(a) (arising under the patent laws)."  Compl. ¶¶ 4, 6.  To the contrary, there is no diversity jurisdiction because both IMES and SEL are Japanese foreign aliens under 28 U.S.C. § 1332 (2006), and neither of Plaintiff's common law tort claims of unfair competition or injurious falsehood "aris[e] under" the Federal patent laws as required for "Federal Question" jurisdiction under 28

U.S.C. § 1338(a) (2006).  Accordingly, this action must be dismissed under Fed. R. Civ. P.

12(b)(1) and 12(h)(3).[5]

     **1.**       **There Is No Diversity Jurisdiction Because Both IMES And SEL Are
Japanese Foreign Aliens Under 28 U.S.C. § 1332**

Section 1332 grants diversity jurisdiction to federal courts only in cases between:

(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state;
(3) citizens of different States and in which citizens or subjects of a foreign state
are additional parties; and
(4) a foreign state…as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

When a suit is pending solely between two parties and both parties are citizens of a

foreign state, the suit cannot be heard in federal court under diversity.  *See* 28 U.S.C. § 1332,

*supra*; *Saadeh v. Farouki*, 107 F.3d 52, 60 (D.C. Cir. 1997) (noting the "longstanding rule that

complete diversity is destroyed in lawsuits between aliens"); *Bonzel v. Pfizer, Inc.*, 439 F.3d

1358, 1361 (Fed. Cir. 2006) (explaining that section 1332 "does not confer federal jurisdiction

---

[5]  The legal contours under the rules of dismissal are well understood.  "When it appears by
suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the
court shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Because federal courts have limited
jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v.
Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  On a motion to dismiss for lack of
subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of
establishing that the court has subject-matter jurisdiction.  *See Lujan v. Defenders of Wildlife*,
504 U.S. 555, 561 (1992); *Totten v. Norton*, 421 F. Supp. 2d 115, 121-22 (D.D.C. 2006)
(granting motion to dismiss).  This burden applies equally to a plaintiff that files a complaint in
which its assertion of personal jurisdiction is based on Section 293.  *See Nat'l Patent Dev. Corp.
v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1009 (D.C. Cir. 1989) (en banc).  The Court must
construe the plaintiff's complaint liberally, and the plaintiff should receive the benefit of all
favorable inferences that can be drawn from the facts alleged in the complaint.  *EEOC v. St.
Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).  However, when
resolving a Rule 12(b)(1) motion, plaintiff's factual allegations will bear closer scrutiny and the
Court "need not accept legal conclusions as true."  *Totten*, 421 F. Supp. 2d at 122.

when foreign entities oppose each other"); *Hodgson v. Bowerbank*, 9 U.S. 303 (1809) (holding

federal court has no jurisdiction over a case between two aliens).

Here, IMES and SEL are both foreign alien corporations because (i) neither is

"incorporated" in the United States and (ii) neither has a "principal place of business" in the

United States. *See* 28 U.S.C. 1332(c)(1) (stating these two bases upon which a corporation

"shall be deemed to be a citizen of any State"). IMES' and SEL's alien status is clear from the

Complaint, in which IMES alleges: "SEL is a Japanese corporation with a principal place of

business" in the Prefecture of Kanagawa, Japan and "IMES is a Japanese corporation" also

located in Kanagawa. *See* Compl. ¶¶ 2-3. While the Complaint adds that IMES is "authorized to

do business in the United States;" this falls short of Section 1332(c)(1)'s requirement that IMES

have a "primary place of business" here and thus places IMES' Complaint outside of the

jurisdiction of this Court.[6] *See, e.g.*, *Bailey v. Grand Trunk Lines New England,* 805 F.2d 1097,

1100-01 (2d Cir. 1986) (holding Canadian corporation with its primary worldwide place of

business in Canada was an alien for purposes of diversity, not a citizen of its primary American

place of business).

Plaintiff's failure to establish diversity of citizenship is grounds for dismissal. *Naartex

Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210

(1984).

---

[6] IMES' claim of diversity of citizenship appears to be an artifact from IMES' wholesale copying of its Kodak. Complaint in this action. In the Kodak Complaint, IMES asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because IMES is a Japanese corporation and Kodak is a New Jersey corporation with a principal place of business in New York. IMES' admission in the Kodak Complaint further demonstrates there is no diversity of citizenship to support subject matter jurisdiction in this case. *See Totten*, 421 F. Supp. 2d at 122 (explaining that a "court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case").

2.    **There Is No Federal Question Jurisdiction Under 28 U.S.C. § 1338(a) Because IMES' Common Law Tort Claims Of Unfair Competition And Injurious Falsehood Do Not "Arise Under" The Federal Patent Laws**

Section 1338(a) states:

> [D]istrict courts shall have original jurisdiction of any civil action ***arising under*** any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.  Such jurisdiction shall be exclusive of the court of the states in patent, plant variety protection and copyright cases.

28 U.S.C. § 1338(a) (2006) (emphasis added).

While Section 1338(a) "vests a district court with jurisdiction of any civil action arising under any Act of Congress relating to patents," the Federal Circuit has explained that "the mere presence of a patent issue cannot of itself create a cause of action arising under the patent laws." *Consolidated World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987) (transferring appeal for lack of subject matter jurisdiction under 1338(a)).  The Supreme Court succinctly stated the jurisdictional boundaries set by section 1338(a) in *Christianson v. Colt Industries Operating Corp.*:

> [I]n order to demonstrate that a case is one "arising under" federal patent law "***the plaintiff must set up some right, title or interest under the patent laws***, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws."

486 U.S. 800, 808-09 (1988) (emphasis added) (quoting *Pratt v. Paris Gas Light & Coke Co.*, 168 U.S. 255, 259 (1897)).  The Court then set forth two specific prongs:

> [Section 1338(a) jurisdiction] extends over only to those cases in which a well-pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

*Christianson*, 486 U.S. at 809 (internal citations omitted).

Neither Plaintiff's "Count I (Unfair Competition)" nor "Count II (Injurious Falsehood)" meets the *Christianson* conditions for Section 1338(a) jurisdiction.  *See* Compl. ¶¶ 74-102, 103-120, respectively.  First, as discussed throughout this motion to dismiss, there is ***no patent*** at issue—Plaintiff's Complaint alleges only the misappropriation of an ***idea*** at a conference in Germany and the subsequent filing of a patent ***application*** based on that idea.  Thus there is no "right, title or interest under the patent laws" as required by *Christianson*.  *See, e.g.*, *Murray v. Gemplus Int'l, S.A.*, No. Civ. A. 02-6265, 2002 WL 32107942 at *3-5 (E.D. Pa. Oct. 29, 2002) (granting motion to remand for lack of Section 1338 jurisdiction where patent application had been filed for disputed technology, but no patent had issued, because  "Plaintiff's ownership claim to patent rights is premature.").

