# EXHIBIT C

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN THE MATTER OF:

KIDO, et al.

GROUP: 2879

SERIAL NO.: 10/393,952

EXAMINER: WILLIAMS, J. L.

FILED: MARCH 21, 2003

FOR: ORGANIC ELECTROLUMINESCENT DEVICE

### SUGGESTING AN INTERFERENCE UNDER 37 CFR 41.202

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

S I R:

The applicant of the subject application hereby suggests that an interference be declared between applicants pending patent application Serial No. 10/393,952 filed March 21, 2003, published as Publ. No. 2003/0189401 A1 dated October 9, 2003 (hereafter "Kido '952") and Serial No. 10/077,270 filed February 15, 2002, which was published as Pub. No. US 2003/0170491 A1 dated September 11, 2003(hereafter "Liao '270"). It is further suggested that a third pending patent application Serial No. 10/309,843 filed December 4, 2002, published as US 2003/012967 A1 and dated July 10, 2003 (hereafter "Tsutsui '843"), be added to the interference or that an additional interference be declared between the subject application of Kido '952 and Tsutsui '843. It should be noted that the application Liao '270 and the application Tsutsui '843 have both been allowed and should be withdrawn by the Examiner in setting up the interference.

1. From the foregoing, applicant proposes that claim 55 in Kido '952 be declared as the count of the interference. Appendix A, attached hereto sets forth the proposed count.

1.1 The claims of applicant in Kido '952 which correspond to the count include claims 37-55 inclusive. Claims 1-36 all require the organic connector between

NYDOCS1-760327.1

adjacent light emissive units to have a resistivity of not less than $1.0 - 10^2 \Omega cm$. This feature of a minimum threshold resistivity for the "doped organic connector" is not obvious from claim 55 (the count) when taken alone or in combination with prior art available before the effective filing date of Kido '952.

    1.2    The claims of the party Liao '270 which correspond to the count include claims 1-76. All of the claims 1-76 in Liao '270 are obvious in view of claim 55 (the count) taken alone or in combination with the prior art available to the public before the effective filing date of Liao '270.

    1.3    The claims of the party Tsutsui '843 which correspond to the count include claims 1-47. All of the claims 1-47 in Tsutsui '843 are obvious in view of claim 55 (the count) taken alone or in combination with the prior art available to the public before the effective filing date of Tsutsui '843.

    2.    New Rule 41.203 states that "interfering subject matter exists when a claim of one party, if prior art, anticipates or renders obvious the subject matter of a claim of an opposing party and vice-versa". This is now known as the "two-way test" enunciated in Eli Lilly & Co. v. Bd. Of Regents of Univ. of Wash., 334, F.3rd 264. Accordingly.

    2.1.    An interference-in-fact exists between claim 55 of Kido '952 and claim 50 of Liao '270, since claim 55 was copied verbatim from allowed claim 50 and that both claims 55 and 50 are identical to the count. Appendix B, attached hereto, shows the support from applicants specification as originally filed for each element in added claim 55.

    2.2    An interference-in-fact also exists between claim 16 of Tsutsui '843 and claim 55 of Kido '952. Appendix C attached hereto is a chart showing the

comparison of claim 16 of Tsutsui '843 and claim 55 of Kido '952 which represents the proposed count.

2.3    Despite the disparity in language of claim 16 of Tsutsui '843 and claim 55 of Kido '952 (corresponding to the count) as is evident from Appendix C claim 16 defines the same patentable invention as defined in claim 55 (the count) for the following reasons:

(a) The organic electroluminescent element of claim 16 is defined in terms of an organic structure which emits light and is formed by sequentially laminating a number of n functional organic thin film layers between an anode and a cathode. This is by definition a stacked arrangement of a plural number of organic thin film layers disposed between an anode and cathode. Although claim 16 refers to organic thin film layers, each of such layers is defined in the specification of Tsutsui '843 paragraph (0095) as representing an organic EL (electroluminescent unit) for performing light emission. Accordingly, the sequentially laminated plural number of organic thin film layers disposed between an anode and cathode is the same as or equivalent to the expression "a plurality of organic electroluminescent units disposed between a cathode and an anode" as set forth in paragraph (c) of claim 55.

(b) Claim 16 further requires the addition of a conductive thin film, which includes an organic material, to be formed between mathematically defined adjacent n functional organic thin film layers. Further support is provided in paragraph (0096) through paragraph (0099) and Figures 8-9a of Tsutsui '843, teaching a plural number of functional organic thin film layers (i.e. EL units) separated in pairs by the conductive thin film which includes an organic compound.

