## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**INTERNATIONAL MANUFACTURING
AND ENGINEERING SERVICES
COMPANY, LTD.,**

**Plaintiff,**

**v.**

Case No. 1:06-CV-01230 JDB

**SEMICONDUCTOR ENERGY
LABORATORY COMPANY, LTD.,**

**Defendant.**

## DEFENDANT SEMICONDUCTOR ENERGY LABORATORY COMPANY, LTD.'S
## <u>MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR STAY</u>

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

COUNTERSTATEMENT OF THE FACTS ........................................................................... 3

I.      THE PENDING IMES AND SEL PATENT APPLICATIONS AND THE
        ISSUED KODAK PATENT ........................................................................................ 3

II.     DISTINCTION AMONG THE DIFFERENT PATENT OFFICE
        PROCEEDINGS ......................................................................................................... 4

III.    A TIMELINE – RESOLUTION OF SEL'S PENDING PATENT
        APPLICATION .......................................................................................................... 7

ARGUMENT ........................................................................................................................... 9

I.      BECAUSE THIS COURT LACKS JURISDICTION OVER IMES' DEFICIENT
        COMPLAINT, THE COURT HAS NO POWER TO STAY THE CASE ...................... 9

        A.      This Court Lacks Jurisdiction Over IMES' Fatally-Flawed Complaint ................. 9

                1.      This Court Lacks Personal Jurisdiction Over Defendant SEL ................. 10

                2.      This Court Lacks Subject Matter Jurisdiction Over IMES'
                        Lawsuit .................................................................................................. 10

        B.      This Court Cannot Stay An Action That Is Not Properly Before It .................... 13

II.     EVEN IF THE COURT HAD JURISDICTION TO ENTERTAIN IMES'
        MOTION TO STAY AND DENIES SEL'S PENDING MOTION TO
        DISMISS, A STAY IS NOT WARRANTED ............................................................. 16

        A.      IMES' Requested Relief Is Contrary To The Allegations
                In Its Complaint ................................................................................................ 16

        B.      The Relief IMES Seeks Is Unprecedented ......................................................... 18

        C.      IMES' Requested Stay Is Unwarranted Because IMES Cannot Demonstrate The
                Required "Clear Case Of Hardship Or Inequity" To Support A Stay Of Its Own
                Action Against SEL And The Equities Weigh Against It ................................... 21

CONCLUSION ...................................................................................................................... 24

## TABLE OF AUTHORITIES

**CASES**                                                                    **Pages**

*Aetna Life Ins. Co. v. Haworth* ........................................................................ 13
    300 U.S. 227 (1937)

*Airport Surface Techs., L.L.C. v. FieldTurf, Inc.* ............................................ 12
    268 F. Supp. 2d 999 (N.D. Ill. 2003)

*Amersham Int'l PLC v. Corning Glass Works* ............................................... 23
    108 F.R.D. 71 (D. Mass. 1985)

*Amersham Int'l PLC v. Corning Glass Works* ...........................................8, 19
    618 F. Supp. 507 (E.D. Mich. 1984)

*Barton v. District of Columbia* ...................................................................... 21
    209 F.R.D. 274 (D.D.C. 2002)

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.* ...........................................15, 19, 20
    914 F. Supp. 951 (W.D.N.Y. 1996)

*Berry v. Borders Group, Inc.* .....................................................................13, 14
    No. CIV-06-297-C, 2006 WL 2773198 (W.D. Okla. Sept. 25, 2006)

*Bremiller v. Cleveland Psychiatric Inst.* ................................................2, 13, 14
    879 F. Supp 782 (N.D. Ohio 1995)

*Brunson v. Kalil & Co.* .................................................................................. 15
    404 F. Supp. 2d 221 (D.D.C. 2005)

*Canady, M.D. v. Erbe Elektromedizin GmbH* ...........................................15, 19
    271 F. Supp. 2d 64 (D.D.C. 2002)

*Capon v. Eshhar* .............................................................................................. 6
    418 F.3d 1349 (Fed. Cir. 2005)

*Center for Law & Educ. v. United States Dep't of Educ.* ............................... 14
    315 F. Supp. 2d 15 (D.D.C. 2004)

*Christianson v. Colt Industries Operating Corp.* ........................................... 11
    486 U.S. 800 (1988)

*Consol. World Housewares, Inc. v. Finkle* ..........................................6, 11, 12
    831 F.2d 261 (Fed. Cir. 1987)

*Crow Creek Sioux Tribe v. Brownlee* ........................................................................ 12
    331 F.3d 912 (D.C. Cir. 2003)

*In re Currency Conversion Fee Antitrust Litigation* ...................................................... 13
    (No. 05-CV-7116, 2006 WL 2685082 (S.D.N.Y. Sept. 20, 2006)

*DaimlerChrysler Corp. v. Cuno* .................................................................................... 14
    126 S. Ct. 1854 (2006)

*Dellinger v. Mitchell* .................................................................................................... 18
    442 F.2d 782 (D.C. Cir. 1971)

*Florida Audubon Soc. v. Bentsen* ................................................................................. 12
    94 F.3d 658 (D.C. Cir. 1996)

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas* ............................................ 12, 13, 15
    90 F.3d 479 (Fed. Cir. 1996)

*Gladish v. Tyco Toys Inc.* .......................................................................................22, 23
    Civ. No. S-92-16666, 1993 WL 625509 (E.D. Cal. 1993)

*GPAC, Inc. v. D. W.W. Enters., Inc.* ........................................................................15, 19
    144 F.R.D. 60 (D.N. J. 1992)

*IMAX Corp. v. In-Three, Inc.* ...................................................................................21, 23
    358 F. Supp. 2d 1030 (C.D. Cal. 2005)

*Johnson & Johnson, Inc. v. Wallace A. Erickson & Co.* ................................................ 18
    627 F.2d 57 (7th Cir. 1980)

*Kokkonen v. Guardian Life Ins. Co. of Am.* ................................................................. 14
    511 U.S. 375 (1994)

*Landis v. North American Co.* ..................................................................................9, 21
    299 U.S. 248 (1935)

*In re Laughlin Prods., Inc. Patent Litigation* ............................................................... 20
    265 F. Supp. 2d 525 (E.D. Pa. 2003)

*Lujan v. Defenders of Wildlife* ..................................................................................... 12
    504 U.S. 555 (1992)

*Mansariya v. Chertoff* ................................................................................................. 14
    No. 06-CV-0553A, 2006 WL 2669465 (W.D.N.Y. Sept. 18, 2006)

*Murray v. Gemplus Int'l, S.A.* ......................................................................... 11
  No. Civ. A. 02-6265, 2002 WL 32107942 (E.D. Pa. Oct. 29, 2002)

*Naartex Consulting Corp. v. Watt* ................................................................... 11
  722 F.2d 792 (D.C. Cir. 1983),
  *cert. denied*, 467 U.S. 1210 (1984)

*NL Chems., Inc. v. S. Clay Prods., Inc.* ....................................................15, 19
  No. Civ. A. 88-2620, 1989 WL 214495 (D.D.C. Nov. 20, 1989)

*Novartis Corp. v. Dr. Reddy's Labs., Ltd.* ....................................................... 15
  No. 04 Civ. 0757, 2004 WL 2368007 (S.D.N.Y. Oct. 21, 2004)

*Patlex Corp. v. Mossinghoff* ........................................................................... 7
  758 F.2d 594 (Fed. Cir. 1985

