## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

INTERNATIONAL MANUFACTURING
AND ENGINEERING SERVICES
COMPANY, LTD.

               Plaintiff,

      v.

SEMICONDUCTOR ENERGY
LABORATORY COMPANY, LTD,

               Defendant.

**CASE NO.:  1:06CV01230**

**Judge John D. Bates**

## AMENDED COMPLAINT

Plaintiff International Manufacturing and Engineering Services Company, Ltd. ("IMES" or "Plaintiff") by its undersigned attorneys submit the following as its amended complaint against Semiconductor Energy Laboratory Company, Ltd. ("SEL" or "Defendant"):

## NATURE OF ACTION

1.      As set forth in this Amended Complaint, the Defendant SEL has unfairly misappropriated an invention belonging to IMES and has filed patent applications for that invention, falsely claiming that its employee was the inventor. The patent applications filed by SEL, described in detail below, rightfully belong to IMES and all benefit derived from them rightfully belongs to IMES.  All of said actions by SEL have caused the diminution in value of Plaintiff's Invention and of Plaintiff's corporation as a whole.  IMES seeks damages, injunctive relief and a constructive trust in its favor.

**THE PARTIES**

2.      Plaintiff IMES is a Japanese corporation authorized to do business in the United States with an address at 3 Kirihara-cho, Fujisawa-shi Kanagawa 252-0811, Japan.

3.      Defendant SEL is a Japanese corporation with a principal place of business at 398 Hase, Atsugi-shi, Kanagawa 243-0036 Japan.

**JURISDICTION**

4.      This Court has personal jurisdiction over the defendant pursuant to 35 U.S.C. § 293.

5.      This Court  has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) (arising under the patent laws).

6.      This Court also has subject matter jurisdiction over this action  pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that Plaintiff's unfair competition claim arises under the Paris Convention for the Protection of Industrial Property.

7.      The Paris Convention for the Protection of Industrial Property (the "Paris Convention") provides that:  "[t]he countries of the Union are bound to assure to nationals of such countries effective protection against unfair competition."  Paris Convention, Article 10bis, Unfair Competition.

8.      Both Japan and the United States are signatories to the Paris Convention.

9.      The adoption of an international treaty such as the Paris Convention constitutes an Act of Congress.

10.     This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

## VENUE

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b).


## PLAINTIFFS' PROTECTED INVENTION

12.    Organic light emitting devices ("OLED") in general terms are devices composed of organic layers connected to a transparent anode and a cathode so that light will be emitted from the device when connected to a source of electrical energy. OLEDs are intended to be used to provide flat panel lighting displays for use in electrical products in many different fields of technology to provide what is conventionally referred to as "back-up lighting".

13.    Junji Kido, Ph.D. is a professor at Yamagata University in Japan and is an independent contractor of IMES in Japan.

14.    Kido is an agent of IMES and has a confidential relationship with IMES, wherein he is obligated to maintain the secrecy of IMES' confidential and proprietary information.

15.    Among other things, Kido's work for IMES included research and development of improved OLED devices.

16.    Through months of research and testing, Plaintiff, by and through its agents and employees, developed and invented the structure of an OLED that is able to attain and exceed 100% quantum efficiency ("Plaintiff's Invention").

17.    Prior OLED devices possessed quantum efficiencies well below 10% and, as such, had limited commercial utility.

18.    Plaintiff's method and structure for achieving a level of quantum efficiency, previously considered theoretically impossible to attain, is based upon a discovery of "Multi-Photon Emission" achieved by interconnecting separate electroluminescent units or cells each having a plurality of organic layers arranged to form a stacked OLED structure in which the separate electroluminescent units are transparent and allow for balanced electron and hole injection between a cathode and anode though the organic layers of the OLED.

19.    IMES' method and structure for achieving greater quantum efficiency are novel ideas and concepts.

20.    IMES holds these novel ideas as confidential and proprietary information and trade secrets ordinarily disclosed to the Patent Office only for purposes of prosecuting patent applications (including interference proceedings).