Furthermore, the Complaint does not meet either of *Christianson*'s specific prongs.  Both claims are presumably pled as District of Columbia common law torts;[7] thus, federal patent law does not "create" either cause of action.  Nor does the Plaintiff's "right to relief necessarily depend[] on resolution of a substantial question of federal patent law" because patent law is not a "necessary element of one of the well-pleaded claims." *Christianson*, 486 U.S. at 809.

The Federal Circuit provided relevant guidance on this issue in *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001).  In that case, Uroplasty alleged that its former CEO unlawfully filed a patent application as co-inventor of a technology which was actually based on Uroplasty's trade secret.  *Uroplasty*, 239 F.3d at 1279.  The claims at issue in *Uroplasty* were misappropriation of trade secrets, breach of fiduciary duty, and breach of

---

[7]  IMES' Complaint is also deficient under Fed. R. Civ. P. 12(e) because the Complaint is vague and ambiguous—for example, it does not specify which law, state or otherwise, applies to its claims.  Because it was filed in the U.S. District Court for the District of Columbia and because it does not cite any federal or state statute underlying either of its two causes of action, it is presumed for the purpose of this motion to be pled under the common law of the District of Columbia.

contract under Minnesota law. *Id.* Defendant Advanced Uroscience successfully removed the action from state court by citing an interference Uroplasty had attained against the subject patent and arguing that the interference "'called into question whether such Application and Patent make use of or are in any way based upon confidential information and trade secrets of Uroplasty [and]…[b]y the nature of the claimed misappropriation…raised issues relating to an Application for a United States Patent and the issuance of a United States Patent' thereby alleging causes of action under 28 U.S.C. 1338(a)." *Id.* The Federal Circuit rejected this contention and vacated the district court's finding of jurisdiction, holding that while the cited patent "may be evidence in support of Uroplasty's allegations,…*the mere presence of the patent does not create a substantial issue of patent law.*" *Id.* at 1280 (citing *Consol. World Housewares, Inc.*, 831 F.2d at 265).

More recently, the Federal Circuit rejected another attempt to expand the scope of jurisdiction provided by section 1338(a) jurisdiction in *Board of Regents, The University of Texas System v. Nippon Telephone & Telegraph Corp.*, 414 F.3d 1358 (Fed. Cir. 2005). The University of Texas ("UT") claimed that a visiting scientist of Nippon Telephone and Telegraph ("NTT") misappropriated UT's idea for a battery cathode made of $LiFePO_4$ and obtained a Japanese patent based on its idea. *Univ. of Texas*, 414 F.3d at 1360. UT's complaint asserted state law claims that included misappropriation of trade secrets and unfair competition and sought relief that included establishing a constructive trust over the Japanese patent in favor of UT. *Id.* The Federal Circuit held that it lacked jurisdiction and found "the district court erred in holding that it had jurisdiction to hear this case pursuant to 28 U.S.C. § 1338(a)." *Id.* at 1365. "This is so primarily because…patent law issues…are not essential to the resolution of Plaintiff's claim." *Id.* at 1363. One such issue was inventorship:

a determination of the true inventor of LiFePO$_4$ may give rise to future claims regarding the validity of the '382 patent, but *the presence of a possible question of inventorship does not convert the state law action into one arising under the patent laws*.

*Id.* (citing *Consol. World Housewares, Inc.*, 831 F.2d at 265).[8]

Similarly, IMES' claims for unfair competition and injurious falsehood must be dismissed. Both claims hinge on Dr. Tsutsui's alleged misappropriation of Dr. Kido's idea at the German Conference and alleged use of the idea in the subsequent filing of the '843 patent application by SEL. Compl. ¶¶ 74-120. Patent law is not a "necessary element" of either claim—the alleged misappropriation and falsehood could be evaluated, for example, by testimony and evidence about the German Conference and/or Dr. Tsutsui's work in Japan. *See, e.g., Am. Tel. & Tel. Co. v. Integrated Network Corp.*, 972 F.2d 1321, 1322-24 (Fed. Cir. 1992) (holding no Section 1338(a) jurisdiction because no patent issue "necessary" where the asserted claims could be proven by facts and theories "involving no patent question.").[9]

---

[8] *See also Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1362-63 (Fed. Cir. 2006) (affirming dismissal of complaint for lack of Section 1338(a) jurisdiction); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1574 (Fed. Cir. 1997) (remanding with instructions to dismiss for lack of jurisdiction because complaint alleging breach of a patent assignment and royalty agreement does not state a claim arising under the patent laws even though a consequence of finding such a breach may lead to allegations of infringement); *Speedco, Inc. v. Estes*, 853 F.2d 909, 913 (Fed. Cir.1988) (affirming dismissal for lack of jurisdiction; "the fact that patent issues are relevant under state contract law to the resolution of a contract dispute cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws as required to render the jurisdiction of the district court based on section 1338." (internal citation omitted)); *Penigar v. Bell Helicopter Textron, Inc.*, 31 Fed. Appx. 160 (5th Cir. 2001) (remanding with instructions to dismiss for lack of jurisdiction because no federal question jurisdiction existed where Penigar alleged Bell misappropriated trade secrets in creating Bell's V22 Osprey, but had not alleged any related patents).

[9] For several reasons, Plaintiff's claim for injurious falsehood is distinguishable from the injurious falsehood claim of *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). In *Hunter Douglas*, the Federal Circuit found jurisdiction under Section 1338(a), because the allegedly false statement *was* the validity of the issued patent—*viz.*, the defendant had told customers it was the holder of an exclusive right to the invention under its valid patent. *Hunter Douglas*, 153 F.3d at 1329. The only way to prove the falsity of the

Thus, there is no jurisdiction under Section 1338(a) because Plaintiff's unfair competition and injurious falsehood claims do not "arise under" the patent laws. Together with the lack of diversity jurisdiction, this flaw requires the Complaint be dismissed; "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of subject matter, the court *shall* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

> ### 3. Even If IMES' Claims Arose Under The Patent Laws, They Fail For Lack Of Subject Matter Jurisdiction Because The Patent Office Has Exclusive Jurisdiction To Determine Priority Of Invention Between Competing Patent Applications