(c) In addition, claim 16 requires each conductive thin film layer to contain both an acceptor and a donor for the organic compound. To one skilled in the "OLED" art to which this invention applies a conductive thin film layer which includes an organic compound and has both an acceptor and a donor for the organic compound is functionally equivalent to the expression in claim 55 paragraph (d) of a doped organic connector having an n-type and a p-type doped organic layer. Further support is found in the specification of Tsutsui '843, paragraphs [0110]-[0112] wherein it is stated that

the organic conductive thin film layer (which lies between adjacent functional organic thin film layers) can be represented by a p-type organic semiconductor and an n-type organic semiconductor. In addition, in paragraphs [0117]-[0119] of Tsutsui '843 it is suggested that the donor be a doped n-type organic semiconductor and likewise that the p-type organic semiconductor be doped with an acceptor.

(d) Claim 16 includes the additional wording: "wherein the conductive thin film layer is a floating state". This limitation in claim 16 is not defined or explained in the specification or file prosecution history of Tsutsui '843. In claim 16, the organic structure is required to emit light by making a current flow therein. Accordingly, a voltage must necessarily be applied across the anode and cathode. This is also implicit in claim 55 of applicant (the count) and claim 50 of Liao '270. Moreover, the laminations in claim 16 are formed sequentially and the specification in Tsutsui '843 paragraph 0088 through paragraph-0096 and particularly paragraph 0096 refers only to a simple series circuit being formed between the electrodes. Accordingly if a stacked arrangement is being formed by the sequential laminations as a simple series circuit in conformity with the Tsutsui specification then the words (" floating state ") in claim 16 must mean --to enable the stacked arrangement of organic thin film layers to constitute a series circuit for making current flow therethrough upon application of a voltage –which, because of inherency, is also implicit in the invention of Kido '952 and in the invention of Liao '270. If the conductive thin film layer of claim 16 is not in a floating state the stacked arrangement cannot constitute a simple series circuit, i.e., a simple series circuit cannot be enabled. Because of inherency, this same reasoning applies to the invention described by applicant in claim 55 (the count) and to the invention described in claim 50 of Liao '270,viz., the organic connector between adjacent electroluminescent units must inherently be in a floating state for the stacked arrangement to constitute a simple series circuit.

Accordingly, all of the elements of claim 16 directly correspond to the elements in claim 55 and to the count. For this reason an interference-in-fact exists between claim 16 of Tsutsui '843 and claim 55 of Kido '952 since both define the same patentable invention as is defined by the count.

3.    (a) Applicant further believes that an interference should be declared to enable applicant to prove that the party Liao '270 of application Serial No. 10/077,270 and the party Tsutsui '843 of application Serial No. 10/309,843 did not invent the subject matter sought to be patented in their respective applications as required in 35USC 102(f). Instead the subject matter sought to be patented in Serial No. 10/077,270 and in Serial No. 10/309,843 was derived directly from a disclosure by Kido in Kido '952 at a conference prior to the effective filing dates of the Liao '270 application and of the Tsutsui '843 application respectively. All of the facts underlying the disclosure of Kido and the surrounding circumstances are set forth in an accompanying submission identified as Appendix D attached hereto in a sealed envelope and marked confidential. Appendix D is being submitted as evidence that the party Liao '270 and the party Tsutsui '843 did not invent the subject matter sought to be patented in their respective applications and as evidence of direct derivation from the party Kido '952. Appendix D should be treated by the Examiner as confidential and should not be entered into the record as part of the file history which is otherwise available to the public.

(b) Applicant also believes an interference should be declared to enable applicant to prove that the application Serial No. 10/077,270 of the party Liao '270 of and that the application Serial No. 10/309,843 of the party Tsutsui '843 violate 35 USC 112 by lacking a written description of the manner and process of making and using the subject matter sought to be patented ........as to enable any person skilled in the art ........to make and use the same and that completion of this description would involve undue experimentation not apparent from the written description as filed.

4.    The priority of Kido '952 is based upon a conception and an actual reduction to practice of the invention defined in the count prior to the effective filing date of Liao'270 and Tsutsui '843 respectively. The actual reduction to practice of Kido '952 occurred prior to December 5, 2001 which is the earliest effective filing date of Tsutsi '843 and precedes February 15, 2002 which is the earliest effective filing date of Liao '270. The evidence of an actual reduction to practice by Kido '952 is included herewith in the attached Appendix E, and marked confidential. The actual reduction to practice is

supported and corroborated by witnesses who understood the reduction to practice. The evidence from the corroborating witnesses is also included in Appendix E. The actual reduction to practice of applicant is evidenced by actual experiments set forth in laboratory notebook(s) a copy of which is included in Appendix E . Accordingly, Applicant requests that Appendix E be treated as confidential and not be entered into the record as part of the file history otherwise available to the public.