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.* ....................................... 10
  332 F. Supp. 2d 63 (D.D.C. 2004)

*Saadeh v. Farouki* ....................................................................................11, 15
  107 F.3d 52 (D.C. Cir. 1997)

*Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites* .................. 6
  436 F. Supp. 2d 252 (D. Mass. 2006)

*Slip Track Sys., Inc. v. Metal-Lite, Inc.* ............................................................. 6
  304 F.3d 1256 (Fed. Cir. 2002)

*Softview Computer Prods. Corp. v. Haworth, Inc.* .....................................15, 19
  No. 97 CIV 8815, 2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000)

*Straney v. Gen. Motors Corp.* ........................................................................ 13
  No. 06-CV-12152-DT, 2006 WL 2911452 (E.D. Mich. Oct. 6, 2006)

*Target Therapeutics, Inc. v. Scimed Life Sys., Inc.* ....................................15, 19
  No. C-94-207775, 1995 WL 20470 (N.D. Cal. Jan. 13, 1995)

*The Univ. of Texas Sys. v. Nippon Tel. & Telegraph Corp.* ............................. 11
  414 F.3d 1358 (Fed. Cir. 2005)

*United Sweetener USA, Inc. v. Nutrasweet Co.* ..........................................15, 19
  766 F. Supp. 212 (D. Del. 1991)

*Wayne Automation Corp. v. R. A. Pearson Co.* ..........................................22, 23
  782 F. Supp. 516 (E.D. Wash. 1991)

*Xerox Corp. v. 3Com Corp.* .................................................................................15, 19
      69 F. Supp. 2d 404 (W.D.N.Y. 1999)

## STATUTES

28 U.S.C. § 1332 .................................................................................................. 10

28 U.S.C. § 1338 .................................................................................10, 11, 15

35 U.S.C. § 102 ...................................................................................................... 6

35 U.S.C. § 135 ...............................................................................................6, 8, 12

35 U.S.C. § 141 ...................................................................................................... 9

35 U.S.C. § 145 ...................................................................................................... 9

35 U.S.C. § 251 ...................................................................................................... 7

35 U.S.C. § 291 ...............................................................................................5, 6, 19

35 U.S.C. § 293 .................................................................................................10, 15

35 U.S.C. §§ 301-307 .......................................................................................... 6, 7

## RULES & OTHER ADMINISTRATIVE MATERIALS

37 C.F.R. § 1.076 .................................................................................................. 7

37 C.F.R. § 41.102 .............................................................................................6, 8

37 C.F.R. § 41.200 ................................................................................................ 8

Board of Patent Appeals and Interferences "Standing Order" (Jan. 3, 2006) *available at*
http://www.uspto.gov/go/dcom/bpai/Standing-Order.pdf  ................................................ 8

Fed. R. Civ. P. 12(b)(6) ....................................................................................10, 18

LCvR 7(f) ............................................................................................................ 23

Manual of Patent Examination Procedure .............................................................6, 8, 9

## ARTICLES

Linda R. Cohen & Jun Ishii, "Competition, Innovation and Racing for Priority at the U.S. Patent
and Trademark Office," American Law & Economics Association Annual Meetings (2006)
*available at* http://law.bepress.com/alea/16th/art16 ......................................................... 8

**INTRODUCTION**

The allegations in Plaintiff International Manufacturing and Engineering Services Company, Ltd.'s ("IMES'") Complaint are sweeping.  IMES accuses an eminent Japanese professor of stealing IMES' ideas and Defendant Semiconductor Energy Laboratory Co., Ltd. ("SEL")—a small company built on its reputation for developing innovative technologies—of benefiting from those purportedly stolen ideas, and further alleges SEL's actions have put a "cloud" over IMES causing "monetary damages in excess of $30 million."  These allegations are completely false, but nevertheless have quickly radiated through the small organic light emitting diode ("OLED") research community, tarnishing the reputations of both SEL and Dr. Tsutsui along the way.  Having filed its ill-advised complaint, IMES now does not seek quick disposition of its claims of theft and substantial monetary damage, but rather requests that the Court put this case on ice while the allegations against SEL and Dr. Tsutsui linger as the Patent Office conducts an examination of the pending SEL application that may continue for years. Yet, quite remarkably, IMES freely acknowledges that the proceedings in the Patent Office may "eliminate completely the need for this case," something it clearly should have thought of before it filed its complaint.

This case should not be stayed.  It should have never been brought at all and it now must be dismissed.  As set forth more fully in SEL's pending Motion to Dismiss [D.I. 5], IMES' Complaint is fatally defective because it fails to state a claim against SEL and, even if it did, the Court lacks personal jurisdiction over SEL as well as subject matter jurisdiction over the alleged state law tort claims.  IMES' Motion to Stay places the proverbial cart before the horse because this Court cannot address the merits of IMES' motion until it resolves the issue of whether IMES' underlying claims against SEL are properly before the Court in the first instance.  The

Court simply has no power to stay a case over which it has no jurisdiction. *See, e.g., Bremiller v. Cleveland Psychiatric Inst.*, 879 F. Supp. 782, 789 (N.D. Ohio 1995) (denying "plaintiff's request because it lacks subject matter jurisdiction over the claims and therefore, cannot stay claims which are not properly before it.").

Even if the Court finds that it has jurisdiction and decides not to dismiss IMES' Complaint (in error we respectfully submit), IMES' request for stay should be denied. Initially, IMES does not explain how a stay pending the mere issuance of a Notice of Allowance relating to SEL's pending application will change in any way the unconditional and categorical allegations it has already made in its complaint in support of its state law tort claims of unfair competition and injurious falsehood. To be sure, as we have stated in SEL's Motion to Dismiss, this case is a matter of pure contingency that is exclusively within the province of the Patent Office, but this point demands that the case be dismissed, not stayed. Indeed, it is because the SEL and IMES patent applications remain pending in the Patent Office that this Court lacks subject matter and personal jurisdiction in this case. Beyond the jurisdictional defects, the direct and public allegations erroneously made by IMES in its Complaint against SEL and Dr. Tsutsui are harming SEL (and Dr. Tsutsui) by placing a "cloud over" SEL and causing a "diminution in value" of SEL's inventions. The reputational and financial injuries suffered by SEL and Dr. Tsutsui will continue to grow and multiply as the stayed litigation sits in limbo while years pass as the Patent Office conducts an examination and/or interference proceeding previously requested by IMES.

The relief requested by IMES is unprecedented. IMES must not be permitted to file a lawsuit against SEL alleging unfair competition, injurious falsehood, and damages in excess of $30 million then call a "time out" based on the assertion that the Patent Office's examination of

SEL's pending application may eliminate the need for the case.  Such actions would stifle innovation and overwhelm courts by permitting the filing of such lawsuits against anyone having a pending patent application while striping that party of the right to immediately defend itself against erroneous and ill-founded allegations.  If the case is not dismissed, then it should proceed with dispatch so that IMES' allegations and any counterclaims brought by SEL can be swiftly and finally resolved.