21.    On March 26, 2002, Plaintiff filed Patent Application No. 2002-86599 with the Japanese patent office claiming Plaintiffs' Invention.  Plaintiff claims this prior patent application in the Kido '952 patent application (defined below).

22.    On March 1, 2003, Plaintiff filed a Patent Application Serial No. 10/393,952 in the United States Patent and Trademark Office ("USPTO") identifying joint inventors Kido et al., claiming Plaintiffs' Invention ("Kido '952").  In accordance with an agreement that was made between IMES and Kido prior to the filing of the Kido '952 patent application, Kido assigned the '952 patent application to IMES.  A copy of the assignment is attached hereto as Exhibit A.

23.    On March 13, 2003, Plaintiff filed Patent Application No. 2003-70135 with the Japanese patent office based on Plaintiffs' Invention.

24.    The Kido '952 patent application and the Japanese Patent Application No. 2003-70135 both are based upon the priority date of the prior-filed Japanese Patent Application No. 2002-86599.

25.    A detailed explanation of Plaintiff's Invention is set forth in the Kido '952 patent application.

## EUROPEAN CONFERENCE

26.    The European Conference On Organic Electronics And Related Phenomena 2001 ("Conference") was held in Potsdam, Germany on November 18-21, 2001.

27.    The Conference included a presentation by Kido on the subject Organic Light Emitting Devices entitled: " Where We Are and Where We Go."

28.    Kido was the Conference Chairman of the session entitled "Organic Light-Emitting Devices 11."  Dr. Tetsuo Tsutsui ("Tsutsui"), a Professor at Kyushu University in Japan, was the Committee Chairman of the session entitled "Polymer Semiconductors."  Both gave lectures at the Conference.

29.    Many of the Conference presentations were given by session chairpersons who are also professors and/or known scholars in the disciplines relevant to OLED, semiconductors and other related technology.

30.    Like Kido, Tsutsui was a session chairperson at the Conference and widely known by those skilled in the art for his research in OLED devices.

31.    Kido's presentation generally covered the materials and structure of OLEDs, their physics and the chronological progress of their performance over time.

32.    The presentation by Kido addressed the structure of OLEDs and focused on the physics and molecular structure of known OLEDs including the application of chemical doping using doped organic materials to provide chemically doped interfaces.

33.    Kido's presentation addressed the need for balanced carrier injection of electrons and holes between the cathode and anode through the organic layers of the OLED.

34.    During the presentation, Kido revealed an entirely new concept referred to as "Multi-Photon Emission" in a discussion under the heading of "new technologies."

35.    The concept of "Multi-Photon Emission" was introduced to set it apart and contradict the conventional understanding in the industry at that time that the theoretical limit of quantum efficiency of OLED devices was 100%.

36.    Prior to Plaintiff's Invention, it was understood that only one photon could be generated per electron.  That theoretical limit of one photon per electron limited any known electroluminescent device, including an OLED, regardless of its structure and independent of its material composition.

37.    Kido's new concept embodied in Plaintiff's Invention permits quantum efficiencies of 100% and over up to e.g., more than 10 times what was considered to have been theoretically possible at the time of the Conference.

38.    Plaintiff's Invention not only increases brightness by increasing photon output, but also substantially increases the lifetime limitations of OLED devices.

39.    Tsutsui attended Kido's presentation at the Conference.

40.    A "question and answer" session followed Kido's presentation, at which time the concept underlying the subject of "Multi-Photon Emission" was directly

challenged.  The audience was made up of acknowledged experts in the field of OLED devices.  Members of the audience were skeptical of the new concept of Multi-Photon Emission in that the concept directly contradicted the then conventional understanding of the physics of an OLED device.

41.    Tsutsui questioned Kido as to whether Kido was certain that such high quantum efficiencies were possible.  Kido made clear that he had been able to build devices that substantiated the concept of Multi-Photon Emission that his presentation addressed.