Even if IMES could demonstrate that either of its claims arise under the patent laws, IMES' Complaint still fails; its claims would then constitute an inventorship dispute between two pending patent applications, which amounts to an interference proceeding that falls outside of the jurisdiction of this Court. A patent interference is an administrative proceeding pursuant to 35 U.S.C. §§ 102(g) and 135(a), conducted for the purpose of determining which of competing patent applicants is the first inventor of common subject matter. *Capon v. Eshhar*, 418 F.3d 1349, 1351 (Fed. Cir. 2005). A district court "does not have original jurisdiction to conduct an interference under Section 1338(a) or under any other statute because the United States Patent and Trademark Office was granted that function exclusively in 35 U.S.C. § 135(a)." *Consolidated World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987); *see also Airport Surface Techs., L.L.C. v. FieldTurf, Inc.*, 268 F. Supp. 2d 999, 1002 (N.D. Ill. 2003)

---

statements made to customers was to show the invalidity of the patent. *Id.* Here, no similar statements have been made by SEL or alleged by IMES. Moreover, no patent has been issued in this case, whereas the claims in *Hunter Douglas* related solely to an issued patent. Furthermore, even if issues akin to inventorship under the patent laws may surface if this case were to proceed, "the presence of a possible question of inventorship does not convert the state law action into one arising under the patent laws." *Bd. of Regents, The Univ. of Texas Sys.*, 414 F.3d at 1363; *see also Bonzel*, 439 F.3d at 1363 ("Indeed, should it come to pass that the court, in deciding whether the contract conditions [that were the subject of the claim] were met, deems it appropriate to apply the law of patent infringement, that of itself does not change the complaint into one arising under the patent law.")

(granting motion to dismiss for lack of subject matter).  Specifically, Section 135(a) states, in

relevant part:

> Whenever an ***application is made for a patent*** which, in the opinion of the
> Director, would interfere with any pending application, or with any unexpired
> patent, an interference may be declared and the Director shall give notice of such
> declaration to the applicants, or applicant and patentee, as the case may be.  The
> ***Board of Patent Appeals and Interferences shall determine*** questions of priority
> of the inventions and may determine questions of patentability.

35 U.S.C. § 135(a) (emphasis added).

As seen from the language above, if a party requests a proceeding to "determine

questions of priority of the inventions" (*i.e.*, an interference), including at least one patent

application, the proceeding must be performed in the first instance by the U.S. Patent Office.  *Id.*;

*see also Consol. World Housewares*, 831 F.2d at 265; *Airport Surface Techs.*, 268 F. Supp. 2d at

1002.[10]  The two counts alleged by IMES in its Complaint—unfair competition and injurious

falsehood—are based upon IMES' allegations that the Kido '952 patent application contains

subject matter common to the Tsutsui '843 patent application.  For example, IMES has alleges:

> 12.   Through months of research and testing, Plaintiff, by and through its agents
> and employees, developed and invented the structure of an OLED that is able to
> attain and exceed 100% quantum efficiency ("Plaintiff's Invention").
>                                          * * *
> 18.   On March 1, 2003, Plaintiff filed a Patent Application Serial No. 10/393,952
> in the United States Patent and Trademark Office ("USPTO") identifying joint
> inventors Kido et al., claiming Plaintiff's Invention ("Kido '952").
>                                          * * *
> 21.   A detailed explanation of Plaintiff's Invention is set forth in the Kido '952
> patent application.
>                                          * * *
> 53.   Essential features of Plaintiff's Invention are recited in the Tsutsui '843
> patent application and in the SEL Derivative Patent Applications.
>                                          * * *

---

[10]   On the other hand, the Patent Office is prohibited from conducting an interference proceeding
between two issued patents, because such a patent-to-patent interference may only be conducted
by a United States district court.  *See Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256,
1264 (Fed. Cir. 2002) (noting interferences between issued patents held in district court; "PTO
procedures do not govern"); 35 U.S.C. § 291 (2005).

86.   Defendant has misappropriated the ideas and concepts forming the basis of Plaintiff's Invention in bad faith.

87.   Defendant used those misappropriated ideas and concepts to file the Tsutsui '843 patent application.

\* \* \*

100.  The Tsutsui '843 patent application and each of the SEL Derivative Patent Applications discloses an invention which embodies, is derived from or is based upon Plaintiff's Invention or the ideas and concepts forming the basis of that invention.

\* \* \*

114.  SEL's misrepresentation and failure to identify the true inventor of the novel ideas comprising Plaintiff's Invention embodied in the Tsutsui '843 patent application and each of the SEL Derivative Patent Applications was a material misrepresentation upon which the USPTO has acted.

*See* Compl. *passim*.  Because, if IMES can demonstrate its claims arise under the patent laws, the "real question at issue" in IMES' Complaint becomes whether Kido or Tsutsui "has priority of invention in the subject matter common to both sets of patent applications," and this is "a question in which jurisdiction lies exclusively with the USPTO."  *Airport Surface Techs.*, 268 F. Supp. 2d at 1002 (citation string omitted).  As such, IMES' Complaint must be dismissed for lack of jurisdiction.

## II.    IMES' FAILURE TO DEMONSTRATE STANDING TO BRING THE PRESENT ACTION ALSO WARRANTS THE DISMISSAL OF IMES' COMPLAINT AGAINST SEL

IMES asks this Court to grant it relief for an alleged dispute (1) over a patent that has not been issued, (2) between parties whose connection to the alleged wrongdoing is remote at best. IMES thus lacks standing under Article III's limitation of federal courts' jurisdiction to justiciable "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Standing is an "'essential and unchanging' predicate" to a Federal court's Article III jurisdiction over tort and all other actions.  *Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 653 (D.C. Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Henneberry v. Sumitomo Corp. of Am.*,

415 F. Supp. 2d 423 (S.D.N.Y. 2006) (holding plaintiff lacked standing for various tort actions including injurious falsehood).

The requirement ensures litigants have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Baker v. Carr*, 369 U.S. 186, 204 (1962). In short, "it is the burden of the party who [seeks standing to sue]…clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled on other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004).

To have constitutional standing, a party must establish that it has "'personally…suffered some actual or threatened injury,' which may be 'fairly…traced to the challenged action' and is 'likely to be redressed by a favorable decision' of the court." *Florida Audubon Soc.*, 94 F.3d at 661 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). Thus, the standing inquiry can be broken down to three elements: injury-in-fact, traceability, and redressability. *See id.* at 663. While none of the three can be sustained here, we focus on the lack of injury-in-fact and redressability.

### A. IMES Cannot Demonstrate That It Has Suffered An Imminent, Concrete, Or Particularized Injury-In-Fact

Proof of "injury-in-fact" requires two components which "illustrate the aims of the entire standing inquiry." *Florida Audubon Soc.*, 94 F.3d at 663. First,

> A prospective plaintiff must show that it has suffered a ***concrete and particularized*** injury in order to convince the court that it is sufficiently involved in the current legal dispute to have a ***defined and personal stake*** in the outcome of the litigation—in other words, that it is a "proper" plaintiff.