5.   In addition, Applicant wishes to also be accorded the benefit of a constructive reduction to practice of the invention within the scope of the interfering subject matter based upon the date of filing of the priority document Japanese Patent Application No. 2002-86599 filed on March 26, 2002 under 35 USC 119. Example 2 in Kido '952 represents a constructive reduction to practice within the scope of the interfering subject matter directly supported by this priority document. Benefit under this paragraph is therefore sought for applicant to be granted the date of March 26, 2002 as the effective filing date of Kido '952 for purposes of proving prior inventorship in the interference.

Respectfully,

By _____
Eugene Lieberstein
Attorney for Applicant
Registration No. 24,645

CUSTOMER NO.: 01109
ANDERSON, KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182
(212) 278-1000

MAILING CERTIFICATE

I hereby certify that this correspondence is being deposited with the U.S. Postal Service as first class mail in an envelope addressed: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on March 2 2005.

Date: March 2, 2005

NYDOCS1-760327.1                         6

## APPENDIX A
### (PROPOSED COUNT)
(Kido '952, claim 55; Liao '270, claim 50; Tsutsui '843, claim 16)

A stacked organic electroluminescent device comprising:

(a) an anode;

(b) a cathode;

(c) a plurality of organic electroluminescent units disposed between the anode and the cathode; and

(d) a doped organic connector disposed between each adjacent organic electroluminescent unit, wherein the doped organic connector comprises at least one n-type doped organic layer and one p-type doped organic layer.

## APPENDIX B

| ADDED CLAIM 55 | SUPPORT FROM APPLICANTS WRITTEN DESCRIPTION (US2003/0189401 a1 (Kido '952) |
|---|---|
| A stacked organic electroluminescent device comprising: | Figure 8; paragraph (0025); page 3<br>Paragraph (0175), page 11 |
| (a) an anode; | Figs. 2, 3, 4, 8, 9, 11-15, 18, pages 1-4, 6-14 |
| (b) a cathode; | Figs. 2, 3, 4, 8, 9, 11-15, 18, pages 1-4, 6-14 |
| (c) a plurality of organic electroluminescent units disposed between the anode and the cathode; and | Figure 8, paragraphs (0025)&(0150)&(0153), page 8, etc.<br><br>Examples 1-6 particulary 2 and 6 |
| (d) a doped organic connector disposed between each adjacent organic electroluminescent unit, wherein the doped organic connector comprise at least one "n-type" doped organic layer and one "p-type" doped organic layer | Figures 14, 41<br><br>Paragraphs (0175,(0177),(0028) and paragraphs (0119) through (0149) describe a partitioning connector which lies between adjacent organic electroluminescent units and is defined as a charge generating layer having a layer on its anode side and a layer on its cathode side.<br><br>Paragraphs (0041)-(0043) defines the layer on the anode side of the charge generating layer as a doped organic layer consisting of an organic compound and a metal functioning as an electron donating dopant which to one skilled in the art constitutes an "n-type" doped organic layer.<br><br>Paragraphs (0050) to (0052) define the layer on the cathode side of the charge generation layer as a doped organic layer consisting of an organic component and an electron accepting compound which can oxidize the organic compound in terms of its Lewis acid chemistry. This layer to one skilled in the art constitutes a "p-type" doped organic layer. The charge generating layer may itself represent a p-type doped organic layer.<br><br>The n-type doped organic layer and the p-type doped organic layer corresponds to the doped organic connector of paragraph (d). Also see Examples 2 and 6. |

## APPENDIX C

| CLAIM 16 | CLAIM 55 (the count) |
|---|---|
| An organic electroluminescent element comprising: | A stacked organic electroluminescent device comprising: |
| an organic structure which emits light by making a current flow therein and is formed by sequentially laminating an n number of functional organic thin film layers (where n is an integer equal to or greater than 2) comprising a first through an n-th functional organic thin film layers between an anode and a cathode, | (a) an anode; <br><br> (b) a cathode; <br><br> (c) a plurality of organic electroluminescent units disposed between the anode and the cathode; and |
| wherein a conductive thin film layer which includes an organic compound is formed between a k-th functional organic thin film layer (where k is an integer 1 of $\leq k \leq (n-1)$) and a (k + 1)th functional organic thin film layer, | (d) a doped organic connector disposed between each adjacent organic electroluminescent unit, wherein the doped organic connector comprise at least one "n-type" doped organic layer and one "p-type" doped organic layer |
| wherein each of the conductive thin film layers contains both of an acceptor and a donor for the organic compound, and | (same as paragraph (d) above) |
| wherein the conductive thin film layer is a floating state. | inherent to the doped organic connector of paragraph (d) |

NYDOCS1-760327.1