## COUNTERSTATEMENT OF THE FACTS

SEL incorporates by reference the factual background of this dispute set forth in SEL's Motion to Dismiss. [D.I. 5 at 2-6].  We provide below an additional overview of the factual background relevant here.[1]

## I.    THE PENDING IMES AND SEL PATENT APPLICATIONS AND THE ISSUED KODAK PATENT

On December 4, 2002, SEL filed patent application number 10/309,843 entitled "Organic Semiconductor Element" with the Patent Office ("the SEL '843 application").  SEL's application for a patent was published on July 10, 2003, and is still being examined by the Patent Office.  On March 21, 2003, IMES filed patent application number 10/393,952 entitled "Organic Electroluminescent Device" with the Patent Office ("the IMES '952 application").  IMES' application for a patent was published on October 9, 2003, and is still being examined by the Patent Office.  Statements allegedly made during the examination of, and certain subject matter

---

[1]  On October 13, SEL filed a Motion to Dismiss IMES' Complaint. [D.I. 5].  IMES requested an extension of time to respond to SEL's motion, and SEL agreed to a 17-day extension.  On October 25, IMES filed an unopposed motion for an extension of time [D.I. 11] and the Court granted the motion on October 26.  On October 31, in apparent contradiction to the extension-of-time effort, IMES filed a motion to stay and for an additional extension of time to oppose SEL's motion to dismiss [D.I. 15].  The next day, the Court issued an order granting in part IMES' motion to further extend the time for IMES to file an opposition to SEL's motion to dismiss until after the Court's ruling on IMES' motion to stay. [D.I. 16].  Now pending before the Court are SEL's motion to dismiss and IMES' motion to stay.

allegedly contained in, the SEL '843 application and the IMES '952 applications are the gravamen of IMES' Complaint against SEL.  *See* Compl. ¶ 1.

On February 15, 2002, Eastman Kodak Co. ("Kodak") filed patent application number 10/077,270 entitled "Providing Organic Electroluminescent Device Having Stacked Electroluminescent Units" with the Patent Office ("the Kodak '270 application").  Kodak was granted U.S. Patent No. 6,872,472 ("the '472 patent") on March 29, 2005.[2]  On March 3, 2005, IMES filed papers with the Patent Office alleging that the Kodak '270 application and the IMES '952 application included common subject matter and "Suggesting An Interference" between the two applications.  *See* IMES' Interference Suggestion at 1, Ex. C to SEL's Mot. to Dismiss [D.I. 5].  In this filing, IMES "further suggested that a third pending patent application [the SEL '843 application] be added to the interference or that an additional interference be declared between the subject application of Kido '952 and Tsutsui '843."  *Id.*

As of the date of this filing, the Patent Office has yet to declare any of the interference proceedings suggested by IMES.  Moreover, as of the date of this filing, the Patent Office is still examining claims of the SEL '843 application, and SEL cannot determine at which point in the future such examination will be concluded.  Likewise, the Patent Office still is examining claims of the IMES '952 application, and SEL cannot determine at which point in the future such examination will be concluded.  An interference will not be declared until examination related to all issues other than the interference is completed for both applications.

## II.    DISTINCTIONS AMONG THE DIFFERENT PATENT OFFICE PROCEEDINGS

In its motion to stay, IMES makes the very general argument that "federal courts have routinely granted stays pending resolution of PTO proceedings because this serves judicial

---

[2]  The '472 patent and the IMES '952 application are the subjects of a nearly-identical complaint filed by IMES against Kodak similarly alleging "unfair competition" and "injurious falsehood" in the United States District Court for the Western District of New York.  *See* Kodak Complaint, Ex. A to SEL's Motion to Dismiss [D.I. 5].

economy."  Mot. at 6.  By using the generic phrase "PTO proceedings," IMES hopes to gloss

over the critical differences between examination of a pending patent application (one of

hundreds of thousands that are now underway in the Patent Office) involved in this case and the

other types of post-issuance Patent Office proceedings actually discussed in the cases cited in

IMES' motion—namely, patent reexamination, patent reissue, and 35 U.S.C. § 291 interference

proceedings.  Thus, a concise summary of each is provided.

     First, and most obviously, the Patent Office is the government agency that accepts

applications for patents and conducts "examinations" of every application filed under a

substantial body of laws, rules, and procedures.  A patent application may remain pending in the

Patent Office for many years before it is issued as a patent or finally is abandoned by the patent

applicant.  There is no set length of time the Patent Office must spend examining a patent

application; instead, the scope and length of each examination depends on the specific details of

that application.  Moreover, the pendency of a patent application is often extended by additional

appeals to the Board of Patent Office Appeal and Interferences ("BPAI") and the United States

Court of Appeals for the Federal Circuit.  Typically, an appeal to the BPAI will last about a year,

and an appeal to the Federal Circuit will last up to 18 months.

     Unlike most countries in the world, in the United States, patents are awarded to the first

to invent an invention not to the first to file for a patent application for an invention.  Under a

"first to file" system, there would be no question that SEL—not IMES—would be awarded the

patent in the present case, because SEL filed its patent application well before IMES did.

Because the United States has implemented a "first to invent" system, there is a proceeding

called an "interference" conducted by the Patent Office, which is charged with deciding which

party was the first to invent what is claimed as an invention.   More specifically, an interference

is an administrative proceeding pursuant to 35 U.S.C. §§ 102(g) and 135(a) that is conducted to

determine which of the competing *patent applicants* is the first inventor of common subject

matter. *Capon v. Eshhar*, 418 F.3d 1349, 1351 (Fed. Cir. 2005). Before an interference can be

declared, examination of each of the allegedly interfering applications must be complete,

including any appeal or judicial review. *See* 37 C.F.R. § 41.102; Manual of Patent Examination

Procedure ("MPEP") § 2303. Only the Patent Office has the jurisdiction and ability to conduct

interference proceedings when a patent application is involved (*i.e.*, when the interference is

between patent applications or between an issued patent and a patent application). *See Consol.*

*World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987). This is the type of

interference that has been urged by IMES. There is another type of "interference," which is a

*judicial* proceeding pursuant to 35 U.S.C. § 291 that is conducted by a district court to determine

which party invented an invention claimed in competing *issued patents*. Only the district court

has the jurisdiction and ability to conduct such interference proceedings between two issued

patents. *See Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1264 (Fed. Cir. 2002).

    A reexamination proceeding is an administrative proceeding conducted by the Patent

Office to determine the validity of an existing, issued patent. *See* 35 U.S.C. § 301, *et seq.* A

reexamination proceeding may be requested by any person at any time upon showing the

existence of "prior art" that raises a "substantial new ground of patentability" regarding the

issued patent. *See* 35 U.S.C. §§ 301-304. Reexaminations proceed quickly—the Patent Office is

required to determine whether to declare one within three months of a request, and the

proceedings are "conducted with special dispatch." *See* 35 U.S.C. §§ 303, 305. One of the goals

of reexamination proceedings is to reduce the time and cost spent addressing validity issues that

could be raised during infringement suits by taking advantage of the Patent Office's expertise in

issues of patentability. *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985) (examining legislative history of 35 U.S.C. §§ 301-307). Most of the cases cited by IMES in its motion to stay relate to reexaminations that were pending during patent infringement suits.

A reissue proceeding is an administrative proceeding conducted by the Patent Office to correct good faith errors in an existing, issued patent that render the patent "wholly or partly inoperative or invalid" because of a "defective specification or drawing" or because the patentee claimed "more or less than he had a right to claim in the patent." *See* 35 U.S.C. § 251. Only the patent holder may request reissue proceedings. *Id.* Reissue proceedings cannot be used to obtain subject matter that could not have been included in the original patent. *Id.* Reissue proceedings also proceed quickly because the Patent Office gives these proceedings accelerated processing. *See* 37 C.F.R. § 1.176.