42.    At the end of  the "question and answer" session and the later discussions, the concept of "stacking" to attain and increase quantum efficiency above 100% was discussed.

43.    After Kido's presentation, Kido, Tsutsui and others discussed the Multi-Photon Emission and how such high quantum efficiencies were possible from an OLED.

44.    Further, the concept of using interlayer(s) to provide balanced electron injection and hole injection was discussed during and after the presentation.

45.    Tsutsui continued to press Kido, for hours after the presentation, for details and proof that "Multi-Photon Emission" could be achieved and to provide further explanation of the concepts that Kido only had described generally in his presentation.

46.    It was after the presentation, when Tsutsui pressed Kido for further explanation and information of the concepts, that the subjects of "stacking" and the selection of the interlayer(s) to provide balanced injection of electrons and holes were drawn out by Tsutsui.

47.     Kido was induced into disclosing certain details, when Tsutsui pressed him for details and explanations after his presentation had concluded.

48.     Both stacking and the proper selection of the interlayer(s) are necessary to achieve Multi-Photon Emission with a quantum efficiency above 100% and to achieve up to or greater than 10 times the conventional device life.

## DEFENDANT'S MISAPPROPRIATION OF PLAINTIFFS' INVENTION

49.     On December 4, 2002, SEL filed a Patent Application in the USPTO Serial No. 10/309,843 that was published as Pub. No. US 2003/0127967 A1 on July 10, 2003 (hereafter "Tsutsui '843").

50.     Subsequent to filing the Tsutsui '843 patent application, SEL has filed further patent applications derivative of the Tsutsui '843 patent application, including, but not limited to, continuation, continuation-in-part and divisional patent applications (the "SEL Derivative Patent Applications").

51.     SEL knew, or reasonably should have known, at the time it filed the application for the Tsutsui '843 patent application that Kido was the inventor of the novel concepts and ideas embodied in that application.

52.     SEL knew, or reasonably should have known, at the time it filed the application for the SEL Derivative Patent Applications that Kido was the inventor of many, if not all, of the novel concepts and ideas embodied in those application.

53.     If SEL had truthfully disclosed to the USPTO that Kido was the inventor of the novel concepts and ideas embodied in the Tsutsui '843 patent application and the

SEL Derivative Patent Applications or if SEL now disclosed that fact to the USPTO prior to grant, the USPTO would reject that patent application and refuse to grant registration.

54.    The concepts expressed in Kido's presentation correspond directly to the subject matter contained in the Tsutsui '843 patent application and the SEL Derivative Patent Applications.

55.    Many of the concepts discussed in the "question and answer" session following Kido's presentation and discussed thereafter at the Conference correspond directly to the subject matter claimed in the Tsutsui '843 patent application and substantially all, if not all, of the subject matter claimed in the SEL Derivative Patent Applications.

56.    The subject matter claimed in the Tsutsui '843 patent application and substantially all, if not all, of the subject matter claimed in the SEL Derivative Patent Applications was not invented by any of the inventors or assign identified in that patent application, but instead was directly taken without permission from IMES (through Kido).

57.    Essential features of Plaintiff's Invention are recited in the Tsutsui '843 patent application and in the SEL Derivative Patent Applications.

58.    The Conference and Kido's presentation took place prior to the filing of the Tsutsui '843 patent application and the SEL Derivative Patent Applications.

59.    The purported inventions identified in the Tsutsui '843 patent application, as well as the SEL Derivative Patent Applications, recites and/or relies upon not only the general concepts Kido discussed in the main presentation and that were raised in the "question and answer" period, but also recites the information that Tsutsui

improperly obtained when he pressed Kido for information over the course of several hours after the presentation had ended.

60.    After learning of Plaintiff's Invention and pressing him for details at the Conference, SEL raced to file a patent application in the USPTO based upon Kido's description of Plaintiff's Invention.