*Id.* (citing *Lujan*, 504 U.S. at 581 (Kennedy, J., concurring)) (emphasis added). Second,

A plaintiff must also show that the ***particularized injury is at least imminent*** in order to reduce the possibility that a court might unconstitutionally render an advisory opinion by "***deciding a case in which no injury would have occurred at all.***"

*Id.* (quoting *Lujan*, 504 U.S. at 564 n.2) (emphasis added).

IMES is not a "'proper' plaintiff" because it does not have an "imminent" or "concrete and particularized" injury. In *GAF Building Materials Corp. v. Elk Corp. of Dallas*, the Federal Circuit affirmed dismissal of plaintiff GAF's complaint alleging a dispute over a pending patent application:

[I]t is clear that GAF's complaint did not present a justiciable case or controversy under Article III…when it was filed. The complaint alleged a dispute over the validity and infringement of a possible ***future*** patent not then in existence. The district court did not know with certainty whether a patent would issue or, if so, what legal rights it would confer upon Elk.

90 F.3d 479, 482 (Fed. Cir. 1996) (emphasis in original); *see also Murray v. Gemplus Int'l, S.A.*, No. Civ. A. 02-6265, 2002 WL 32107942, at *4 (E.D. Pa. Oct. 29, 2002) (holding claim not justiciable where "plaintiff seeks a declaration that he owns all patent rights to technology for which no patents have issued").

In this case, IMES' alleged injury also arises from statements contained in a patent ***application still pending*** before the Patent Office. *See, e.g.*, Compl. ¶¶ 65-73. Because neither the parties nor the Court can know with certainty whether either of the subject Tsutsui or Kido patent applications will issue or, if so, what legal rights (*e.g.*, the scope of the invention actually recited in the claims of the issued patents) they will confer upon their assignees, IMES cannot demonstrate an "imminent" or "concrete and particularized" injury. *See, e.g.*, *GAF Bldg. Materials*, 90 F.3d at 482 (finding dispute to be "purely hypothetical and call[ing] for an impermissible advisory opinion").

**B.    IMES' Alleged Injury Is Not Redressable By This Court**

The element of redressability "assures that proper parties have brought their dispute to

the proper branch of the federal government." *Florida Audubon Soc.*, 94 F.3d at 663.

Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision" of the Court. *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d

912, 916 (D.C. Cir. 2003). As noted above, because there are no issued patents to define the

scope of the parties' rights, the present dispute is "purely hypothetical and call[s] for an

impermissible advisory opinion," such that this Court is unable to "provide[] 'specific relief

through a decree of a conclusive character.'" *GAF Bldg. Materials Corp.* , 90 F.3d at 482 (citing

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)). Indeed, as detailed above in Section

I.C, this is not the proper forum by which to clear any alleged "cloud over IMES' ownership of

Plaintiff's Invention"—an interference proceeding before the Patent Office is the proper forum.

**III.    FOR EACH OF IMES' COUNTS AGAINST SEL, IMES HAS FAILED TO
STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FED. R.
CIV. P. 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46,

(1957); *see also King & King, Chartered v. Harbert Int'l, Inc.*, 436 F. Supp. 2d 3, 9 (D.D.C.

2006) (granting motion to dismiss). Under this Rule, the plaintiff's factual allegations must be

presumed true and should be liberally construed in his or her favor. *King & King*, 436 F. Supp.

2d at 9. However, "this standard does not mandate blind and absolute deference," and the Court

"is not required to accept as true those legal conclusions or inferences drawn by plaintiffs that are

not supported by the facts recited in the complaint." *Doe v. State of Israel*, 400 F. Supp. 2d 86,

100 (D.D.C. 2005) (granting motion to dismiss). Additionally, a plaintiff "may not amend [its]

complaint through [its] opposition papers." *Id.* (citing *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004)).

### A.    IMES Has Failed To State A Claim For Unfair Competition Against SEL

#### 1.    IMES' Claim Does Not Fall Within The Extremely Limited Scope Of The Tort Of Unfair Competition from The Misappropriation Of An Intangible Idea

As noted earlier, IMES employs a multitude of imprecise terms of differing legal import—such as, "proprietary information," "trade secret," "confidential information," "unjust[] enrich[ment]," and "pirating"[11]—in its unsuccessful attempt to articulate a claim of unfair competition against SEL. The essence of IMES' allegation, however, is that SEL somehow "misappropriated" an intangible idea belonging to IMES and used it to file a patent application. *See, e.g.*, Compl. ¶¶ 88, 90, 96-98.

Even a cursory review of IMES' allegations reveals the weaknesses and non-viability of its claim against SEL. For example, how does IMES assert SEL "pirated" IMES' alleged idea? It was not by the breach of a special relationship, nor by the use or threat of physical or other harm, but amazingly through Dr. Tsutsui's "public questioning" of Dr. Kido at a scientific conference. Dr. Kido himself provided the so-called "confidential and trade secret information of IMES" when he "answered Tsutsui's questions" in his "excitement to dispel the skepticism of his peers." *See, e.g.*, Compl. ¶¶ 77, 78.

Next, what does IMES allege SEL pirated? It cannot be a trade secret—despite the Complaint's invocation of the term, "[t]rade secret protection is lost when the secret becomes publicly or widely known, either because of the plaintiff's divulgence or in spite of the plaintiff's best efforts to keep it secret." Dan B. Dobbs, *The Law of Torts* § 459 (2000); *see also Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 8-9 (D.D.C. 2004)

---

[11] See, e.g., Compl. ¶¶ 1, 10, 16, 72, 78, 79, 88, 90, 95, 97, 101.

("information must be secret" for protection as a trade secret under D.C. Code § 36-401; "[T]he hallmark of a trade secret is not its novelty but its secrecy.").  IMES' own Complaint alleges the so-called "confidential and trade secret information" was disclosed publicly in 2001 at the German Conference, as well as in patent applications.  *See, e.g.*, Compl. ¶¶ 17, 82.  Nor is the "idea" protected by a patent—the Patent Office has granted neither IMES' nor SEL's applications.  *See, e.g., id.* ¶¶ 18, 45 (referring to IMES' and SEL's applications).  The best description of the allegedly "pirated" subject matter that Plaintiff can muster is "Plaintiff's Invention and the ideas and concepts that form the basis of that invention," which "constitute intangible property that belongs to Plaintiff."  *Id.* ¶ 96.

There is no legal claim for a "misappropriation" of such an intangible idea:

> In general, if information is not a trade secret and is not protected by patent, copyright, or some other body of law that creates a broader intellectual property right than trade secrecy does, ***anyone is free to use the information without liability***.