**III.    A TIMELINE – RESOLUTION OF SEL'S PENDING PATENT APPLICATION**

In the Court's Scheduling Order dated November 1, 2006, the Court instructed the parties to provide "their assessment of the time needed for the PTO to resolve SEL's pending patent application." The SEL '843 application remains pending in the Patent Office and a number of its claims remain rejected by the Patent Office. At this time, it cannot be ascertained with confidence how much longer the examination of the SEL '843 application will continue. The prosecution of the SEL '843 application requires further examination before the Patent Examiner, and may include an appeal to the BPAI, and, if necessary, an appeal to the United States Court of Appeals for the Federal Circuit. As noted above, such appeals may add more than two additional years to the pendency of the SEL '843 application. The "resolution" of SEL's pending application may not occur for many more years.

In addition to looking at the timeline with respect to the SEL '843 application, it is also useful to look at the timeline for an interference proceeding that may also go forward if IMES' request for an interference is granted. *See* Interference Suggestion at 1, Ex. C to SEL's Mot. to Dismiss [D.I. 5]. We provide an identification of the relevant events below:

| *Event* | *Time Period* |
|---|---|
| ***Completion of examination*** - Before IMES' suggested interference can be declared by the Patent Office, examination of each of the three allegedly interfering applications must be complete, including any appeal or judicial review. *See* 37 C.F.R. § 41.102, MPEP § 2303. This means the application must be found to be patentable such that the only remaining issue is determination of priority of the allegedly interfering subject matter.<br><br>The Patent Office completed examination of the Kodak '270 application and issued it as the '472 patent on March 29, 2005. The Patent Office has not, however, completed examination of the SEL '843 application or the IMES '952 application. It is unknown when the Patent Office will complete its examination of these applications. | *Indefinite* |
| ***Declaration of interference*** - The Patent Office Director has complete discretion over whether and when to declare an interference between common subject matter. *See* 35 U.S.C. § 135; *Amersham Int'l PLC v. Corning Glass Works*, 618 F. Supp. 507, 510 (E.D. Mich. 1984) ("The decision whether to declare such a proceeding is discretionary with the patent office.").<br><br>It is indefinite when such a declaration would occur. | *Indefinite* |
| ***Completion of interference*** - Once an interference is declared, "pendency before the Board is normally no more than two years." 37 C.F.R. § 41.200. A recent empirical study found "[i]nterferences declared between 1988 and 1994 concluded in an average of 623 days, with a minimum time of sixteen days [obviously an outlier] and a maximum of over ten years." Linda R. Cohen & Jun Ishii, "Competition, Innovation and Racing for Priority at the U.S. Patent and Trademark Office," American Law & Economics Association Annual Meetings (2006) *available at* http://law.bepress.com/alea/16th/art16.<br><br>It is estimated an interference would last approximately two years. | ***Approximately two years*** |
| ***Rehearing*** – A rehearing by the Patent Office of any interference decision may be requested. *See* Board of Patent Appeals and Interferences "Standing Order," ¶ 125 (Jan. 3, 2006) ("Rehearing of decisions") *available at* http://www.uspto.gov/go/dcom/bpai/Standing-Order.pdf. | *Indefinite* |

| | |
|---|---|
| It is unknown whether such a rehearing would be requested or granted, and the pendency of such rehearing is indefinite. | |
| *Appeal* – Appeal of the Patent Office's decision may be sought at the United States Court of Appeals for the Federal Circuit (35 U.S.C. § 141) or the United States District Court for the District of Columbia (35 U.S.C. § 145).<br><br>It is unknown whether such an appeal would be sought or granted, and the pendency of such an appeal is indefinite. | *Indefinite* |
| *Final Disposition* – Once an interference has been completed, the Patent Office performs the final actions necessary to either issue the patent and/or close examination of the application.  *See* MPEP § 2307. | *Indefinite* |

In order to resolve all issues surrounding SEL's pending application, and assuming that the Patent Office declares the interference proceeding requested by IMES, it is clear that SEL's pending application may not be finally resolved for many years and, in any event, any stay based on such proceedings will be of an indefinite period.

## ARGUMENT

I.    **BECAUSE THIS COURT LACKS JURISDICTION OVER IMES' DEFICIENT COMPLAINT, THE COURT HAS NO POWER TO STAY THE CASE**

This Court simply cannot entertain the merits of IMES' motion to stay this litigation because IMES' underlying litigation is not properly before the Court.  Although a court has discretion to decide whether to stay a lawsuit that is properly pending before it, *see Landis v. North American Co.*, 299 U.S. 248, 254-55 (1935), it must first determine that it has jurisdiction over the lawsuit itself.  If a court lacks power to rule on a substantive motion or enter judgment in an action pending before it, the court is precluded from entertaining motions to stay the action.

A.    **This Court Lacks Jurisdiction Over IMES' Fatally-Flawed Complaint**

As set forth more fully in SEL's pending Motion to Dismiss [D.I. 5], IMES' Complaint is not properly before this Court, because the Complaint suffers from several fatal deficiencies that cannot be cured by IMES.  The Complaint filed by IMES fails to establish personal jurisdiction

9

over SEL, subject matter jurisdiction over the claims recited in the Complaint, and claims upon which this Court can provide relief pursuant to Fed. R. Civ. P. 12(b)(6).

### 1.    This Court Lacks Personal Jurisdiction Over Defendant SEL

As explained in SEL's Motion to Dismiss [D.I. 5 at 7-9], this Court does not have personal jurisdiction over defendant SEL.  In its Complaint, IMES alleges this Court has personal jurisdiction over SEL solely on the basis of a federal long-arm statute codified at 35 U.S.C. § 293.  Compl. ¶ 5.  Section 293 provides the U.S. District Court for the District of Columbia personal jurisdiction over a foreign "patentee."  35 U.S.C. § 293.  As admitted by IMES in its Complaint (Compl. ¶ 1) and its Motion to Stay (Mot. at 1-2), SEL is not a "foreign patentee" as required by Section 293, because SEL merely has an *application* for a patent currently pending before the U.S. Patent Office.  Because the claims alleged in IMES' Complaint are directed to a patent *application* and not a patent, Section 293 cannot apply, and this Court lacks personal jurisdiction over SEL and must dismiss IMES' Complaint against SEL.  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 332 F. Supp. 2d 63, 66 (D.D.C. 2004) (citation string omitted) (granting motion to dismiss for lack of personal jurisdiction).

### 2.    This Court Lacks Subject Matter Jurisdiction Over IMES' Lawsuit

As set forth in SEL's Motion to Dismiss [D.I. 5 at 9-21], this Court also lacks subject matter jurisdiction[3] over the lawsuit filed by IMES for at least four reasons—(1) lack of diversity jurisdiction, (2) lack of "federal question" jurisdiction, (3) lack of original jurisdiction to conduct interferences between competing patent applications, and (4) IMES' lack of standing.  First, there is no diversity jurisdiction because both IMES and SEL are Japanese foreign aliens under 28 U.S.C. § 1332.  IMES' and SEL's alien status is clear from the Complaint, in which IMES

---

[3] Specifically, IMES has alleged "[t]his Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship)" and "28 U.S.C. § 1338(a) (arising under the patent laws)."  Compl. ¶¶ 4, 6.

alleges: "SEL is a Japanese corporation with a principal place of business" in the Prefecture of Kanagawa, Japan and "IMES is a Japanese corporation" also located in Kanagawa. Compl. ¶¶ 2-3. When a suit is pending solely between two parties and both parties are citizens of a foreign state, the suit cannot be heard in federal court under diversity. *See Saadeh v. Farouki*, 107 F.3d 52, 60 (D.C. Cir. 1997) (noting the "longstanding rule that complete diversity is destroyed in lawsuits between aliens"). IMES' failure to establish diversity of citizenship is grounds for dismissal. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984).