61.    Neither Tsutsui '843 patent application nor any of the SEL Derivative Patent Applications identify or disclose that (a) IMES is the inventor, owner or assignee, or (b) their basis in the Kido '952 patent application.

62.    The USPTO's publication of the Tsutsui '843 patent application was the first disclosure of any information indicating that SEL had misappropriated and taken for its own advantage Plaintiff's Invention and/or any of the ideas and concepts forming the basis of that invention.

63.    Plaintiff never granted Tsutsui or SEL permission or authorization to use any of the information or concepts they obtained from Kido at the Conference.

64.    Plaintiff never granted Tsutsui or SEL permission or authorization to file a patent application for any of the information or concepts they obtained from Kido at the Conference.

65.    Plaintiff never granted Tsutsui and SEL permission or authorization to claim ownership in or inventorship of any of the information or concepts they obtained from Kido at the Conference.

66.    The inventions claimed in the Tsutsui '843 patent application that were, upon information and belief, derived and appropriated from the concepts developed and invented by Kido and assigned to IMES.

67.    If SEL is permitted to maintain and continue to prosecute the Tsutsui '843 patent application and the SEL Derivative Patent Applications, SEL would thereby retain an exclusive right to the claimed invention therein as against the World, including Plaintiff.

68.    If the Tsutsui '843 patent application or any of the SEL Derivative Patent Applications is granted, it will be an exclusive right to the claimed invention therein as against the World, including Plaintiff.

## SEL'S ACTIONS HAVE HARMED IMES

69.    SEL's filing of the Tsutsui '843 patent application, and its subsequent filing of each of the SEL Derivative Patent Applications, has constituted and continues to constitute an ongoing attempt to exclude IMES from using its own invention.

70.    SEL's maintenance and any use by SEL of the Tsutsui '843 patent application, or any of the SEL Derivative Patent Applications, has constituted and continues to constitute an ongoing attempt to exclude IMES from using its own invention.

71.    Plaintiff's Invention is the primary asset that constitutes a substantial portion of its corporate value.  Plaintiff has invested several million dollars in researching and developing the ideas and concepts embodied in the Plaintiff's Invention.  SEL's unauthorized appropriation of Plaintiff's Invention and the ideas and concepts on which the invention is based, SEL's filing of the Tsutsui '843 patent application and, in particular, the publication of that application all have had serious

adverse financial effects on Plaintiff. The publication of each of the SEL Derivative Patent Applications has had similar adverse financial effects on Plaintiff.

72.    SEL's unauthorized appropriation of Plaintiff's Invention and the ideas and concepts on which the invention is based, SEL's filing of the Tsutsui '843 patent application and, in particular, the publication of that patent application and the publication of the SEL Derivative Patent Applications all have caused the diminution in value of Plaintiff's Invention and of Plaintiff corporation as a whole.

73.    SEL's injurious falsehood in claiming that Tsutsui is the inventor of patents that include Plaintiff's Invention, including the Tsutsui '843 patent application and the SEL Derivative Patent Applications, has placed a cloud over IMES ownership of Plaintiff's Invention and caused the diminution in value of Plaintiff's Invention and of Plaintiff corporation as a whole.

74.    Similarly, the publication of the Tsutsui '843 patent application has caused the diminution in value of Plaintiff's Invention and of Plaintiff's corporation as a whole.

75.    Plaintiff has suffered additional damages in that it has been forced to expend attorneys' fees in the prosecution of this action in order to remove the cloud on title created by SEL's injurious falsehood.

76.    All of the aforesaid damages have been incurred as the direct result of injurious falsehood in the Tsutsui '843 patent application and the SEL Derivative Patent Applications.

77.    Plaintiff will suffer further substantial damages if the Tsutsui '843 patent application, or any of the SEL Derivative Patent Applications, issues as a patent.