*Confold Pac., Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 959 (7th Cir. 2006) (J. Posner) (emphasis added).  Judge Learned Hand similarly noted: "In the absence of some recognized right at common law, or under the statutes—and the plaintiff claims neither—a man's property is limited to the chattels which embody his invention.  Others may imitate these at their pleasure." *Cheney Bros. v. Doris Silk Corp.*, 35 F.2d 279, 280 (2d Cir. 1929) (affirming dismissal of an unfair competition claim).

The *Restatement of Unfair Competition* elaborates on the reasoning behind the law's carefully limited protection:

> [R]ights in intangible trade values such as ideas, innovations, and information have been created primarily through legislation.  The patent and copyright statutes illustrate the intricacy required to harmonize the competing public and private interests implicated in the recognition of rights in intangible trade values.  Both

statutes contain elaborate mechanisms intended to balance the interests in
protection and access.

*Restatement (Third) of Unfair Competition* § 38 (1995).  As a result, "**rights in intangibles must**

**depend upon independent wrongdoing** such as fraud, breach of confidence as in the case of

trade secrets, [or] infringement of the time-delimited monopolies of patent and copyright

statutes."  Dobbs, *The Law of Torts* § 456 (emphasis added).  These general principles constrain

the tort of unfair competition:

> The common law of unfair competition has generally recognized rights against
> the appropriation of intangible trade values *only when* the recognition of such
> rights is supported by other interests that justify protection, ***and then only when***
> the scope of the resulting rights can be clearly defined.  The protection of trade
> secrets, for example reflects the established interests in preserving confidential
> relationships and promoting physical security.….In the absence of such additional
> interests, **the common law has resisted the recognition of general rights against
> the appropriation of information and other intangible trade values**.

*Restatement (Third) of Unfair Competition* § 38 (emphasis added).

### 2.    IMES Has Failed To Plead Facts Necessary To Establish Unfair Competition

The D.C. Circuit Court of Appeals has recognized "the tort of unfair competition is a

somewhat anomalous creature" that is "*limited in scope* in a free market economy based on free

and open competition for business."  *Ray v. Proxmire*, 581 F.2d 998, 1002 (D.C. Cir. 1978);[12]

*Scanwell Labs., Inc. v. Thomas*, 521 F.2d 941, 949 (D.C. Cir. 1975).  Under District of Columbia

law, "[u]nfair competition is not defined in terms of specific elements, but by the description of

various acts that would constitute the tort if they resulted in damage."  *Furash & Co., v.*

*McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001) (citing *Business Equip. Ctr., Ltd. v. DeJur-*

*Amsco Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1978)); *see also DAG Enters., Inc. v. Exxon Mobil*

---

[12] The Court noted further that unfair competition's "limited scope" includes three categories:
"[1] passing off one's goods as those of another, [2] engaging in activity designed solely to
destroy a rival and [3] using methods themselves independently illegal."  *Ray*, 581 F.2d at 1002.

*Corp.*, No. Civ. A. 00-0182(CKK), 2001 WL 34778782 (D.D.C. Sept. 30, 2001).  While unfair

competition arising from such acts may not be defined in terms of specific elements under

District of Columbia law, the tort *is* subject to the two fundamental requirements—there must be

(1) an "independent wrongdoing" that is (2) related to a "recognized right" where an intangible

idea is at issue.  Plaintiff fails to establish either of these requirements.

**a.    IMES did not, and cannot, plead an "independent wrongdoing" as required by the law**

"Rights in intangibles must depend upon independent wrongdoing such as fraud, breach

of confidence…, [or] infringement."  Dobbs, *The Law of Torts* § 456.  Unlike here, the

"independent wrongdoing" is clear in cases finding unfair competition.  For example, in

*Blackman v. Hustler Magazine, Inc.*, 620 F. Supp. 1501, 1503 (D.D.C. 1984), plaintiff

photographer Barry M. Blackman had taken nude photographs of Ms. Elizabeth Ray in 1972;

when Ms. Ray later became the subject of "widespread, virtually unrelenting national publicity"

focused on her relationship with a U.S. Congressman, Blackman entered into negotiations with

Hustler Magazine for the publication of the copyrighted photos.  Despite a breakdown in the

negotiations, Hustler published the photographs—copies of which it had obtained during the

failed negotiations—on three different occasions without crediting or fully compensating

Blackman.  *Id*.  The D.C. District Court held "Hustler's misappropriation and publication of the

photographs…constitutes unfair competition….The law of unfair competition is not only a

bulwark against this representation; it is the protector, also against misappropriation."  *Id*. at

1514.  Importantly, the Court noted independent wrongdoing:

> When Hustler elected to publish Blackman's photographs, it ***infringed Blackman's copyrights*** and acted in unfair competition….in the face of immediate and expressed notice (heard but ignored) that authority was lacking…; it continued its illegal pursuit to publication….As ***Hustler acted in conscious disregard of Blackman's rights, its actions were deliberate, intentional, malicious and wanton***.

25

*Id*. at 1515 (emphasis added).

On the other hand, claims for misappropriation of intangibles fail where there is no independent wrongdoing.  In *Confold Pacific, Inc. v. Polaris Industries, Inc.*, 433 F.3d 952, 959 (7th Cir. 2006) (J. Posner), Confold claimed recovery for unjust enrichment where Polaris allegedly used a design for a snowmobile shipping container that Confold had suggested.  The Seventh Circuit held Confold had no contract, patent, or trade secret protection against such a complaint, and no other applicable protection existed under the law:

> Confold argues…that the common law of Minnesota imposes liability for such use if the defendant got hold of the information improperly.  The argument is difficult to understand; if the information is not secret and not protected by any of the laws that create property rights in information, ***it is in the public domain and freely usable*** without need to commit a tort or a breach of contract to obtain it.

*Id.* (emphasis added).

Likewise, in *O'Brien v. Westinghouse Elec. Corp.*, 293 F.2d 1, 14 (3rd Cir. 1961), the Third Circuit held there was no independent wrongdoing and thus no unfair competition where a plaintiff employee submitted a suggestion to his defendant employer as part of a company program; "the die making method involved was not submitted in confidence or misappropriated."  And, in *Nachtman v. Jones & Laughlin Steel Corp.*, 235 F.2d 211, 214 (3rd Cir. 1956), there was no wrongful misappropriation of the plaintiff's "electrotinning" plan, which he'd freely submitted as a proposal to the defendant, because no "trust relationship between plaintiff and defendant was created by the transaction."  Independent wrongdoing arising from the violation of such a trust relationship was requisite for a finding of wrongful misappropriation.  *See id.*

Similarly, there is no independent wrongdoing here.  The alleged misappropriation occurred when Professor Tsutsui "publicly questioned" Professor Kido and Professor Kido

26

"answered Tsutsui's questions" in such a way that Kido "provided certain confidential and trade secret information of IMES." Compl. ¶¶ 77, 78. Plaintiff claims this is somehow an "unpermitted appropriation" and a "wrongful act." *Id.* ¶ 98. As in *Confold Pacific*, at best "this argument is difficult to understand," because IMES' intangible idea was "not secret and not protected by any of the laws that create property rights in information," thus it was "in the public domain and freely usable without need to commit a tort or a breach of contract to obtain it." *Confold Pac., Inc.*, 433 F.3d. at 957. Unlike *Blackman*, there was no "deliberate, intentional, malicious and wanton" act such as repeated copyright infringement. *Blackman*, 620 F. Supp. at 1515. Instead, as in *O'Brien*, there was no confidence violated and, as in *Nachtman*, there was no trust relationship to be broken. IMES has failed to allege any misappropriation or independent wrongdoing and thus has failed to state a claim for unfair competition. Dismissal of its claims is warranted for this reason alone.