Furthermore, there is no "federal question" jurisdiction pursuant to 28 U.S.C. § 1338(a), because IMES' common law tort claims of "unfair competition" and "injurious falsehood" do not arise under the federal patent laws. There is ***no patent*** at issue in either of IMES' tort claims—IMES alleges only the misappropriation of an ***idea*** at a conference in Germany and the subsequent filing of a patent ***application*** based on that idea. *See* Compl. ¶¶ 74-120. Thus, there is no "right, title or interest under the patent laws" as required by Section 1338(a). *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988); *Murray v. Gemplus Int'l, S.A.*, No. Civ. A. 02-6265, 2002 WL 32107942, at *3-5 (E.D. Pa. Oct. 29, 2002) (granting motion to remand for lack of Section 1338 jurisdiction where patent application had been filed for disputed technology, but no patent had issued). Likewise, IMES' bald allegations—woven through its Complaint—that SEL (through its assignor, Dr. Tsutsui) is not the inventor of the subject matter contained in its pending patent application cannot convert IMES' state law action into one arising under the patent laws. *See The Univ. of Texas Sys. v. Nippon Tel. & Telegraph Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005) (citing *Consol. World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987)).

Indeed, even if IMES could demonstrate that either of its tort claims arise under the patent laws, IMES' Complaint still fails, because its claims would then constitute an inventorship dispute between two pending patent applications, which amounts to an interference proceeding that falls outside of the jurisdiction of this Court. A district court "does not have original jurisdiction to conduct an interference under Section 1338(a) or under any other statute because the United States Patent and Trademark Office was granted that function exclusively in 35 U.S.C. § 135(a)." *Consol. World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987); *see also Airport Surface Techs., L.L.C. v. FieldTurf, Inc.*, 268 F. Supp. 2d 999, 1002 (N.D. Ill. 2003) (granting motion to dismiss for lack of subject matter jurisdiction).

Lastly, subject matter jurisdiction is inappropriate because IMES has failed to meet its burden of establishing Article III standing. For example, IMES has failed to demonstrate injury-in-fact and redressability sufficient to support standing in this case. IMES cannot demonstrate injury-in-fact because IMES does not have an "imminent" or "concrete and particularized" injury. *Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 653 (D.C. Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). In this case, IMES' alleged injury arises from statements contained in a patent ***application still pending*** before the Patent Office. Because neither the parties nor the Court can know with certainty whether either of the subject patent applications will issue or, if so, what legal rights (*e.g.*, the scope of the invention actually recited in the claims of the issued patents) they will confer upon their assignees, IMES cannot demonstrate an "imminent" or "concrete and particularized" injury. *See, e.g.*, *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 482 (Fed. Cir. 1996) (finding dispute over patent application to be "purely hypothetical and call[ing] for an impermissible advisory opinion").

Likewise, IMES cannot demonstrate "redressability," which requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" of the Court. *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 916 (D.C. Cir. 2003). As noted above, because there are no issued patents to define the scope of the parties' rights, the present dispute is "purely hypothetical and call[s] for an impermissible advisory opinion," such that this Court is unable to "provide[] 'specific relief through a decree of a conclusive character.'" *GAF Bldg. Materials Corp.*, 90 F.3d at 482 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)). Indeed, IMES admits as much in its Motion to Stay.

> Similarly, if SEL's patent application, or any proposed modification to that application, is accepted-in-part, rejected or fundamentally modified by the PTO, that also would directly affect the issues in this litigation, by simplifying and clarifying the issues in this case *or eliminating completely the need for this case.*

Mot. at 2 (emphasis added). Because IMES has failed to establish standing, "subject matter jurisdiction is inappropriate, [and] this Court cannot consider the issues raised by" IMES' Motion to Stay. *In re Currency Conservation Fee Antitrust Litigation*, No. 05-CV-7116(WHP), 2006 WL 2685082, at *5 (S.D.N.Y. Sept. 20, 2006) .

### B.    This Court Cannot Stay An Action That Is Not Properly Before It

It is axiomatic that a court cannot entertain a party's request to stay an action if the underlying action is not properly before the court. *See Bremiller v. Cleveland Psychiatric Inst.*, 879 F. Supp. 782, 789 (N.D. Ohio 1995) (denying plaintiff's motion to stay because court lacked jurisdiction to consider it); *Straney v. Gen. Motors Corp.*, No. 06-CV-12152-DT, 2006 WL 2911452, at *4 (E.D. Mich. Oct. 6, 2006) (denying motion to stay because court lacked jurisdiction to consider it); *Berry v. Borders Group, Inc.*, No. CIV-06-297-C, 2006 WL 2773198, at *4, *6 (W.D. Okla. Sept. 25, 2006) (denying plaintiff's motion to stay because court lacked jurisdiction to consider it); *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 2685082 at

*5(denying motion to stay as moot because court lacked jurisdiction to consider it); *Mansariya v. Chertoff*, No. 06-CV-0553A, 2006 WL 2669465, at *2 (W.D.N.Y. Sept. 18, 2006) (citation string omitted) (denying motion to stay because court lacked jurisdiction to consider it).

 Because federal courts necessarily have limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, a plaintiff must demonstrate in its complaint that a federal court has proper jurisdiction—both personal and subject matter jurisdiction—over the action that the plaintiff seeks to bring at the time plaintiff chooses to bring the action. This demonstration of jurisdiction in the first instance is imperative because, as the Supreme Court has explained, "[if] a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1860-61 (2006) (vacating-in-part and remanding case for dismissal for lack of standing).

 Moreover, if a court lacks jurisdiction over an action, the court necessarily lacks the power to address, and thus is precluded from addressing, any non-jurisdictional motions regarding the underlying action. *See, e.g.*, *Berry*, 2006 WL 2773198, at *4 ("Because the Court lacks power to rule on a substantive motion or enter judgment, it may only announce its lack of subject matter jurisdiction and dismiss the action."). This includes motions to stay the underlying action.

> Plaintiff requests this court to stay her state law claims pending a decision by the Ohio Court of Claims rather than dismiss them. The court declines plaintiff's request because it lacks subject matter jurisdiction over the claims and therefore, cannot stay claims which are not properly before it.

*Bremiller v. Cleveland Psychiatric Inst.*, 879 F. Supp. 782, 789 (N.D. Ohio 1995).

 Also, as noted by this Court, a successful motion to dismiss will render the remaining motions pending before the court, including a motion to stay discovery, moot. *See Center for*

*Law & Educ. v. United States Dep't of Educ.*, 315 F. Supp. 2d 15, 33 (D.D.C. 2004) (J. Bates) (granting defendant's motion to dismiss and, thus, denying motion to stay as moot).