78.    SEL has been unjustly enriched to the detriment of Plaintiff.

79.    Plaintiff has been damaged in an amount to be determined at trial.

## COUNT I
## (Unfair Competition)

80.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-79 herein, inclusive.

81.    The ideas and concepts developed by Plaintiff that underlie Plaintiff's Invention were novel at the time they were developed and at the time of the Conference.  They remain novel today.

82.    IMES had a confidential relationship with Kido.

83.    Tsutsui publicly questioned Dr. Kido and asked what was required of an electroluminescent device to achieve "Multi-Photon Emission," challenging the veracity of Kido's novel ideas and concepts.

84.    In the excitement to dispel the skepticism of his peers regarding the scientific feasibility of Kido's novel ideas and concepts, Dr. Kido answered Tsutsui's questions that challenged the very basis of Kido's invention.  Kido's answers, when combined with the information of Kido's presentation, provided certain confidential and trade secret information of IMES.

85.    Tsutsui and SEL did this in order to misappropriate IMES' confidential information and, ultimately, Plaintiff's Invention.

86.    Prior to the time of the Conference, Defendant had been unaware of the novel ideas and concepts developed by the Plaintiff.

87.    IMES invested several million dollars in researching and developing the ideas and concepts embodied in the Plaintiff's Invention.

88.     Upon information and belief, by misappropriating and taking for itself the novel concepts and ideas embodied in the Plaintiff's Invention, SEL was able to compile and file the Tsutsui '843 patent application with minimal if any investment in research and development.

89.     By misappropriating the novel concepts and ideas embodied in the Plaintiff's Invention, SEL effectively misappropriated IMES research and development and the resources expended by IMES in reaching the development of the Plaintiff's Invention.

90.     Defendants has caused direct and proximate harm to IMES by misappropriating the ideas and concepts embodied in the Plaintiff's Invention.

91.     Defendant knowingly appropriated for itself Plaintiff's Invention and the ideas and concepts that underlay that invention.

92.     Defendant has misappropriated the ideas and concepts forming the basis of Plaintiff's Invention in bad faith.

93.     Defendant used those misappropriated ideas and concepts to file the Tsutsui '843 patent application.

94.     Defendant's filing of the Tsutsui '843, which is based on the novel ideas and concepts relating to OLED technology developed exclusively by Kido and assigned to IMES, was intended to deprive Kido and IMES of the right to the use of that proprietary information, and constitutes unfair competition and an unfair trade practice.

95.     Plaintiff first learned that Defendant had misappropriated the ideas and concepts forming the basis for Plaintiff's Invention after the USPTO published the Tsutsui '843 patent application, disclosing the claims in that application.

96.    Defendant SEL's pirating and use of the concepts, ideas and invention developed by IMES and Kido and SEL's claim of exclusive ownership of those ideas, concepts and invention is actionable under the law of unfair competition.

97.    Defendant's attempt to monopolize for its own use and exploitation novel ideas and concepts and an invention embodying those ideas and concepts, when in fact it obtained them from Plaintiff, is actionable under the law of unfair competition.

98.    Defendant's filing of the Tsutsui '843 patent application constitutes, among other things, misappropriation of Plaintiff's novel ideas and concepts and Plaintiff's Invention.

99.    Upon information and belief, Defendant intends to use the Tsutsui '843 patent application and each of the SEL Derivative Patent Applications which, if ultimately granted, would enable Defendant or Defendants' licensees to compete against Plaintiff and exclude Plaintiff from selling products that include the novel ideas and concepts developed by Plaintiff.

100.    Plaintiff has been damaged in an amount to be determined at trial and, with respect to continuing prosecution of the Tsutsui '843 patent application and the SEL Derivative Patent Applications, Plaintiff has no adequate remedy at law and therefore is entitled to injunctive relief.