> **b.    IMES did not, and cannot, plead a "recognized right" in its intangible idea as required by the law**

"The primary sources of protection for intangible trade values are the federal patent and copyright laws." *Restatement (Third) of Unfair Competition* § 38 . On the other hand, "the law does not protect general ideas; ideas are free as the air, and competitors may copy as well as breath. The balance of [protection and access] policies is at risk when courts approach intangible rights under novel theories." Dobbs, *The Law of Torts* § 456. Thus, for example, unfair competition may be found where there is a recognized copyright. *See, e.g., Blackman*, 620 F. Supp. at 1503 (noting it was "undisputed that Mr. Blackman has been the sole proprietor of the copyright in the photographs and the sole owner of all right, title and interest in them.") However, recovery for the alleged misappropriation of *Confold Pacific Inc.'s* shipping container design, for example, was not warranted where Confold had no trade secret and no design patent,

because "anyone is free to use the information without liability."  433 F.3d at 958-59; *see also*

*Curtis v. Time, Inc.*, 147 F. Supp. 505 (D.D.C. 1957) (holding no unfair competition by

misappropriation of an idea where plaintiff held no property right in his "Medal of Honor"

cartoon strip).

      IMES has no recognized right in its intangible idea—neither trade secret nor patent—and

thus no claim.  Nor can Plaintiff find refuge in the small minority of cases where liability was

found in the absence of a recognized property right, such as *International News Service v.*

*Associated Press*, 248 U.S. 215 (1918) ("*INS*").  In *INS*, the Supreme Court held International

News Service liable for its paraphrasing of rival Associated Press' east coast newspaper

dispatches in its own west coast papers hours later.  *INS*, 248 U.S. at 229-231, 246.  The *INS*

decision has since been narrowly confined and, in any event, has no bearing here for numerous

reasons.  First, the *INS* decision "no longer is legally authoritative because it was based on the

federal courts' subsequently abandoned authority to formulate common law."  *McKevitt v.*

*Pallasch*, 339 F.3d 530 (7th Cir. 2003) (J. Posner).   Second, *INS* has been limited to its unique

facts, as noted by Judge Learned Hand eleven years after the decision:

> While it is of course true that law ordinarily speaks in general terms, there are
> cases where the occasion is at once the justification for, and the limit of, what is
> decided.  [*INS*] appears to us such an instance; we think that no more was covered
> than situations substantially similar to those then at bar.  The difficulties of
> understanding it otherwise are insuperable.  We are to suppose that the court
> meant to create a sort of common-law patent or copyright for reasons of justice.
> Either would flagrantly conflict with the scheme which Congress has for more
> than a century devised to cover the subject-matter.

*Cheney Bros.*, 35 F.2d at 281.[13]  Thus, "[r]ecent cases,…in recognition of the nebulousness of

[*INS's*] misappropriation doctrine, place tight limitations on it."  *McKevitt*, 339 F.3d at 534.  In

---

[13] *INS* itself indicates the limits of its precedent; "the question of what is unfair competition in
business must be determined with particular reference to the character and circumstances of the

short, the *INS* decision has, "[t]o a very large extent…been superseded." Dobbs, *The Law of Torts* § 456.

In the absence of independent wrongdoing related to a recognized right in IMES' intangible idea, IMES' unfair competition claim must be dismissed.

> **3.    To The Extent IMES Has Alleged A Cognizable Claim Of Unfair Competition And This Court Otherwise Has Jurisdiction, It Now Is Barred By The Statute of Limitations**

To the extent IMES has a claim for unfair competition (which it does not) and this Court otherwise has jurisdiction (which it does not), then the claim cannot stand because it was not made within three years of the filing date of the Tsutsui '843 application. Unfair competition based on misappropriation is subject to the three-year statute of limitations applicable to claims "for an injury to real or personal property." District of Columbia Official Code § 12-301(3); 54 C.J.S. *Limitations of Actions* § 98 (2006) (period of limitation for injuries to real or personal property generally applicable to misappropriation of idea actions).[14]

IMES' three year period commenced at "the time the right to maintain the action accrue[d]." District of Columbia Official Code § 12-301. The Complaint alleges SEL engaged in unfair competition when it misappropriated Plaintiff's idea and then used it to file the '843 application. Compl. ¶¶ 1, 88, 90. Plaintiff thus accrued its right to maintain this claim upon the filing of the '843 application with the Patent office—December 4, 2002. *See Norbrook Labs.*

---

business." 248 U.S. at 236. Clearly, the character and circumstances of the news industry is inapposite here.

[14] *See also J & M Sidewinders, Inc. v. Valeo Sylvania, L.L.C.*, No. Civ. 05-40094, 2005 WL 1801987, at *2 (E.D. Mich. July 28, 2005) (dismissing claim of unfair competition arising from alleged misappropriation of an automobile headlight design idea because it was barred by Michigan's three year statute of limitations for injury to property actions); *Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F. Supp. 1204, 1218 (E.D.N.Y. 1981) (holding inventor's claim that a manufacturer of board games misappropriated his game idea was barred by Massachusetts' three year statue of limitations for injury to property actions).

*Ltd. v. G.C. Hanford Mfg. Co.*, 297 F. Supp. 2d 463, 491 (N.D.N.Y. 2003) (claim for unfair competition accrued when defendant allegedly used and disclosed plaintiff's information in an application submitted to the U.S. Food and Drug Administration); *Mopex, Inc. v. Am. Stock Exch., LLC*, No. 02 Civ. 1656, 2002 U.S. Dist. LEXIS 3532, at * 40-42 (S.D.N.Y. Mar. 4, 2002) (unfair competition claim accrued when defendant used and disclosed plaintiff's information in an SEC filing). Plaintiff filed its Complaint July 7, 2006, well over three years after the '843 filing date. Thus, to the extent an unfair competition claim has been pled in the first instance, it is barred by the statute of limitations.