Here, because IMES' Complaint is not properly before this Court, IMES cannot properly request that the Court stay its lawsuit, and the Court lacks jurisdiction to do so. The cases cited by IMES in its motion to stay do not contradict this fundamental premise. IMES fails to cite a single case addressing a motion to stay where jurisdiction was not already firmly established. Indeed, of the nine cited cases that regarded motions to stay in light of related proceedings before the Patent Office or another agency, all nine were infringement or invalidity actions related to one or more issued U.S. patents, thus placing the action firmly within the court's jurisdiction under, for example, 28 U.S.C. § 1338(a) or 35 U.S.C. § 293.[4] This is not the case here. Moreover, the imposition of a stay will not cure any of the jurisdictional deficiencies now suffered by the Complaint, because questions of jurisdiction are determined at the time the Complaint was filed.[5]

## II.  EVEN IF THE COURT HAD JURISDICTION TO ENTERTAIN IMES' MOTION TO STAY AND DENIES SEL'S PENDING MOTION TO DISMISS, A STAY IS NOT WARRANTED

### A.    IMES' Requested Relief Is Contrary To The Allegations In Its Complaint

---

[4] *See Novartis Corp. v. Dr. Reddy's Labs., Ltd.*, No. 04 Civ. 0757, 2004 WL 2368007, at *1-2 (S.D.N.Y. Oct. 21, 2004) (infringement action related to issued patent); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 951-52 (W.D.N.Y. 1996) (same); *Canady, M.D. v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 65-66 (D.D.C. 2002) (same); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 405-06 (W.D.N.Y. 1999) (same); *Target Therapeutics, Inc. v. Scimed Life Sys., Inc.*, No. C-94-207775, 1995 WL 20470, at *1 (N.D. Cal. Jan. 13, 1995) (same); *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 60-61 (D.N. J. 1992) (same); *NL Chems., Inc. v. S. Clay Prods., Inc.*, Civ. Action No. 88-2620, 1989 WL 214495, at *1 (D.D.C. Nov. 20, 1989) (invalidity declaratory judgment action related to issued patent); *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 CIV 8815, 2000 WL 1134471, at *1 (S.D.N.Y. Aug. 10, 2000) (same); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 213 (D. Del. 1991) (same).

[5] *See, e.g.*, *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 236 (D.D.C. 2005) (dismissing case because personal jurisdiction did not exist at the time the complaint was filed); *Saadeh v. Farouki*, 107 F.3d 52, 56-57 (D.C. Cir. 1997) (vacating judgment and remanding with instructions to dismiss for lack of subject matter jurisdiction because such jurisdiction [*i.e.*, diversity of citizenship] was lacking at the time the complaint was filed); *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (affirming dismissal because issuance of patent after complaint was filed could not create subject matter jurisdiction when none existed at the time of filing).

IMES requests an order "staying further proceedings in the instant matter pending issuance of a Notice of Allowance" by the PTO for SEL's pending '843 application. Mot. at 1. IMES further states that "to preserve judicial economy, particularly where this case may be rendered moot by the PTO determination, this Court should stay this proceeding pending the PTO's determination regarding the patent claims sought by SEL." Mot. at 2. Likewise, IMES claims that the Court should "stay[] this case pending the PTO's final resolution of the '843 patent application." Mot. at 9. It is not entirely clear from IMES' motion whether it seeks a stay pending "Notice of Allowance" of the SEL '843 application that may be issued before any interference proceeding or a notice following the resolution of an interference proceeding. In any event, IMES' requested relief is simply not appropriate.

In its complaint, IMES is unambiguous about the prior acts it believes constitute the alleged torts committed by SEL and the harm it has suffered:

*    "SEL's actions in misappropriating the proprietary ideas and concepts of plaintiff IMES and using those ideas and concepts to file certain patent applications that are based substantially, if not entirely, upon those ideas and concepts." Compl. ¶ 1;

*    "All of said actions by SEL have caused the diminution in value of Plaintiff's Invention and of Plaintiff's corporation as a whole." Compl. ¶ 1;

*    "SEL knew, or reasonably should have known, at the time it filed the application for the Tsutsui '843 patent application that Kido was the inventor of the novel concepts and ideas embodied in that application." Compl. ¶ 47;

*    "After learning of Plaintiff's Invention and pressing him for details at the Conference, SEL raced to file a patent application in the USPTO based upon Kido's description of Plaintiff's Invention." Compl. ¶ 56;

*    "Plaintiff never granted Tsutsui and SEL permission or authorization to claim ownership in or inventorship of any of the information or concepts they obtained from Kido at the Conference." Compl. ¶ 61;

*    "SEL's filing of the Tsutsui '843 patent application. . .has constituted and continues to constitute an ongoing attempt to exclude IMES from using its own invention." Compl. ¶ 65;

16

\*      "SEL's filing of the Tsutsui '843 patent application and, in particular, the publication of that application all have had serious adverse financial effects on Plaintiff."  Compl. ¶ 67;

\*      "Defendant knowingly appropriated for itself Plaintiff's Invention and the ideas and concepts that underlay that invention.  Defendant has misappropriated the ideas and concepts forming the basis of Plaintiff's Invention in bad faith." Compl. ¶¶ 85-86;

\*      "Defendant's filing of the Tsutsui '843 [patent application]…constitutes unfair competition and unfair trade practice" and "misappropriation of Plaintiff's novel ideas and concepts and Plaintiff's Invention."  Compl. ¶ 88, 92;

\*      "SEL falsely identified Tsutsui as the inventor of the Tsutsui '843 patent application, which incorporates Plaintiff's invention."  Compl. ¶ 104;

\*      "SEL's false representation to the USPTO was made with knowledge and/or reckless disregard of the falsity of its statements and representations." Compl. ¶ 112;

\*      "The USPTO relied upon SEL's misrepresentations.  As described in the foregoing allegations herein, SEL's false representations to the USPTO caused harm to IMES" Compl. ¶¶ 116-117; and

\*      "Award Plaintiff monetary damages in excess of $30 million and in an amount to be determined at trial."  Compl. at p. 20.

IMES' Complaint does not hedge any bets.  It makes unambiguous allegations that SEL has committed tortious acts and that IMES has been harmed.[6]  IMES does not explain how a "Notice of Allowance" will change anything in its complaint or that its injury is somehow contingent on future events.  IMES has not made such representations because it simply cannot do so.  Either the recited events (such as SEL's filing and the Patent Office's publication of the '843 patent application) are actionable and have already harmed IMES and thus no subsequent act by the Patent Office (such as issuing a notice of allowance) will affect the scope of IMES' alleged causes of action against SEL, or the recited events are not yet actionable and the subsequent acts of the Patent Office may affect the scope of IMES' alleged claims against SEL.

---

[6] Allegations that, although unambiguous, nevertheless do not properly state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), as set forth more fully in SEL's pending motion to dismiss [D.I. 5 at 21-34].

In the former case[7], the requested stay is futile and should be denied; in the latter case, IMES has failed to state a proper claim in its Complaint and it should be dismissed. Either way, a stay is simply not warranted. If the case is not dismissed, then SEL should be entitled to immediately respond on the merits to IMES' false claims and pursue any of its own claims against IMES.