101.    Plaintiff also seeks a constructive trust over the Tsutsui '843 patent application, the SEL Derivative Patent Applications and all other U.S. or foreign patents or patent applications that correspond in whole or in part to the Tsutsui '843 patent application, together with all U.S. and foreign patents or patent applications that embody Plaintiff's Invention or the confidential and proprietary ideas and concepts that form the

basis of that invention; and for an accounting of all benefits realized by SEL as a result of the use of any of those patents or patent applications or the misappropriation of Plaintiff's Invention or the confidential and proprietary ideas and concepts that form the basis of that invention.

102.   Plaintiff's Invention and the ideas and concepts that form the basis of that invention constitute intangible property that belongs to Plaintiff.

103.   Defendant improperly obtained confidential information about Plaintiff's Invention through acts of unfair competition.

104.   Defendant's unpermitted use of and unpermitted appropriation of Plaintiff's Invention or the ideas and concepts forming the basis of that invention constitutes a wrongful act for all of the reasons stated in the foregoing allegations.

105.   Defendant misappropriated and wrongfully has taken for its own use Plaintiff's intangible property that is traceable to Plaintiff.

106.   The Tsutsui '843 patent application and each of the SEL Derivative Patent Applications discloses an invention which embodies, is derived from or is based upon Plaintiff's Invention or the ideas and concepts forming the basis of that invention.

107.   SEL wrongfully misappropriated Plaintiff's Invention and the ideas and concepts upon which that invention is based and wrongfully gained an ownership interest in that invention through the purported assignment of the Tsutsui '843 patent application.  SEL also wrongfully acquired the SEL Derivative Patent Applications  and all other U.S. or foreign patents or patent applications that embody Plaintiff's Invention or the confidential and proprietary ideas and concepts that form the basis of that invention.  These patents and patent applications are rightfully the property of IMES.

108.    For numerous reasons, including that the ideas and concepts upon which the Tsutsui '843 patent application is based were invented by Kido and are owned by IMES, that the Tsutsui '843 patent application contains or embodies the Plaintiff's Invention, that each of the SEL Derivative Patent Applications also are based on those ideas and concepts invented by Kido, that SEL and Tsutsui only learned of those ideas and concepts embodied in the Plaintiff's Invention by wrongly taking them from Kido at the Conference and did not develop or invent them independently, that SEL now seeks to obtain a patents for those ideas and concepts in order to keep IMES from using Plaintiff's Invention and that SEL fraudulently misrepresented to the USPTO that it owned all of the novel ideas and concepts in the Tsutsui '843 patent application and the SEL Derivative Patent Applications and, thereby, obtained publication of the Tsutsui '843 patent application and many of the SEL Derivative Patent Applications, SEL should not, in good conscience, be allowed to keep or claim ownership of or right in the Tsutsui '843 patent application.

**COUNT II**
**(Unfair Competition under Paris Convention)**

109.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-108 herein, inclusive.

110.    The Paris Convention for the Protection of Industrial Property (the "Paris Convention") provides that:  "[t]he countries of the Union are bound to assure to nationals of such countries effective protection against unfair competition."  Paris Convention, Article 10*bis*(1).

111.    Both Japan and the United States are signatories to the Paris Convention.

112.    The adoption of an international treaty such as the Paris Convention constitutes an Act of Congress.

113.    The Paris Convention provides that "Any act of competition contrary to honest practices in industrial or commercial matters constitutes an act of unfair competition."  Article 10*bis.*

114.    Plaintiff's allegations set forth in Count I relating to Defendant's acts of unfair competition are allegations of competition contrary to honest practices in industrial or commercial matters and therefore are within the meaning of the Paris Convention.

115.    Plaintiff has been damaged by these acts of unfair competition in an amount to be determined at trial.

## COUNT III
### (Injurious Falsehood)

116.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-79 herein, inclusive.

117.    SEL falsely identified Tsutsui as the inventor of the Tsutsui '843 patent application, which incorporates Plaintiff's Invention.