## B.    IMES Has Failed To State A Claim For Injurious Falsehood Against SEL

IMES fares no better with its injurious falsehood count. The tort of injurious falsehood[15] "is closely related to traditional libel and slander except that the injury is not to personal reputation, but rather to the plaintiff's interest in, or the quality of, the plaintiff's property." *Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 82 n.5 (D.D.C. 2004); *see also Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 n.6 (D.C. Cir. 1985). To state a claim under District of Columbia law for injurious falsehood, a plaintiff must plead the defendant (1) made an unprivileged publication (2) of a false statement (3) concerning plaintiff's property or product (4) that was the proximate cause of pecuniary harm to the plaintiff, (5) with knowledge or reckless disregard of the falsity. *See Art Metal-U.S.A.*, 753 F.2d at 1155 n.6; *Golden Palace, Inc. v. Nat'l Broad. Co.*, 386 F. Supp. 107, 109 (D.D.C. 1974), *aff'd without opinion*, 530 F.2d 1094 (D.C. Cir. 1976); *Whetstone Candy Co.*, 360 F. Supp. 2d at 81.

---

[15] "Injurious falsehood is also known as 'disparagement of property,' 'slander of goods,' or 'trade libel.'" *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 n.6 (D.C. Cir. 1985); *see also Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 83 n.5 (D.D.C. 2004).

IMES' "Count II – Injurious Falsehood" vaguely alleges that "SEL falsely identified Tsutsui as the inventor of the Tsutsui '843 patent application [and the SEL Derivative Patent Applications] which incorporate[] Plaintiff's invention" (Compl. ¶¶ 104, 108) and "SEL's false representation to the USPTO was made with knowledge and/or reckless disregard of the falsity" (Compl. ¶ 112).  *See generally* Compl. ¶¶ 103-20.  IMES' Complaint fatally fails to plead the alleged false publication "was the proximate cause of pecuniary harm" or that it "concern[ed] plaintiff's property or product" and must be dismissed under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted."

## 1.    IMES Did Not, And Cannot, Plead Facts Necessary To Establish Injurious Falsehood's Heightened "Special Damages" Requirement

It is well established that a plaintiff must meet the heightened pleading standard of "special damages" to claim that an alleged false publication "was the proximate cause of pecuniary harm."  *See, e.g., Browning v. Clinton*, 292 F.3d 235, 245-46 (D.C. Cir. 2002); *Fowler v. Curtis Publ'g Co.*, 182 F.2d 377 (D.C. Cir. 1950); *Whetstone Candy Co.*, 360 F. Supp. 2d at 82-83; *Golden Palace Inc.*, 386 F. Supp. at 109-10; *see generally* 53 *C.J.S. Libel & Slander; Injurious Falsehood* § 322 (2006) ("Injury"); *Restatement (Second) of Torts* §§ 623, 633 (1977).[16]

Fed. R. Civ. P. 9(g) requires, "[w]hen items of special damage are claimed, they shall be specifically stated."  As to injurious falsehood, "the plaintiff must allege actual damages with 'particularity' and specify ''facts showing that such special damages were the natural and direct

---

[16] "This heightened pleading standard applies because 'special damages,' unlike general damages, are 'not the necessary consequence of [the] defendant's conduct, [but] stem from the particular circumstances of the case.'"  *Browning*, 292 F.3d at 245 (quoting 5 Charles Alan Wright & Alan R. Miller, *Federal Practice and Procedure* § 1310 (2d ed. 1990)).

result'' of the defendant's conduct." *Browning*, 292 F.3d at 245 (quoting *Fowler*, 182 F.2d at 379).

In *Browning v. Clinton*, Ms. Browning claimed *The New Yorker* perpetrated an injurious falsehood by publishing false, negative comments about her prospective "semi-autobiographical novel" based on her alleged affair with former President William Jefferson Clinton. 292 F.3d at 245-46.[17] The D.C. Circuit affirmed dismissal under Rule 12(b)(6) because Ms. Browning failed to plead special damages:

> A plaintiff can satisfy this pleading obligation by identifying either particular customers whose business has been lost or facts showing an established business and the amount of sales before and after the disparaging publication, along with evidence of causation…. Browning's amended complaint states that "[a]s a proximate result of the publication of [Mayer's article], ... neither [ ] Browning nor Direct Outstanding Creations Corporation were [sic] able to sell the publishing and other rights in the manuscript," and therefore that they suffered damages "including but not limited to marketing and other business expenses incurred ..., loss of goodwill, [and] emotional distress and mental anguish."… ***She neither quantifies her loss nor identifies any lost business relationships. She alleges no facts suggesting causation…. Browning merely asserts in general terms that the New Yorker article cost her financially. We agree with the district court that Rule 9(g) requires more***.

*Browning*, 292 F.3d at 245-46 (emphasis added).[18]

Similarly, IMES has not and cannot plead special damages related to SEL's alleged injurious falsehood. Indeed, IMES' claim is even more deficient than those dismissed in

---

[17] Browning pled her claim as "disparagement of property," another title for the same tort of injurious falsehood. *See Art Metal-U.S.A.*, 753 F.2d at 1155 n.6; *see also Whetstone Candy Co.*, 360 F. Supp. 2d at 83 n.5.

[18] *See also Fowler*, 182 F.2d at 379 (affirming dismissal of injurious falsehood claim for failure to plead special damages where plaintiffs alleged only that, "as a result of the malicious publication," they lost a total dollar amount of business); *Golden Palace*, 386 F. Supp. at 109-10 (dismissing injurious falsehood claim for failure to plead special damages where plaintiff "allege[d] damages, specific to the penny, for lost profits and loss of the use of facilities, but fail[ed] to allege any facts which show that the damages were a direct result of defendant's statements about plaintiff's restaurant."); *Whetstone Candy Co.*, 360 F. Supp. 2d at 82-83 (granting summary judgment that plaintiff's injurious falsehood claim failed for lack of special damages because "mere assertions, not testamentary evidence, has been offered in support of [plaintiff's] claim for damages").

*Browning, Fowler*, *Golden Palace, Inc.*, and *Whetstone Candy Co.*  The Complaint simply repeats vague notions of loss, devoid of any specific allegations of cause or amount.  For example, IMES alleges its damages as follows:

> 67.   Plaintiff's Invention is the primary asset that constitutes a substantial portion of its corporate value….SEL's filing of the Tsutsui '843 patent application and, in particular, the publication of that application…had serious adverse financial effects on Plaintiff.

> 68.   SEL's unauthorized appropriation of Plaintiff's Invention and the ideas and concepts on which the invention is based, SEL's filing of the Tsutsui '843 patent application, and, in particular, the publication of that patent application and the filing of the SEL Derivative Patent Applications all have caused the diminution in value of Plaintiff's Invention and of Plaintiff corporation as a whole.