## B.    The Relief IMES Seeks Is Unprecedented

The cases cited by IMES are simply not relevant to the issue presented here. First, all of the cited patent cases addressing stays involve charges of patent infringement (either as an underlying cause of action or as support for a declaratory judgment action) wherein the party defending against charges of patent infringement seeks the stay. None of the cases involve the party that is attempting to enforce its rights in the patent seeking the stay. Courts will reject requests for a stay under such a circumstance. *Id.*[8]

None of the cases cited by IMES imposed a stay of litigation when one or more of the patent applications at issue ***were still being examined*** by the Patent Office, as is the case here. And none of the cases cited by IMES support staying a litigation when an interference proceeding between two patent applications has only been suggested to the Patent Office, as is also the case here. Most of the cases cited by IMES regard patent reexamination or reissue proceedings.[9] As explained above, patent reexamination and reissue proceedings differ from

---

[7] IMES makes other representations in its motion that further contradict its claim that subsequent acts by SEL or the Patent Office regarding the SEL '843 application will affect the scope of its alleged causes of action against SEL. For example, IMES claims that it was "forced…to bring this case in order to preserve its rights, given the possible application of statutes of limitations." Mot. at 4-5. This very statement presumes past acts and undercuts IMES' argument that future acts of the Patent Office will "directly affect" IMES' claims in this case. Moreover, SEL's mere invocation of the "possible application of statutes of limitation" is a red herring, because (as explained in SEL's motion to dismiss [D.I. 5 at 21-35]) the allegations recited in IMES' Complaint fail to state any claim under Fed. R. Civ. P. 12(b)(6) and, thus, there is no claim to toll. And, to the extent IMES may have properly stated a claim, the time prescribed by the respective statute of limitation has already passed.

[8] Indeed, *Johnson & Johnson, Inc. v. Wallace A. Erickson & Co.*, 627 F.2d 57 (7th Cir. 1980), the only case cited by IMES to support its assertion that courts have granted stays when patentees themselves seek a reissue of their own patents is to the contrary – the court reversed and denied the stay.

[9] Seven of IMES' nine cases considering stays did so in light of Patent Office reexaminations. *See Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 951-52 (W.D.N.Y. 1996); *Canady, M.D. v. Erbe Elektromedizin GmbH,*

Patent Office interference proceedings in many ways—including effect, scope, purpose, and duration—and, thus, are not relevant to the present case. The remaining case cited by IMES— *NL Chemicals, Inc. v. Southern Clay Products, Inc.*, Civ. Action No. 88-2620, 1989 WL 214495, *2 (D.D.C. Nov. 20, 1989)—is distinguishable from the current situation for several reasons. In *NL Chemicals*, the plaintiff had filed an action under 35 U.S.C. § 291 between two issued patents for judgment of invalidity of the defendant's adverse interfering patent; the underlying action was not limited to state law tort claims. *NL Chem.*, 1989 WL 214495 at *1. Moreover, in *NL Chemicals*, the Patent Office had already completed examination of the patent application at issue, already declared an interference requested by the Defendant, and expressly had indicated to the court that it was awaiting the court's decision on defendant's motion to stay before moving forward with the declared interference. *Id.* at *6. Clearly, none of these factors are present in this case.[10]

The cases cited by IMES can be further distinguished because none of them involved lawsuits where the underlying claims were limited solely to state law tort claims, as is the case here. All of the cases cited by IMES involved parties requesting to stay underlying infringement or invalidity declaratory judgment actions for existing, issued patents. This distinction is important because while courts may stay patent infringement and invalidity claims pending the

---

271 F. Supp. 2d 64, 65-66 (D.D.C. 2002); *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 CIV 8815, 2000 WL 1134471, at *1 (S.D.N.Y. Aug. 10, 2000); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 405-06 (W.D.N.Y. 1999); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 213 (D. Del. 1991); *Target Therapeutics, Inc. v. Scimed Life Sys., Inc.*, No. C-94-207775, 1995 WL 20470, at *1 (N.D. Cal. Jan. 13, 1995); *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 60-61 (D.N. J. 1992).

[10] While IMES does not appear to be seeking a stay pending conclusion of an interference proceeding in the Patent Office, we also note that the continued absence of a declared interference in the Patent Office warrants denial of a stay even if IMES had requested that relief. *See, e.g.*, *Amersham Int'l PLC v. Corning Glass Works*, 618 F. Supp. 507, 510 (E.D. Mich. 1984). In *Amersham International*, the district court refused to grant a stay where "no interference proceeding has been declared, [movant] merely having filed a request for such a proceeding. The decision whether to declare such a proceeding is discretionary with the patent office. Thus, if the motion to stay is granted, the priority of invention issue present in this case would *not* be before any tribunal for decision." *Id.* (emphasis in original); *see also Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites*, 436 F. Supp. 2d 252, 253 (D. Mass. 2006) (denying stay where reexamination had been requested but not granted by the Patent Office).

outcome of Patent Office proceedings regarding the asserted patent, courts will not stay state law claims such as the ones alleged by IMES in its Complaint.  *See In re Laughlin Prods., Inc. Patent Litigation*, 265 F. Supp. 2d 525, 531-33, 538 (E.D. Pa. 2003) (granting only a "partial stay" for pending reexamination that would "in no way prevent Defendants from conducting discovery related to, or otherwise prosecuting, their affirmative claims of unfair competition, defamation, disparagement, and tortuous interference with prospective economic advantage as such claims are entirely separate from the patent invalidity and non-infringement issues.").[11]

If the Court grants this unprecedented request for a stay, the Court will then open the floodgates for countless plaintiffs to file and stay lawsuits against other patent applicants regarding issues of patentability yet to be determined by the Patent Office.  Such cases would unnecessarily and improperly tax the courts' resources by involving them in the examination and oversight of thousands and thousands of pending patent applications and effectively transform the courts into a new Patent Office.  As such and because the requested stay is contrary to basic notions of fundamental fairness, the Court should deny the motion.

**C.    IMES' Requested Stay Is Unwarranted Because IMES Cannot Demonstrate The Required "Clear Case Of Hardship Or Inequity" To Support A Stay Of Its Own Action Against SEL And The Equities Weigh Against It**

IMES critically fails to establish the basic requirements of obtaining a stay of court action in the District of Columbia pending the resolution of an independent proceeding elsewhere.

---

[11]  Likewise, in *Bausch & Lomb Inc. v. Alcon Laboratories, Inc.*, 914 F. Supp. 951 (W.D.N.Y. 1996), the court stated that the Patent Office already had instituted a reexamination proceeding against the asserted patent (in a patent infringement case) to determine the validity of the patent.  *Bausch & Lomb*, 914 F. Supp. at 952.  The court then noted that "in the trial currently scheduled before it, this Court too has been asked to determine the validity of the [asserted] patent, as well as other matters contingent on its validity."  *Id.*  The court also explained that the "reexamination procedure currently underway could eventually invalidate the [asserted] patent" and "[b]ecause the reexamination is to be conducted 'with special dispatch,' I find that a short stay of the proceedings before me will not greatly prejudice any party."  *Id.* at 953.  Clearly, this is not the case here.

While a court has discretion to grant such a stay, it must "weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1935). Specifically,

> [T]he suppliant for a stay must make out *a clear case of hardship or inequity* in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis*, 299 U.S. at 255; *see also Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites*, 436 F. Supp. 2d 252, 253 (D. Mass. 2006) (denying stay for PTO reexamination proceeding, citing *Landis*; "[T]he Court concludes that there is a substantial danger that a stay will prejudice [the non-movant] and that [the movant] has not demonstrated a clear case of hardship if the stay does not issue."); *IMAX Corp. v. In-Three, Inc.*, 358 F. Supp. 2d 1030, 1032-1034 (C.D. Cal. 2005) (same).   Nor should a court grant "a stay of *indefinite duration* in the absence of a pressing need." *Landis*, 299 U.S. at 255.  Based on this framework, the court in *Landis* vacated a lower court's stay—which was granted pending the final determination, including appeal, of a related litigation—noting "a second year or even more may go by" before such a stay might be lifted.  *Id.* at 256.[12]  Here, IMES cannot demonstrate such "pressing need" and, indeed, has failed to show *any* underlying hardship or inequity it might face in proceeding with its own case, and yet IMES moves this court for an indefinite stay.