118.    SEL knew, or reasonably should have known, that Kido was the inventor of the novel concepts and ideas comprising Plaintiff's Invention embodied in the Tsutsui '843 patent application.

119.    The Tsutsui '843 patent application states on its face that:

I/we believe that I/we am/are the original and first inventor(s) of the subject matter which is claimed and for which a patent is sought;

\*          \*          \*

All statements made herein of my/own knowledge are true, all statements made herein on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and may jeopardize the validity of the application or any patent issuing thereon.

120.    After these above declarations, the patent application requires a signature affirming the truth of the representations made in the application.

121.    The applications for each of the SEL Derivative Patent Applications contain the same above declarations and a signature affirming the truth of the representations made in the application.

122.    SEL's Tsutsui '843 patent application states that Tsutsui and others, but not Kido, were the inventors and that IMES is the owner of the novel concepts and ideas comprising Plaintiff's Invention embodied in the patent application.

123.    None of the SEL Derivative Patent Applications identifies Kido as the inventor or IMES as the owner of the novel concepts and ideas comprising Plaintiff's Invention embodied in those patent applications.

124.    The publication of the Tsutsui patent application and each of the SEL Derivative Patent Applications constitutes unprivileged publication of false statements concerning plaintiff's intangible property, including Plaintiff's Invention and the concepts and ideas embodied in that invention.

125.    SEL's false representation to the USPTO was made with knowledge and/or reckless disregard of the falsity of its statements and representations.

126.    If the Tsutsui '843 patent application or any of the SEL Derivative Patent Applications were to issue as a patent , it would enable the Defendant and/or its

licensees to compete against Plaintiff and exclude it from selling products that include the novel ideas and concepts comprising Plaintiff's Invention.

127.    SEL's misrepresentation and failure to identify the true inventor of the novel ideas comprising Plaintiff's Invention embodied in the Tsutsui '843 patent application and each of the SEL Derivative Patent Applications were material misrepresentations upon which the USPTO has acted.

128.    If SEL had truthfully disclosed to the USPTO that Kido was the inventor of the novel concepts and ideas comprising Plaintiff's Invention embodied in the Tsutsui '843 patent application and each of the SEL Derivative Patent Applications, the USPTO would not have published that patent application and would have rejected those applications.

129.    The USPTO relied upon SEL's misrepresentations.

130.    As described in the foregoing allegations herein, SEL's false representations to the USPTO proximately caused harm to IMES, the sole and rightful owner of the novel concepts and ideas embodied in Plaintiff's Invention.

131.    The publication of SEL's Tsutsui '843 patent application and each of the SEL Derivative Patent Applications constitute, among other things, injurious falsehoods against IMES.

132.    SEL's injurious falsehoods made in the Tsutsui '843 patent application and each of the SEL Derivative Patent Applications also constitute, among other things, further misappropriation of Plaintiff's novel ideas and concepts and Plaintiff's Invention.

133.    Plaintiff has been damaged in an amount to be determined at trial and, with respect to continuing prosecution of the Tsutsui '843 patent application and each of

the SEL Derivative Patent Applications, Plaintiff has no adequate remedy at law and

therefore is entitled to injunctive relief, including, not limited to, rejection of Tsutsui '843

patent application by the USPTO.

          **WHEREFORE**, Plaintiff respectfully prays for

With respect to Count I, that this Court:

    (1)  Award Plaintiff monetary damages in excess of $30 million and in an amount

to be determined at trial;

    (2)  Preliminarily and permanently enjoin SEL from prosecuting, pursuing or

using the Tsutsui '843 patent application and each of the SEL Derivative Patent

Applications and order it either to withdraw immediately with prejudice or assign

immediately to IMES all of those patent applications;

    (3)  Award attorneys' fees and costs associated with this lawsuit; and

    (4)  Award all other and further relief as the Court deems just and proper.