*See generally* Compl. ¶¶ 65-73, 103-120.

IMES' vagueness culminates with the conclusion, "Plaintiff has been damaged in an amount to be determined at trial" (Compl. ¶¶ 73, 120), followed by an equally unspecified claim for "monetary damages in excess of $30 million and in an amount to be determined at trial." Compl. at  20.  Like *Browning*, IMES here "merely asserts in general terms" that SEL's alleged falsehood has "cost [it] financially."  Rule 9(g) requires more for pleading special damages in a claim for injurious falsehood, and IMES' claim cannot survive Rule 12(b)(6) review.

**2.      Plaintiff Did Not, And Cannot, Plead Facts Necessary To Establish SEL's Alleged Falsehood "Concern[ed] Plaintiff's Property Or Product"**

Tsutsui's statement that he is the inventor of his '843 patent application cannot be an "injurious falsehood" because it is not concerning IMES' property or product.  *See, e.g.*, *Art Metal-U.S.A.*, 753 F.2d at 1155 n.6 (requiring alleged falsity be "concerning plaintiff's property or product").  Statements regarding one's own property or products are not actionable by others under the tort of injurious falsehood.  *See Flotech, Inc. v. E. I. DuPont de Nemours Co.*, 627 F. Supp. 358, 370-71 (D. Mass. 1985).

In *Flotech, Inc.  v. E. I. DuPont de Nemours Co.*, the court granted summary judgment against Flotech, a producer of motor oil additives, where Flotech claimed harm stemming from a DuPont press release that stated DuPont would no longer supply the active ingredient in such motor oil additives because DuPont had found the ingredient not useful in motor oil.  *Id.*  In particular, the court found that such statements in "the press release, in form and substance, cannot be regarded as 'of and concerning'" Flotech's oil products.  *Id.* at 370-71; *see also Henneberry v. Sumitomo Corp. of America*, F. Supp. 2d 423, 472-73 (S.D.N.Y. 2006) (dismissing claim where alleged falsehoods "do not speak to the quality of plaintiff's goods or services at all."); *Aflex Corp. v. Underwriters Labs., Inc.*, No. 89-55440, 1990 WL 129482 at *4-5 (9th Cir. 1990) (affirming summary judgment of no injurious falsehood where the alleged falsehood is about the products of plaintiff's competitor and not of the plaintiff itself).

Just as DuPont's alleged falsity was "concerning" its own product rather than Flotech's product, so too is Tsutsui's statement concerning his own '843 application.  "Consequently, because plaintiff fails to plead an essential element of this claim, the claim is not colorable and would thus not survive a motion to dismiss."  *Henneberry*, 415 F. Supp. 2d at 473.

**3.     To The Extent IMES Has Alleged A Cognizable Claim Of Injurious Falsehood And This Court Otherwise Has Jurisdiction, It Now Is Barred By The Statute of Limitations**

IMES' injurious falsehood claim also fails under Fed. R. Civ. P. 12(b)(6) because it was not asserted within one year of the filing of the Tsutsui '843 application.  "Claims for injurious falsehood…are claims arising out of libel [or] slander" and are thus subject to the District of Columbia's one year statue of limitations for libel or slander.  *Art Metal-U.S.A., Inc.*, 753 F.2d at 1157 (internal citations omitted) (noting further that defamation and injurious falsehood are "closely related," and "changes in the law of defamation have further minimized the common

law distinction between the torts."); District of Columbia Official Code § 12-301(4) (one year statute of limitations for libel and slander claims); *McBride v. Pizza Hut, Inc.*, 658 A.2d 205, 207 (D.C. 1995) (noting lower court applied one year statute of limitation to injurious falsehood claim); *Dove v. Wash. Metro. Area Transit Auth.*, 402 F. Supp. 2d 91 (D.D.C. 2005) (applying one year statute of limitations to defamation claims).

IMES' one-year period of limitation commenced when SEL filed its Tsutsui '843 application—December 4, 2002—because this is the "time the right to maintain the action accrue[d]." District of Columbia Official Code § 12-301. It was on this date that SEL allegedly "published" its injurious falsehood to the Patent Office. *See Restatement (Second) of Torts* § 623A cmt. e ("The statement that contains the injurious falsehood must be published to a third party"). To the extent that IMES attempts to rely on the publication date of the Tsutsui '843 application by the U.S. Patent Office, July 10, 2003 (*see* Compl. ¶ 45), IMES' claim is also untimely. Thus, IMES' injurious falsehood claim—filed July 7, 2006, well over three years after the '843 filing date and two years after its publication by the Patent Office—is barred by the statute of limitations.

## <u>CONCLUSION</u>

For at least the many reasons set forth above, SEL respectfully requests that this Court dismiss the Complaint. Pursuant to LCvR 7(f), SEL respectfully requests an oral hearing related to this motion.

Dated: October 13, 2006                    Respectfully submitted,

                                           By: /s/ Michael J. McKeon
                                           Michael J. McKeon (Bar No. 759780)
                                           Brian T. Racilla (Bar No. 473395)
                                           Joshua B. Pond (Bar No. 494722)
                                           FISH & RICHARDSON P.C.
                                           1425 K Street, N.W., 11th Floor
                                           Washington, D.C.  20005
                                           Tel:  (202) 783-5070
                                           Fax:  (202) 783-2331

                                           Counsel for Defendant Semiconductor Energy
                                           Laboratory Company, Ltd.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL MANUFACTURING
AND ENGINEERING SERVICES
COMPANY, LTD.,

                 **Plaintiff,**

   **v.**

                Case No. 1:06-CV-01230 JDB

SEMICONDUCTOR ENERGY
LABORATORY COMPANY, LTD.,

                 **Defendant.**

**[PROPOSED] ORDER**

     **IT IS HEREBY ORDERED** this _____ day of _____, 2006 that:

Defendant Semiconductor Energy Laboratory Company, Ltd.'s Motion to Dismiss

Plaintiff's Complaint is GRANTED.

                            _____

                            JOHN D. BATES
                            UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on this 13th day of October, 2006, with a copy of **DEFENDANT SEMICONDUCTOR ENERGY LABORATORY COMPANY, LTD.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** via the Court's CM/ECF system per LCvR 5.4.

**Daniel John Healy, Esq.** (**Bar No. 476233**)    Attorney for Plaintiff International
ANDERSON KILL & OLICK, LLP                  Manufacturing and Engineering
2100 M Street, NW                            Services Company, Ltd.
Suite 650
Washington, DC 20037
Tel: (202) 218-0048
Fax: (202) 218-0055
Email: dhealy@andersonkill.com

 /s/ Michael J. McKeon
Michael J. McKeon