---

[12] *See also, e.g., Dellinger v. Mitchell*, 442 F.2d 782, 786-88 (D.C. Cir. 1971) (invalidating civil action stay which had been granted pending outcome of related criminal action, citing *Landis*, and concluding "Any protracted halting or limitation of [the non-movant's] right to maintain their case would require not only a showing of 'need' in terms of protecting the other litigation involved but would also require a balanced finding that such need overrides the injury to the parties being stayed."); *Barton v. District of Columbia*, 209 F.R.D. 274, 279 (D.D.C. 2002) (denying plaintiff's motion to stay because he had not "made out a clear case of hardship or inequity," citing *Landis* and *Dellinger*, and requiring him to respond to defendants' motion to dismiss).

Furthermore, IMES' initiation of this litigation after it requested an interference proceeding in the Patent Office undercuts any attempt by IMES to show hardship or inequity. Courts have rejected plaintiff's motions for stays in such situations.

> Plaintiff has provided no authority where a plaintiff in a patent infringement case has instituted litigation in court, advised customers of its competitor of the litigation, then requested reexamination by the PTO and requested a stay of the litigation pending reexamination.…[A] stay…would be prejudicial to defendant and give plaintiff an unfair competitive advantage."

*Wayne Automation Corp. v. R. A. Pearson Co.*, 782 F. Supp. 516, 519 (E.D. Wash. 1991); *see also, e.g., Gladish v. Tyco Toys Inc.*, Civ. No. S-92-16666, 1993 WL 625509, at *3 (E.D. Cal. 1993) (denying stay where "Plaintiff chose this forum, forced [defendant] to expend time and money" to defend itself, and then sought reexamination and a stay).

In its motion for stay, IMES lists three factors that courts consider "in light of a concurrent PTO proceeding," including "(1) whether the stay would unduly prejudice the non-moving party; (2) whether the stay would simplify the issues in question…and (3) whether discovery is complete and a trial date is set."  Mot. at 6.  As shown earlier, because the initial examination of a patent application is not a "concurrent PTO proceeding" as used in IMES' cited cases, such factors are irrelevant here—especially in view of the indefinite nature of the stay now sought by IMES—nevertheless, the first two factors weigh heavily in favor of SEL and warrant denial of IMES' motion to stay.

A stay in this case would unduly prejudice SEL, because the allegations of theft, misrepresentation, and unfair competition leveled by IMES against SEL and Dr. Tsutsui have harmed SEL and Dr. Tsutsui and continue to tarnish their reputations in the OLED community. Any delay that prevents SEL from asserting defenses against such specious allegations (and any

other counterclaims against IMES) effectively puts SEL out of court and allows the harm against

SEL (and Dr. Tsutsui) to compound further.

> [The non-movant] is in the ***clear danger of being damaged by untoward
> delay***….[T]he interference was approved on the basis of [movant's] *ex parte*
> petition [and was] likely to cover a protracted period….The Patent Office took
> over 1 1/2 years on [movant's] petition before declaring it would grant an
> interference proceeding.  It is unclear how long the remaining process will take."

*Amersham Int'l v. Corning Glass Works*, 108 F.R.D. 71, 72 (D. Mass. 1985); *see also IMAX*

*Corp. v. In-Three, Inc.*, 358 F. Supp. 2d 1030 (C.D. Cal. 2005) (denying stay pending a Patent

Office reexamination proceeding).  SEL likewise is "in clear danger of being damaged by

untoward delay" if IMES' motion to stay is granted.

> [Defendant] has a ***strong interest in concluding this lawsuit without delay***.  The
> reexamination procedure can take a year and involve appeals before the appellate
> tribunals of the PTO and the Court of Appeals for the Federal Circuit.
> [Defendant's] customers apparently are informed that the plaintiff claims
> infringement…Plaintiff has not set out a case of hardship should the stay be
> denied.  Under the circumstances, the court concludes that the issuance of a stay
> would be unfair to defendants.

*Gladish v. Tyco Toys Inc.*, Civ. No. S-92-16666, 1993 WL 625509, at *3 (E.D. Cal. 1993)

(denying stay and noting "plaintiff chose this forum" and "forced [defendant] to expend time and

money in responding"); *see also Wayne Automation Corp.*, 782 F. Supp.516, 519-20 (finding

that a stay "would be prejudicial to defendant and give plaintiff an unfair competitive

advantage...The court further finds that defendant is entitled to a speedy resolution of this matter,

as is the plaintiff.")

Moreover, as discussed in Section A above, the stay requested by IMES (whether it be

tied to the Patent Office's grant of a Notice of Allowance before or after the suggested

interference proceedings are completed) will ***not*** simplify the issues in question, because the

future acts of SEL and the Patent Office with respect to the examination of the SEL '843 patent

23

application do not bear on the alleged torts of unfair competition and injurious falsehood

included in IMES' Complaint.  Finally, with respect to the third factor, while it is true that this

case is in its early stages, IMES should not be rewarded for its improper behavior of filing a

specious complaint and seeking a stay of such litigation before SEL has the opportunity to

defend itself.

## **CONCLUSION**

For at least the reasons set forth above, SEL respectfully requests that this Court deny

IMES' Motion to Stay.  Pursuant to LCvR 7(f), SEL respectfully requests an oral hearing related

to SEL's opposition to IMES' Motion to Stay.


Dated: November 13, 2006                    Respectfully submitted,

                                            By: /s/ Michael J. McKeon
                                            Michael J. McKeon (Bar No. 759780)
                                            Brian T. Racilla (Bar No. 473395)
                                            Joshua B. Pond (Bar No. 494722)
                                            FISH & RICHARDSON P.C.
                                            1425 K Street, N.W., 11th Floor
                                            Washington, D.C.  20005
                                            Tel:  (202) 783-5070
                                            Fax:  (202) 783-2331

                                            Counsel for Defendant Semiconductor Energy
                                            Laboratory Company, Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on this 13th day of November, 2006, with a copy of **DEFENDANT SEMICONDUCTOR ENERGY LABORATORY COMPANY, LTD.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY** via the Court's CM/ECF system per LCvR 5.4.

**Daniel John Healy, Esq.** (**Bar No. 476233**)
ANDERSON KILL & OLICK, LLP
2100 M Street, NW
Suite 650
Washington, DC 20037
Tel: (202) 218-0048
Fax: (202) 218-0055
Email: dhealy@andersonkill.com

Attorney for Plaintiff International
Manufacturing and Engineering
Services Company, Ltd.

/s/ Michael J. McKeon
Michael J. McKeon

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**INTERNATIONAL MANUFACTURING**
**AND ENGINEERING SERVICES**
**COMPANY, LTD.,**

          **Plaintiff,**

  **v.**

**SEMICONDUCTOR ENERGY**
**LABORATORY COMPANY, LTD.,**

          **Defendant.**

Case No. 1:06-CV-01230 JDB

**[PROPOSED] ORDER**

    **IT IS HEREBY ORDERED** this _____ day of _____, 2006 that:

    Plaintiff International Manufacturing and Engineering Services Company, Ltd.'s Motion for Stay (filed October 31, 2006; D.I. 12) is DENIED.

                                      _____
                                      JOHN D. BATES
                                      UNITED STATES DISTRICT JUDGE