With respect to Count II, that this Court:

    (1)  Award Plaintiff monetary damages in excess of $30 million and in an amount

to be determined at trial;

    (2)  Preliminarily and permanently enjoin SEL from prosecuting, pursuing or

using the Tsutsui '843 patent application and each of the SEL Derivative Patent

Applications and order it either to withdraw immediately with prejudice or assign

immediately to IMES all of those patent applications;

    (3)  Award attorneys' fees and costs associated with this lawsuit; and

(4)  Award all other and further relief as the Court deems just and proper.


With respect to Count III, that this Court:

(1)  Award Plaintiff monetary damages in excess of $30 million  and in an amount to be determined at trial;

(2)  Preliminarily and permanently enjoin SEL from prosecuting, pursuing or using the Tsutsui '843 patent application or any of the SEL Derivative Patent Applications and either to withdraw immediately with prejudice or assign immediately to IMES all of those patent applications;

(3)  Award attorneys' fees and costs associated with this lawsuit; and

(4)  Award all other and further relief as the Court deems just and proper.


With respect to Counts I, II and III, that this Court:

(1)  Order that SEL account for and pay over to IMES all revenues or other benefits obtained or that will be obtained by SEL in connection with the Tsutsui '843 patent application or any of the SEL Derivative Patent Applications, together with any other U.S. or foreign patent or patent application that embodies Plaintiff's Invention or the confidential and proprietary ideas and concepts that form the basis of that invention;

(2)  Order that IMES is the owner of any right, title or interest in the Tsutsui '843 patent application and each of the SEL Derivative Patent Applications that SEL had or has, and that SEL and the named inventors on that patent application must assign to IMES all other U.S. or foreign patents or patent applications that embody Plaintiff's Invention or the confidential and proprietary ideas and concepts that form the basis of

that invention; and for an accounting of all benefits realized by SEL as a result of the use of any of those patents or patent applications or the misappropriation of Plaintiff's Invention or the confidential and proprietary ideas and concepts that form the basis of that invention;

(3)  Order that a constructive trust be imposed in favor of IMES for the Tsutsui '843 patent application and each of the SEL Derivative Patent Applications, together with any other U.S. or foreign patent or patent application that embodies Plaintiff's Invention or the confidential and proprietary ideas and concepts that form the basis of that invention and for all unlawful use by IMES of any of those patents or patent applications or the misappropriation of Plaintiff's Invention or the confidential and proprietary ideas and concepts that form the basis of that invention, including all past, present and future revenues therefrom;

(4)  Award IMES its costs, expenses and reasonable attorney's fees in this lawsuit; and

(5)  Award all other and further relief as the Court deems just and proper.


Dated:  December 15, 2006                    Respectfully submitted,

                                            By:    /s/ Daniel J. Healy
                                                 Daniel J. Healy, Esq. (Bar No. 476233)
                                                 ANDERSON KILL & OLICK, LLP
                                                 2100 M Street, NW, Suite 650
                                                 Washington, DC  20037
                                                 Tel: (202) 218-0040
                                                 Fax: (202) 218-0055

                                                 David A. Einhorn, Esq. (Bar No. CT0001)
                                                 John M. O'Connor, Esq. (Bar No. NY0071)
                                                 Eugene Lieberstein, Esq. (Bar No. CT0002)
                                                 ANDERSON KILL & OLICK, P.C.
                                                 1251 Avenue of the Americas
                                                 New York, New York  10020
                                                 Tel:  (212) 278-1000
                                                 Fax:  (212) 278-1733

                                                 Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

        I certify that on December 15, 2006, I electronically filed the Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record in this matter who are registered on the CM/ECF.

Michael J. McKeon, Esq.
Joshua B. Pond, Esq.
Brian T. Racilla, Esq.
Fish & Richardson, P.C.
1425 K Street, NW
Washington, D.C. 20005

Counsel for Defendant Semiconductor Energy Laboratory Co., Ltd.

                    By:   /s/ Daniel J. Healy
                         Daniel J. Healy, Esq. (Bar No. 476233)