# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| |
|---|
| INTERNATIONAL MANUFACTURING AND ENGINEERING SERVICES COMPANY, LTD. |
| Plaintiff, |
| v. |
| SEMICONDUCTOR ENERGY LABORATORY COMPANY, LTD, |
| Defendant. |

Case No.:  1:06-CV-01230(JDB)

**Oral Argument Requested**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   SUMMARY OF ARGUMENT ............................................................... 1

III.  ARGUMENT ........................................................................................ 4

      A.    This Court Has Personal Jurisdiction Over SEL Because
            SEL Purposely Availed Itself of the Protections of the
            USPTO ...................................................................................... 4

      B.    This Court Has Subject Matter Jurisdiction Because IMES'
            Claims Arise Out of the Patent Laws And Pursuant to the
            Paris Convention ..................................................................... 6

      C.    IMES Has Standing to Bring This Case Against SEL ............... 10

      D.    SEL Engaged In Unethical Commercial Conduct In
            Obtaining And Using IMES' Confidential Proprietary
            Information And The Complaint Properly Alleges Unfair
            Competition ............................................................................ 15

            1.    IMES' Claim of Unfair Competition Is Timely; SEL Has Not
                  Met Its "Heavy" Burden of Demonstrating That There Is No
                  Issue of Fact As to the Date of Accrual ........................... 27

      E.    IMES Properly Has Alleged A Claim of Injurious Falsehood
            Against SEL ............................................................................ 31

            1.    IMES Has Alleged The Elements of Injurious Falsehood,
                  Including Pecuniary Harm ............................................... 31

            2.    IMES Has Brought This Action Within The Applicable Statute
                  of Limitations ................................................................. 37

      F.    IMES' Claims Are Not Merely An Interference ......................... 43

IV.   CONCLUSION ................................................................................. 45

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

Airport Surface Techs, L.L.C. v. FieldTurf, Inc.,
    268 F. Supp. 2d 999 (N.D. Ill. 2003) ................................................................45

Aflex Corp. v. Underwriters Laboratories, Inc.,
    No. 89-55440, 1990 WL 129482 (9th Cir. 1990) ...................................................37

Art Metal-U.S.A.,
    753 F.2d 1151 (D.C. Cir. 1985) ...........................................................................39

Astroworks, Inc. v. Astroexhibit, Inc.,
    257 F. Supp. 2d 609 (S.D.N.Y. 2003) ..................................................................18

* Bausch & Lomb, Inc. v. Alcon Labs., Inc.,
    64 F. Supp. 2d 233 (W.D.N.Y. 1999) ...........................................................27, 28

Bayles v. K-Mart Corp.,
    636 F. Supp. 852 (D.D.C. 1986) ............................................................................6

Blackman v. Hustler Magazine, Inc.,
    620 F. Supp. 1501 (D.D.C. 1984) .................................................................23, 24

Board of Regents, The University of Texas System v. Nippon Telephone &
Telegraph Corp.,
    414 F.3d 1358 (Fed. Cir. 2005) .............................................................................9

Browning v. Clinton,
    292 F.3d 235 (D.C. Cir. 2002) .......................................................................35, 36

Carlson v. Trans Union, LLC, No. Civ. 3:02-CV2654-H,
    2003 WL. 21750706 (N.D. Tex. July 22, 2003) ....................................................42

Catalyst & Chemical Services, Inc. v. Global Ground Support,
    350 F. Supp. 2d 1 (D.D.C. 2004) .........................................................................25

Cheny Bros. v. Doris Silk Corp.,
    35 F.2d 279 (2d Cir. 1929) ..................................................................................23

Chou v. University of Chicago,
    254 F.3d 1347 (Fed. Cir. 2001) ...........................................................................11

# TABLE OF AUTHORITIES
## (continued)

<u>Page(s)</u>

Confold Pacific, Inc. v. Polaris Industries, Inc.,
  433 F.3d 952 (7th Cir. 2006) ........................................................................25, 26

Conley v. Gibson,
  355 U.S. 41 (1957) .............................................................................................. 15

Consolidated World Housewares, Inc. v. Finkle,
  831 F.2d 261 (Fed. Cir. 1987) ............................................................................ 44

Crane v. N.Y. Zoological Soc'y,
  894 F.2d 454 (D.C. Cir. 1990) ............................................................................ 11

Delmarva Sash & Door Co. of Md. v. Anderson Windows, Inc.,
  218 F. Supp. 2d 729 (D. Md. 2002) .................................................................... 23

Deprenyl Animal Health, Inc. v. The Univ. of Toronto Innovations Found.,
  297 F.3d 1343 (Fed. Cir. 2002) ............................................................................ 5

Dove v. Wash. Metro. Area Transit Auth.,
  402 F. Supp. 2d 91 (D.D.C. 2005) ...................................................................... 41

Empresa Cubana del Tabaco v. Culbro Corp.,
  2004 WL. 602295, 97 Civ. 8299 (RWS) (S.D.N.Y. Mar. 26, 2004) .................... 10

Flotech, Inc. v. E.I. DuPont de Nemours Co.,
  627 F. Supp. 358 (D. Mass. 1985) ...................................................................... 36

Furash & Co., Inc. v. McClave,
  130 F. Supp. 2d 48 (D.D.C. 2001) ................................................................ 18, 25

GAF Building Materials v. Elk Corp. of Dallas,
  90 F.3d 479 (Fed. Cir. 1996) .............................................................................. 13

GAI Audio of New York, Inc. v. Columbia Broadcasting System, Inc.,
  27 Md. App. 172 (Md. App. 1975) ................................................................ 21, 23

Helfgott & Karas, P.C. v. Dickenson,
  209 F.3d 1328 (Fed. Cir. 2000) ............................................................................ 8

Henneberry v. Sumitomo Corp. of America,
  415 F.Supp.2d 423 (S.D.N.Y. 2006) ................................................................... 36

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Hishon v. King & Spalding,
    467 U.S. 69 (1984) ............................................................................... 19

Huff v. Jennings,
    319 S.C. 142 (1995) ...................................................................... 33, 34

\* Hunter Douglas, Inc. v. Harmonic Design, Inc.,
    153 F.3d 1318 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 1143, *overruled on
    other grounds*, *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d
    1356 (Fed. Cir. 1999) .................................................................... 6, 7, 8

\* International News Service v. Associated Press,
    248 U.S. 215 (1918) ............................................................................ 18

Kowal v. MCI Comm. Corp.,
    16 F.3d 1271 (D.C. Cir. 1994) ........................................................... 15

Kropinski v. World Plan Executive Council-US,
    853 F.2d 948 (D.C. Cir. 1988) ........................................................... 41

Lee v. Wolfson,
    265 F. Supp. 2d 14 (D.D.C. 2003) .............................................. 37, 41

McBride v. Pizza Hut, Inc.,
    658 A.2d 205 (D.C. 1995) ........................................................... 37, 41

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
    545 U.S. 913 (2005) ........................................................................... 23

\* Montecatini Edison, S.P.A. v. Ziegler,
    486 F.2d 1279 (D.C. Cir. 1973) ..........…………………………………………44

Mopex, Inc. v American Stock Exch., LLC,
    No. 02 Civ. 1656, 2002 WL. 342522 (S.D.N.Y. May 5, 2002) ............ 29

Nachtman v. Jones & Loughlin Steel Corp.,
    235 F.2d 211 (3rd Cir. 1956) ............................................................. 25

\* National Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.,
    877 F.2d 1003 (D.C. Cir. 1989) ........................................................... 4

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Norbrook Labs. Ltd v. G.C. Hanford Mfg. Co.,
  297 F. Supp. 2d 463 (N.D.N.Y. 2003) ................................................................. 29

Novak-Canazeri v. Al Saud,
  864 F. Supp. 203 (D.D.C. 1994) .......................................................................... 12

O'Brien v. Westinghouse Electric Corp.,
  293 F.2d 1 (3rd Cir. 1961) ............................................................................. 25, 26

* Patel v. Soriano,
  848 A.2d 803 (N.J. Super. 2004) ........................................................................ 40

Phelps v. Kapnolas,
  308 F.3d 180 (2d Cir. 2002) ............................................................................... 19

* Proctor & Gamble Co. v. Amway Corp.,
  80 F. Supp. 2d 639 (S.D. Tex 1999) ................................................................... 39

Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,
  332 F. Supp. 2d 63 (D.D.C. 2004) ........................................................................ 5

Rayl v. Shull Enterprises, Inc.,
  108 Idaho 524 (1985) ......................................................................................... 34

Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad.
  System, Inc.,
  672 F.2d 1095 (2d Cir. 1982) ......................................................................... 18, 23

* Schoen v. Washington Post,
  246 F.2d 670 (D.C. Cir. 1957) ............................................................................ 32

Schuler v. United States,
  617 F.2d 605 (D.C. Cir. 1979) ............................................................................ 15

Smith v. Brown & Williamson Tobacco Corp.,
  108 F. Supp. 2d 12 (D.D.C. 2000) ...................................................................... 41

Smith v. Magnolia Lady, Inc.,
  925 So. 2d 898 (Miss. App. Mar 28, 2006) ......................................................... 40

* Standard & Poor's Corp. Inc. v. Commodity Exchange, Inc.,
  683 F.2d 704 (2d Cir. 1982) ......................................................................... 21, 23

**TABLE OF AUTHORITIES**
**(continued)**

State of Missouri ex rel. BP Products North America Inc. v. Ross,
163 S.W.3d 922 (2005) ............................................................... 40

Struthers Scientific & Intern. Corp. v. General Foods Corp.,
290 F. Supp. 122 (D.C.Tex.1968) ............................................... 11

Swierkiewicz v. Sorema N.A.,
534 U.S. 506 (2002) ................................................................... 19

TXO Production Corp. v. Alliance Resources Corp.,
187 W. Va. 457 (1992), aff'd 509 U.S. 443 (1993) ..................... 34

Ulico Ca. Co. v. Fleet Nat'l Bank,
257 F. Supp. 2d 142 (D.D.C. 2003) ............................................ 11

United States v. Philip Morris, Inc.,
116 F. Supp. 2d 116 (D.D.C. 2000) ............................................ 11

* Whetstone Candy Co. Inc. v. National Consumers League,
360 F. Supp. 2d 77 (D.D.C. 2004) ....................................... 31, 38

**STATUTES**

35 U.S.C. § 135(a) ............................................................................. 44

35 U.S.C. § 293 ............................................................................. 4, 5

28 U.S.C. §§ 1331 ........................................................................ 3, 10

28 U.S.C. § 1338(a) ................................................................... 3, 6, 10

Fed. R. Civ. P. 56(f) .......................................................................... 35

D.C. Code § 12-301 .......................................................................... 37

**MISCELLANEOUS**

Prosser & Keeton on Torts § 128 at 963 (5th ed. 1984) ................. 31

Wright, Charles Alan and Miller, Arthur R., 5A Federal Practice & Procedure §
1310 (2006) ............................................................................ 32

**TABLE OF AUTHORITIES**
**(continued)**

<u>**Page(s)**</u>

## I.    PRELIMINARY STATEMENT

Plaintiff International Manufacturing and Engineering Services Company, Ltd. ("IMES" or "Plaintiff") submits the following memorandum in opposition to the Defendant Semiconductor Energy Laboratory Company, Ltd.'s ("SEL" or "Defendant") motion to dismiss plaintiff's complaint ("SEL's Motion").  Pursuant to this Court's order, IMES is filing this opposition simultaneously with its reply memorandum in support of its motion for stay of this case ("IMES' Motion").

## II.    SUMMARY OF ARGUMENT

SEL misappropriated IMES' proprietary ideas and concepts regarding organic light emitting diode[1] technology (the "Invention")[2] and filed and prosecuted certain patent applications that are based substantially, if not entirely, upon IMES' Invention.

IMES is the exclusive owner of the Invention at issue, which is the structure for an OLED that is able to attain and exceed 100% quantum efficiency.  As alleged in IMES' Amended Complaint ("Complaint")[3], SEL improperly obtained IMES' confidential and proprietary information concerning that Invention, unfairly used that information to file patent applications and falsely represented to the United States Patent and Trademark Office ("USPTO") that SEL is the exclusive owner of the right to that Invention and that it was invented by Dr. Tetsuo Tsutsui.  At issue in this case are claims that turn on questions of inventorship and ownership of the Invention and the

---

[1]    Organic light emitting diodes will be referred to as "OLED."

[2]    The Invention is defined as the Plaintiff's Invention in the Complaint at ¶ 16.

[3]    All references herein to the "Complaint" refer to the Amended Complaint dated December 15, 2006 [D.I. 21]  IMES has filed an Amended Complaint simultaneously with the filing of this memorandum.

enforceability of SEL's Patent Application Serial No. 10/309,843 that was published as Pub. No. US 2003/0127967 A1 on July 10, 2003 (hereafter "Tsutsui '843") and other subsequently filed patent applications by SEL related thereto.

IMES' three causes of action are for unfair competition, injurious falsehood and unfair competition under the Paris Convention.  Those claims were timely filed and allege SEL's predatory taking of confidential information from IMES and using it to file the Tsutsui '843 patent application, along with other acts alleged in the Complaint. SEL's actions constitute unfair competition and, based on the falsity of the representations made in the Tsutsui '843 application as to ownership and inventorship of the Invention, injurious falsehood.

SEL's acts of unfair competition and injurious falsehood have caused IMES harm.  IMES has invested millions of dollars to support the research and development of the Invention, and SEL's actions have deprived IMES of the benefit of IMES' investment.  In addition to seeking damages corresponding to its research and development expenses, IMES seeks damages corresponding to the diminution in IMES' corporate value as the result of SEL's actions.  On its injurious falsehood claim, IMES also seeks as special damages, its attorneys' fees in this action to effectively remove the cloud SEL has placed on IMES' ownership of the Invention,

In its instant motion, SEL incorrectly argues that this Court does not have personal or subject matter jurisdiction to hear this dispute.  The centerpiece of SEL's arguments case is the fact that the Tsutsui '843 patent application has not yet been allowed or granted by the USPTO.  Whether or not the Tsutsui '843 application is allowed or granted in the future, however, is an issue that can be adequately addressed

with a stay.[4]  However, the patent applications alone create personal jurisdiction over

SEL and IMES' causes of action create subject matter jurisdiction.  The filing of the

Tsutsui '843 patent application, and SEL's concomitant purposeful availment of the

rights and protections of the United States and the USPTO, provides this Court with

personal jurisdiction over SEL and over the claims relating to that patent filing.  The

causes of action for unfair competition by misappropriation and injurious falsehood arise

under the patent laws for purposes of subject matter jurisdiction.  In addition, there is

federal jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) pursuant to the Paris

Convention for the Protection of Industrial Property, a treaty as to which both the United

states and Japan are signatories.[5]

      SEL's motion to dismiss this case for presents no sound basis for

dismissing either of IMES' well-pleaded claims and should be denied in its entirety.

---

[4]     SEL is filing with this memorandum of law a separate reply memorandum of law in support of SEL's motion for a stay of this case, pending the allowance of the Tsutsui '843 application.  With regard to the appropriateness of a stay in this case, SEL refers the Court to its memorandum in support of its motion to stay the case [D.I. 12 & 23].

[5]     Paris Convention for the Protection of Industrial Property, Arts. 10 bis, 10 ter, opened for signature Mar. 20, 1883, as amended at Stockholm, July 14, 1967, 21 U.S.T. 1583. Art. 10 bis and 10 ter concern unfair competition. The Paris Convention is the principal international treaty governing patents, trademarks and unfair competition.

     The original complaint dated July 7, 2006 does not cite the Paris Convention. However, the Complaint dated July 7, 2006 does cite 28 U.S.C. section 1338 as a basis of jurisdiction and section 1338(a) is a basis for federal jurisdiction where, as here, the Paris Convention is applicable. In order to clarify its reliance upon the Paris Convention, IMES is amending its complaint (concomitant with the service and filing of this memorandum of law opposing SEL's motion to dismiss the Complaint), so as to specifically refer to the Paris Convention. A treaty of the United States, the Paris Convention also provides subject matter jurisdiction under section 28 U.S.C. section 1331.

## III.    ARGUMENT

### A.    This Court Has Personal Jurisdiction Over SEL Because SEL Purposely Availed Itself of the Protections of the USPTO

This Court has personal jurisdiction over SEL in this case under 35 U.S.C.

§ 293.  That statute provides that:

> Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patents or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. *The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.*

35 U.S.C. § 293 (emphasis added).

The United States Court of Appeals for the District of Columbia has held,

*en banc*, that Section 293 authorizes this Court to exercise personal jurisdiction over a

foreign defendant that has availed itself of the protections of the USPTO and the patent

laws, if the case concerns ownership of a patent. *National Patent Dev. Corp. v. T.J.*

*Smith & Nephew Ltd.*, 877 F.2d 1003, 1007 (D.C. Cir. 1989) (*en banc*).  The court

stated that "a suit over patent ownership affects rights under the patent at least as much

as a suit claiming patent misuse, and does so more permanently . . . ." *Id.* at 1007-08.

Thus, a case alleging that plaintiff owns the patent rights alleged by the defendant falls

within Section 293.

SEL does not argue otherwise.  It only argues that Section 293 does not

apply in this case because the Tsutsui '843 patent application is only a pending

application and not a granted patent.  *See* SEL's Memo at 7-9.[6]  Not only does this

argument find no support in case law, it does not logically follow.

      The rationale underlying Section 293 is that if a foreign defendant avails

itself of the United States patent laws, then it must submit to personal jurisdiction in the

United States with respect to torts based upon its actions in so availing itself. *Deprenyl*

*Animal Health, Inc. v. The University of Toronto Innovations Foundation*, 297 F. 3d

1343, 1353 (Fed. Cir. 2002) (referring to Section 293 as part of minimum contacts

analysis). Where the underlying rationale of the statute is based upon this purposeful

availment of United States law, it would make little sense to say that the personal

jurisdiction only is activated upon the granting of a patent and not upon the application.

Obviously, the foreign defendant first invokes the United States patent laws at the time

of its application. If the foreign defendant does not want to be subject to personal

jurisdiction in the United States, it has an easy remedy — do not apply for a United

States patent. This is a clear case of the adage: "You can't have your cake and eat it

too." If you file an application for a patent under Section 293, then you submit to

personal jurisdiction in the United States with respect to torts based upon that

application.

      The cases cited by SEL involve disputes that were unrelated to patent

issues.  For example, *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 332 F.

Supp.2d 63 (D.D.C. 2004) held that Section 293 did not provide personal jurisdiction

because the dispute was a contract dispute and did not concern patent ownership or

rights under the patent statute.  332 F. Supp.2d at 69.  *Purdue* stated that while a patent

---

[6]    "SEL Memo." refers to "Defendant Semiconductor Energy Laboratory Company, Ltd.'s Memorandum In Support of Its Motion To Dismiss Plaintiffs Complaint," dated October 13, 2006.

ownership dispute "falls comfortably within the boundaries of statutory term 'action respecting the patent or rights thereunder,'" the action in *Purdue* "by contrast, [was] a contract dispute. Patent ownership is not at issue in this case." *Id. Purdue* concerned the terms of a joint-venture agreement and related license and, thus, provides no support to SEL here, where IMES is not asserting contractual rights.

Similarly, *Bayles v. K-Mart Corp.*, 636 F. Supp. 852 (D.D.C. 1986) does not even concern Section 293. Construing and applying the District of Columbia long-arm statute, this Court found in *Bayles* that the plaintiff failed to show that the defendant's contacts with the forum were substantial and continuous. The defendant was a Michigan corporation and there was no patent application at issue.

Accordingly, SEL's motion to dismiss for lack of personal jurisdiction under Section 293 should be denied.

### B.    This Court Has Subject Matter Jurisdiction Because IMES' Claims Arise Out of the Patent Laws And Pursuant to the Paris Convention

This Court has subject matter jurisdiction over this case since the claims alleged in the Complaint "arise under" the patent laws. 28 U.S.C. § 1338(a). This Court has federal question subject matter jurisdiction over all cases that present state law claims "arising under" the patent laws. *Id.*

The United States Court of Appeals for Federal Circuit has held that a claim of injurious falsehood raises a substantial question under the patent laws when the injurious falsehood identified is that the defendant falsely claimed its exclusive right to an invention in procuring a patent. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 1143, *overruled on other grounds*, *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).

In *Hunter Douglas*, the plaintiff brought seven counts against the defendant, alleging a claim of infringement and invalidity under federal law as count one followed by six state law claims, including unfair competition injurious falsehood. *Id.* at 1322. The Federal Circuit affirmed the dismissal of the first claim, leaving the six state law claims "naked, insofar as at least one of them must provide for 'arising under' jurisdiction under Section 1338(a) for there to be original jurisdiction." *Id.* at 1328. Because the claims were all state law claims, at least one of them would have to raise an issue that necessarily turned on construction of federal law in order to resolve the state law claims. *Id.* The court held that federal jurisdiction was obtained under Section 1338(a) over the injurious falsehood claim and therefore there was federal jurisdiction over all the claims. *Id.*

The court made this determination by looking to the pleading of the claim and determining whether the cause of action necessarily depended on a resolution of a substantial question of federal patent law. *Id.* Hunter Douglas alleged only one injurious falsehood: that the defendant had falsely asserted that it held the exclusive rights to make or sell window shades that were covered in one or more of the defendant's patents at issue. *Id.* at 1329. This allegation necessarily required a determination of whether the defendant's patents at issue were valid and enforceable. *Id.*

Here, IMES has alleged that SEL falsely claimed in the Tsutsui '843 patent application that Dr. Tetsuo Tsutsui was the inventor of the subject matter identified in that application and that SEL is the exclusive owner of the invention and subject matter disclosed in that application. (Compl. at ¶¶ 117-122). In order to determine IMES'

claim, the Court will need to determine a substantial question of patent law:  whether the defendant truthfully represented to the Patent Office that Tsutsui is the inventor of the subject matter claimed in the Tsutsui '843 patent application and whether SEL is the exclusive owner of the invention claimed therein.  If Tsutsui is not the inventor, or SEL is not the exclusive owner, then IMES will have established injurious falsehood.

Essentially, the patent law issue whether these was fraud in connection with SEL's patent application, which would affect the enforceability of any patent issued.  The question of validity "determines whether there is a property right" to be claimed under patent law.  *Hunter Douglas*, 153 F.3d at 1330.  *Hunter Douglas* specifically held such a question is a substantial question of patent law and supports jurisdiction under Section 1338(a).  On this basis alone, IMES' Complaint meets the jurisdictional burden of Section 1338(a) because the injurious falsehood claim provides jurisdiction for all other claims.  *Hunter Douglas*, 153 F.2d at 1328.

In addition, IMES' unfair competition claim also arises under the patent laws within the meaning of Section 1338(a) and also provides a basis for federal jurisdiction under Section 1338(a).  In, *Conroy v. Fresh Del Monte Produce Inc.*, 325 F.Supp.2d 1049, (Fed. Cir. 2004), the Federal Circuit explained that "[c]hallenges to the validity or enforceability of a patent . . . raise a federal question."  Further, in *Helfgott & Karas, P.C. v. Dickenson*, 209 F.3d 1328 (Fed. Cir. 2000), the Court stated that "whether inequitable conduct had been committed in the procurement of certain patents," necessarily depended on resolution of a substantial question of federal patent law.  *Id.* at 1334 (quoting *Hunter Douglas, Inc. v. Harmonic Design*, 153 F.3d 1318, 1328-29).

Here, Plaintiff's claim for unfair competition is based upon Defendants' misappropriation of Plaintiff's ideas in order to seek a patent.  Plaintiff's unfair competition claim turns on the validity and enforceability of the patent that SEL is seeking.  Indeed, Plaintiff's damages are linked entirely to SEL's filing of a patent application, to exclude Plaintiff from having the opportunity to obtain the benefits of its research and efforts.   Accordingly, the unfair competition cannot be determined without resolution of question of patent law and therefore arises out of federal patent law and there is jurisdiction pursuant to Section 1338(a).

SEL's citation to *Board of Regents, The University of Texas System v. Nippon Telephone & Telegraph Corp.*, 414 F.3d 1358 (Fed. Cir. 2005), is misplaced.  First, SEL misconstrues the holding of that case.  The Court stated:  "[Plaintiff] correctly asserts that this court has held that issues of inventorship, infringement, validity and enforceability present sufficiently substantial questions of patent law to support jurisdiction under Section 1338(a)."  *Id.* at 1363.  Furthermore, the plaintiff and defendant in that case had entered into an agreement controlling ownership of their joint research and development efforts.  *Id.* at 1360.  The plaintiff claimed jurisdiction under Section 1338(a) based only on its claim for tortuous interference with prospective economic advantage, which required showing that the defendant intentionally interfered with a reasonably probable contractual relationship.  *Id.* at 1362.  The analysis in that case, therefore, does not apply here.

There is also federal jurisdiction over IMES' claims pursuant to the Paris Convention, which is the principal international treaty governing patents, trademarks and unfair competition.  The United States is a signatory and Japan is a signatory.

Article 10bis, "Unfair Competition," of the Paris Convention provides that, "The countries of the Union are bound to assure to nationals of such countries effective protection against unfair competition."   Article 10bis further provides that, "Any act of competition contrary to the honest practices in industrial or commercial matters constitutes an act of unfair competition."   As shown below in section D of this memorandum, SEL's actions as alleged in the Complaint are contrary to honest practices in commercial matters. Accordingly, there is also federal jurisdiction over plaintiff's claims based upon the Paris Convention and 28 U.S.C. sections 1331,1338(a), and 1367.[7]  *Empresa Cubana del Tabaco v. Culbro Corp.*, 2004 WL 602295, 97 Civ. 8399 (RWS) (S.D.N.Y. Mar. 26, 2004).

Accordingly, SEL's motions to dismiss should be denied as this Court has subject matter jurisdiction over IMES' claims under Section 1338(a).

### C.    IMES Has Standing to Bring This Case Against SEL

SEL claims that in order to demonstrate standing IMES must demonstrate injury-in-fact, traceability and redressability.[8]  *See* SEL's Memo. at 19.  SEL cites several inapposite cases for the proposition that because the Tsutsui '843 patent application remains pending, no injury-in-fact or redressability[9] exists.  The cases SEL

---

[7]      As stated above, although the Complaint invokes section 1338(a), it does not refer to the Paris Convention.  To clarify plaintiff's claims as contained in its original Complaint, and to the extent that an Amended Complaint would be necessary with respect to IMES' reliance on the Paris Convention, IMES is serving an Amended Complaint.  With respect to the Paris Convention, IMES has amended the Jurisdiction section and has also added a count based upon the Paris Convention. *See* Amended Complaint, ¶¶ 4-10; 109-115 (Count II, Unfair Competition under Paris Convention).

[8]      SEL states that IMES is required to demonstrate the injury it suffered.  SEL's motion to dismiss, however, must assume the truth of the well-pleaded facts.  Thus, the allegations in the Complaint must be taken as true as to IMES' alleged injuries and the remedies it seeks.

[9]      It appears that SEL concedes that traceability exists here, as SEL does not contest that factor.

cites involve allegations of *patent infringement* where the relevant patent application had not been granted. *Id.* at 19-21. Here, IMES has alleged claims of unfair competition by misappropriation and injurious falsehood. Those claims arise from SEL's actions both before and after it filed the Tsutsui '843 patent application.

The fact that a case involves a party's actions with regard to a patent application, as opposed to a patent, does not lead to the conclusion that the plaintiff lacks standing until the patent application is granted. *See Struthers Scientific & Intern. Corp. v. General Foods Corp.*, 290 F. Supp. 122, 125 -126 (D.C.Tex.1968) (holding that a sufficient controversy had developed between the parties as to which party rightfully owned the subject matter set forth in the disputed patent application). Moreover, neither title to a patent nor ownership of the patented subject matter need be directly at issue. *See Chou v. University of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001) (student with no right to ownership of patent nevertheless has standing because she alleged that she had a right to royalties).

IMES has set forth factual allegations of injury-in-fact, traceability and redressability. Motions seeking a dismissal for lack of personal jurisdiction should be denied unless "the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict." *Id.* Factual discrepancies in the record should be resolved in favor of the plaintiff. *Ulico Ca. Co. v. Fleet Nat'l Bank*, 257 F. Supp.2d 142, 144 (D.D.C. 2003) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) and *United States v. Philip Morris, Inc.*, 116 F. Supp.2d 116, 120 n.4 (D.D.C. 2000)).

SEL, however, has presented no set of facts, let alone contradictory facts, that call any of IMES' well-pled facts into doubt. *Novak-Canazeri v. Al Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994) ("the Court must accept Plaintiff's claims as true in ruling on a Rule 12(b)(2) motion, unless they are directly contradicted by an affidavit").

As to injury-in-fact, SEL claims that IMES cannot establish that it has a personal stake in any concrete loss related to the Tsutsui '843 patent application.  IMES has alleged that as a direct result of SEL's filing of and the publication of those patent applications, and continued prosecution of the Tsutsui '843 patent application, IMES has suffered damages.  The Complaint states that SEL's acts have created a cloud over IMES' title to its Invention.  (Compl. at ¶¶ 69-79.)  SEL's acts of unfair competition by misappropriation enabled it to file the Tsutsui '843 patent application, which created a cloud over IMES' title.  (Compl. at ¶¶ 69-79.)

The cloud over IMES' title to its Invention has caused the diminution in value of IMES' intellectual property, including the Invention, and, in turn, the diminution in IMES corporate value, which is largely supported by the value of its Invention. (Compl. at ¶¶ 69-72.)  IMES invested several million dollars in researching and developing the ideas and concepts embodied in the Plaintiff's Invention.  (Compl. at ¶ 87.)  In addition to diminishing the value of IMES' interest in the Invention, SEL, IMES' competitor, was able to compile and file the Tsutsui '843 patent application with minimal, if any, investment in research and development.  (Compl. at ¶¶ 88-91.)  IMES has pleaded $30 million in damages due to diminution in value and lost out-of-pocket research and development expenses.  (Compl. at 21.)  Accordingly, IMES has sufficiently alleged facts to demonstrate that it has suffered a concrete loss and that

IMES, as the owner of the Invention and the proprietary information forming the basis of it, has a "personal stake" in the outcome of this case.

SEL's reliance on *GAF Building Materials v. Elk Corp. of Dallas,* 90 F.3d 479 (Fed. Cir. 1996) is misplaced. *GAF* involved claims for patent infringement relating to a patent application and raised questions of validity and infringement. *Id.* at 482. The plaintiff's claims were found to be premature and not to present a justiciable controversy because the alleged infringement was of a possible, future patent. *Id.* at 482-83. In contrast, IMES has not alleged infringement claims. IMES has alleged claims of unfair competition by misappropriation and injurious falsehood that relate to SEL's actions leading up to the filing of and in filing the Tsutsui '843 patent application.

SEL concedes traceability. IMES specifically alleges that concept and the allegation is supported by the well-pleaded facts that the claimed damages have been suffered directly by IMES. (Compl. at ¶¶ 67-79, 105)

As to redressability, the Court's decision will clear title to the Invention. IMES has requested that the Tsutsui '843 patent application and the related patent applications filed by SEL that incorporate the Invention be placed into a constructive trust for IMES. (Compl. at 23). Further, IMES seeks actual, compensatory damages in the amount of $30 million to compensate it for its research and development costs and for the diminution of the value of its Invention and of its corporate value. (Compl. at 21, 22). These damages address alleged harm – injury-in-fact – that IMES already has suffered. Thus, the Court can cure the harm suffered by IMES.

SEL presumes that IMES cannot demonstrate redressability or injury-in-fact based on the fact that the Tsutsui '843 patent application remains pending and may

be altered by the USPTO before a determination as to whether to allow SEL's patent claims.[10]  SEL's arguments on this issue, however, ignore that the harm claimed by IMES is for compensatory damages to date and, to avoid future harm like that already suffered, IMES seeks a constructive trust over whatever rights SEL may have in the Tsutsui '843 patent application and the related patent applications filed by SEL.  In the event any of those applications matures into a patent that incorporate the Invention, the benefit thereof will be the rightful property of IMES.

Regardless of whether the USPTO alters the claims that SEL has sought to have allowed in the Tsutsui '843 patent application, IMES is entitled to prosecute this case in order to recover compensatory damages based on SEL's predatory taking of IMES' proprietary ideas and concepts that form the basis of the Invention and on SEL's filing of the Tsutsui '843 patent application and falsely claiming that it is the exclusive owner of the Invention, thereby creating a cloud over IMES' title to its Invention.  Should IMES choose not to prosecute the case because the USPTO alters the Tsutsui '843 patent application in a manner that significantly restricts the scope of this case, this case could become effectively moot, as explained in IMES' reply memorandum in support of a stay  [D.I. 23].

---

[10]    As the Court is aware, IMES has sought a stay of this case to avoid the inefficiency involved in litigating this case prior to the grant, or denial, of the Tsutsui '843 patent application. IMES' arguments in that regard are addressed in its briefing in support of that motion.  [D.I. 12 and 23].  Specifically, the reply memorandum in support of IMES' motion explains that after initially receiving a Notice of Allowance of its claims in the Tsutsui '843 patent application SEL sought on March 29, 2006 to amend its claims and its requested amendment has drawn a Non-Final Rejection.  Thus, the delay in prosecution of SEL's patent application is caused, at least in part, by SEL's own actions.

**D.    SEL Engaged In Unethical Commercial Conduct In Obtaining And Using IMES' Confidential Proprietary Information And The Complaint Properly Alleges Unfair Competition**

In arguing that IMES' Complaint fails to state a claim, SEL distorts the law of unfair competition and effectively ignores the well-known rules that courts apply in determining a motion to dismiss -- a stage of a case where there has been no discovery or factual development. While SEL first pays lip service to the rules governing a motion to dismiss, it then proceeds to both ignore those rules and to rely on decisions in which there has already been discovery and factual development and, in several instances, a trial.

SEL concedes, as it must, that a motion to dismiss pursuant to Rule 12(b)(6) cannot be granted unless it appears "beyond doubt" that the plaintiff can prove "no set of facts" that would entitle him to relief. *E.g.*, *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  In applying this standard, the factual allegations of the Complaint must be presumed to be true and must be liberally construed in favor of the plaintiff.  *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).  Courts must also draw in favor of the plaintiff all reasonable inferences from the Complaint's allegations.  *Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Accordingly, for purposes of determining SEL's motion to dismiss, the facts, including reasonable inferences in plaintiff's favor, are as follows (with references to paragraphs of the Complaint):

IMES invested millions of dollars in supporting many, many months of OLED research and testing led by its agent, Dr. Junji Kido ("Kido").  (Compl. at ¶¶ 87, 16.)  That investment and research culminated in an invention by Dr. Kido that allowed an OLED device to attain and exceed 100 percent  quantum efficiency.  (Compl. at

¶ 16.)  Prior OLED devices attained quantum efficiency of *well below 10 percent*, which limited their commercial usefulness.  (Compl. at ¶ 17.)  Previously, it was thought by scientists in the field of OLED technology that the theoretical limit on the maximum efficiency that could one day be obtained was 100 percent.  (Compl. at ¶¶ 35,36.) Dr. Kido's invention was an enormous break-through and is extremely valuable because it would allow efficiencies of over 10 times prior devices, *i.e.*, it would increase brightness and substantially increase the lifetime of an OLED device.  (Compl. at ¶¶ 35-36, and reasonable inferences.)  Kido and IMES had a confidential relationship and Kido assigned his invention to IMES.  (Compl. at ¶¶ 14, 22, 82.)  Kido's invention was novel, confidential, proprietary information of IMES, unknown to the general OLED scientific community.  (Compl. at ¶¶ 20, 84, and  reasonable inferences from Compl. at ¶¶ 14, 16, 17, 18, 40, 45-48.)

        Dr. Kido and Dr. Tetsuo Tsutsui ("Tsutsui") attended a conference on OLED technology in Potsdam, Germany in November 2001 (the "Conference"). (Compl. at ¶¶ 26-28.)  At the Conference, Kido gave a lecture entitled "Where We Are and Where We Go."  At the end of this lecture, Kido, in effect, stated that it was possible to obtain 100 percent efficiency and greater in an OLED device.  (Compl. at ¶¶ 27, 34-35.)  At the time of this Conference, Kido had already reduced his invention to practice. (Compl. at ¶ 41.)  At the time of this Conference, Tsutsui made statements evidencing that he thought that the maximum theoretical efficiency that could be obtained was 100 percent, and that obtaining efficiency greater than that was impossible; in short, Tsutsui made statements indicating that he had not the slightest idea how one could obtain

greater than 100 percent efficiency.  (Compl. at ¶¶ 86, 40-41, 45-47, 108, and reasonable inferences.)

In light of Kido's statement that he had already accomplished the 100 percent efficiency, Tsutsui commenced a campaign to goad and trick Kido in order to obtain from Kido the discoveries and methods that would allow Tsutsui to follow in Kido's footsteps and obtain 100 percent efficiency and greater in OLED devices. (Compl. at ¶¶ 40, 41, 45-48, and reasonable inferences.)  Tsutsui engaged in this campaign not only in the Question and Answer period following Kido's lecture, but throughout that evening, for hours after the presentation.  (Compl. at ¶¶ 45-48, 59.)

Knowing that Kido's invention was valuable, proprietary information, Tsutsui acted with the improper motive of goading and tricking Kido into revealing his confidential discoveries and methods, *i.e.*, Tsutsui induced Kido to refute the implication of Tsutsui's challenges – that Kido had not been telling the truth in his presentation and his following remarks.  (Compl. at ¶¶ 41, 45-48, 16, 17, 35, 37, 38, 83, 85, 92, 104, and reasonable inferences.)  As an OLED researcher, Tsutsui knew, or should have known, that the information he was inducing Kido to reveal was confidential, proprietary information that could only be obtained by an extensive investment of time and money. (*Id.*, and reasonable inferences from Complaint paragraphs previously cited.)

Tsutsui accomplished his improper goal and SEL and Tsutsui then used the information that Tsutsui improperly obtained from Kido to file a patent application with the Patent Office. (Compl. at ¶¶ 49-52).  In the patent application it filed, SEL took Kido's invention and falsely claimed that Tsutsui and others were the inventors; SEL did not name Kido as the inventor.  (Compl. at ¶¶ 49, 53, 56, 61).  In so doing, SEL became

a "free-rider" on the millions of dollars previously invested by IMES, and the many months of work performed by Kido and his IMES colleagues, in conducting the research that finally led to the successful invention.  (Compl. at ¶¶ 49, 16, 88, 89).  Through Tsutsui's actions and SEL's patent applications, SEL has misappropriated confidential, proprietary information, and is using that IMES proprietary information in competition against IMES.  (Compl. at ¶¶ 86-99, 104, and reasonable inferences).

          The Complaint describes disgraceful and unethical behavior by SEL and Tsutsui, and these actions clearly constitute unfair competition.  Unfair competition encompasses "any form of commercial immorality" and includes "endeavoring to reap where (one) has not sown."  *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. System, Inc.*, 672 F. 2d 1095, 1105 (2d Cir. 1982) ("*Roy Export*"), citing, among other decisions, *International News Service v. Associated Press*, 248 U.S. 215, 239 (1918) ("*International News*").  "Unfair competition is not defined in terms of specific elements, but by the description of the various acts that would constitute the tort if they resulted in damage."  *Furash & Company, Inc. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001) (denying motion for summary judgment on unfair competition claim because of existence of issue of fact).  Unfair competition is a "broad and flexible doctrine" that depends " more upon the facts set forth . . . than in most causes of action."  *Roy Export, supra* at 1105.  There are an "incalculable variety" of illegal practices that fall within the scope of unfair competition. *Id.*  "Although unfair competition may take many forms . . . , the pivotal question is always the same: whether the conduct complained of is 'fair or unfair.'" *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 619 (S.D.N.Y. 2003).

When the law of unfair competition is combined with the law concerning the rules to be applied at the motion to dismiss stage, it is clear that SEL's motion to dismiss the unfair competition claim must be denied. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint *only* if it is clear that no relief could be granted under *any* set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).[11] Here, it is obvious that the plaintiff has supplied in its Complaint a clear statement of its claim of unfair competition; whether plaintiff will ultimately prevail will depend upon the facts to be developed concerning issues such as: Exactly how did Tsutsui go about extracting from Kido information that was crucial to the invention? What did Tsutsui say and do? What did Kido say and do? What research, if any, had Tsutsui done prior to obtaining information concerning Kido's multi-photon emission invention? These and numerous other factual issues remain to be developed.

Faced with the fairly obvious conclusion that the original complaint stated a claim for unfair competition and that further factual development is required, SEL attempts to subtly re-write both that complaint and the law of unfair competition.

Thus, SEL "cherry-picks" allegations from the complaint and ignores the clear thrust of the complaint. SEL misleadingly claims that the Complaint alleges only

---

[11]    At the motion to dismiss stage, the issue is simply whether the plaintiff is entitled to offer evidence to support is claims. Accordingly a motion to dismiss will be denied, even in those cases "where it may appear on the face of the pleading that a recovery is very remote and unlikely" because "that is not the test." *E.g., Phelps v. Kapnolas,* 308 F. 3d 180, 184-85 (2d Cir. 2002). Here, the allegations contained in the Complaint, if proven, clearly make out a case of commercial immorality in which SEL is attempting to "reap where it has not sown" by coming in at the end of IMES' multi-million dollar research effort and using the Kido/IMES invention against IMES, a competitor of SEL.

that Tsutsui "publicly questioned" Kido.[12]  SEL Memo. 26-27.  However, as
demonstrated above, the Complaint alleges much more than that, pointing out that
"Tsutsui continued to press Kido, for hours after the presentation, for details and proof
that 'Multi-Photon Emission' could be achieved and to provide further explanation of the
concepts that Kido only described generally at his presentation."  (Compl. at ¶ 45).  As
the Complaint alleges, "[i]t was after the presentation, when Tsutsui pressed Kido for
further explanation and information of the concepts, that the subjects of 'stacking' and
the selection of the interlayer(s) to provide balanced injection of electrons and holes
were drawn out by Tsutsui."  (Compl. at ¶ 46).

        As shown above, the allegations contained in the Complaint, and the
reasonable inferences from those allegations, clearly show that Tsutsui is charged with
deliberately, intentionally, and in bad faith, engaging in the wrongful conduct of goading
Kido into refuting Tsutsui's implications that Kido had not been truthful — thereby
providing Tsutsui with more and more information concerning Kido's invention.
Tsutsui's improper actions were all for the purpose of obtaining from Kido know-how
that Tsutsui had not been able to come up with himself.  The Complaint clearly alleges
that the IMES' proprietary, confidential information that SEL is using in its competition
against IMES was obtained by these wrongful acts.[13]

---

[12]     SEL attempts to create the impression that at Kido's public lecture, Tsutsui merely said
something like: "Dr. Kido, would you mind revealing to us exactly how you accomplished this
enormous break-through so that I can go file a patent application based upon your discovery."

[13]     SEL objects to the appearance in the Complaint of the following terms and phrases,
claiming they are imprecise: "proprietary information," "trade secret," "unjust enrichment," and
"pirating."  SEL Memo. at 22.  Of course, these are well known terms and are exactly the same
terms used by the courts. For example, the Supreme Court in International News referred to
INS' copying the plaintiff's news items and using them against the plaintiff in competition as
"pirating" plaintiff's information.  Contrary to SEL's belief, simply bracketing a term in quotation
marks does not render it imprecise.

In order to try to construct a case for dismissal at the motion to dismiss stage, SEL must not only re-write the Complaint but it must also re-write the law on unfair competition. However, decisions of the United States Supreme Court, the Courts of Appeal, and the District Courts all support the conclusions that: (1) IMES Complaint has stated a claim under the misappropriation branch of the tort of unfair competition; (2) whether that claim will be successful depends upon the facts to be developed; and (3) IMES as plaintiff has the right to present evidence in support of its claim.

The doctrine of misappropriation in unfair competition clearly provides that one may not reap where one has not sown.  *E.g.*, *International News, supra*; *Roy Export, supra*; *Standard & Poors Corp., Inc. v. Commodity Exch., Inc.*, 683 F. 2d 704 (2d Cir. 1982); *GAI Audio of New York, Inc. v. Columbia Broadcasting System, Inc.*, 27 Md. App. 172, 188-93 (Md. App. 1975); *Delmarva Sash & Door Co. of Maryland, Inc. v. Anderson Windows, Inc.*, 218 F. Supp. 2d 729, 733-34 (D. Md. 2002).  Although the Kido invention assigned to IMES is in fact a trade secret, and the Complaint so states, misappropriation of a competitor's proprietary information is unfair competition whether or not the information that has been obtained is, or is not, a trade secret.  *E.g., International News.*

In *International News, supra*, the Supreme Court held that the defendant International News Service ("INS") had engaged in unfair competition even though there was no trade secret involved.  At the cost of several million dollars per year, the plaintiff Associated Press gathered news and information from all parts of the world and distributed it on a daily basis to its members for publications in their newspapers.  248 U.S. at 229-30.  The defendant INS copied news from bulletin boards and from early

editions of newspapers that were members of the Associated Press, and sold it, either

as is, or after re-writing it, to INS' customers.  *Id.* at 231.  Among other things, INS

copied information from Associated Press bulletin boards of member newspapers on

the East coast (New York) and "at the mere cost of telegraphic transmission" caused it

to be published in western papers issued as early as those served by the Associated

Press.  *Id.* at 238.  The information appropriated by INS, described as "pirated" by the

Supreme Court,  was sometimes placed in the hands of INS' readers simultaneously

with, or even earlier than, the same information being placed in the hands of

newspapers served by the Associated Press.  *Id.*  The Supreme Court held that INS

was attempting to "reap where it has not sown" and to "divert a material portion of the

profit from those who have earned it to those who have not; with special advantage to

the defendant [INS] in the competition because of the fact that it is not burdened with

any part of the expense of gathering the news."  *Id.* at 239-40.  Based on these facts,

the Supreme Court held: "The transaction speaks for itself and a court of equity ought

not to hesitate long in characterizing it as unfair competition in business."  *Id.* at 240.

Here too, the allegations concerning Tsutsui's and SEL's actions speak for themselves

and, if proven, a trier of fact should not hesitate long in characterizing them as unfair

competition.

       The Supreme Court's holding that attempting to reap where one has not

sown constitutes unfair competition in business is obviously directly on point here.  So

SEL strives mightily in an futile effort to argue that the *International News* case is not the

law – a daunting task indeed since *International News* is a Supreme Court decision that

has never been overturned, and that has been followed and cited as authority in

numerous decisions of the Courts of Appeal and the District Courts, including recent decisions.

The basic thrust of SEL's argument is that in some subsequent lower court cases, there is language emphasizing the "hot news" and time limited injunction remedy involved in the *International News* decision and then holding that a plaintiff's request for a similar "time limited" injunction is denied. *E.g.*, *Cheny Bros. v. Doris Silk Corp.*, 35 F. 2d 279 (2d Cir. 1929) (manufacturer of silk pattern denied injunction against copying his pattern for one season; dicta suggesting time-limited injunction remedy limited to "hot news"). While the "time limited" injunction aspect of *International News* may be construed so as to apply to facts closely analogous to those presented in *International News*, the Court's holding that it is unfair competition to "reap where one has not sown" has been repeated and followed under many different factual circumstances. *E.g.*, *Blackman v. Hustler Magazine, Inc.*, 620 F. Supp 1501 (D.D.C. 1984); *Standard & Poor's Corp. Inc. v. Commodity Exchange, Inc.*, 683 F. 2d 704, 710 (2d Cir. 1982) (relying, *inter alia*, on *International News as* the "seminal case" in the law developing the misappropriation branch of the unfair competition tort); *Roy Export, supra,* 672 F. 2d at 1105; *GAI Audio, supra*, 27 Md. App at 188-93 (upholding trial court finding of unfair competition based upon *International News* holding that one cannot reap where one has not sown and citing several decisions from other jurisdictions similarly based); *Delmarva Sash & Door Co. of Md. v. Anderson Windows, Inc.*, 218 F. Supp. 2d 729 (D. Md. 2002).[14]

---

[14]     SEL argues that the *Erie v. Tompkins* holding in 1938 has rendered the *International News* holding obsolete, however, the decisions cited here all post-date 1938 and follow *International News*. Indeed, the United States Supreme Court continues to create new federal "common law" intellectual property causes of action. For example, *Metro-Goldwyn-Mayer*

SEL also unsuccessfully attempts to distinguish this Court's finding of unfair competition in *Blackman v. Hustler Magazine, Inc.*, 620 F. Supp 1501 (D.D.C. 1984). After a trial, this Court held that, *independent of any copyright issues*, the defendant had engaged in unfair competition: "In addition to Hustler's wrongdoing as an infringer of Blackman's copyrights, Hustler's misappropriation and publication of the photographs for its own commercial advantage in competition with Blackman, constitutes unfair competition for which Blackman is entitled to recover damages. The law of unfair competition is . . . the protector, also, against misappropriation." *Id.* at 1514-15 (citations omitted). Hustler "had reaped where it had not sown" and, like both International News and the defendant SEL in this action, had entered upon the scene after the work had been done and just in time to divert profit from the plaintiff's prior efforts. SEL seeks vainly to distinguish this holding on the ground that Blackman also has a claim for copyright infringement; but, as the holding quoted above makes clear, this Court's holding of unfair competition was independent of the copyright infringement.

In its second attempt to distinguish *Blackman*, SEL ironically simply highlights a similarity with the facts here. SEL points out that the Court held that the defendant had acted "in conscious disregard" of plaintiff's rights, and that its actions were "deliberate, intentional, malicious and wanton." SEL Memo. at 25. So too were Tsutsui's and SEL's actions here in conscious disregard of IMES' rights; they deliberately and intentionally took improper advantage of Kido and then, knowing that Kido was the true inventor, that the research required to accomplish Kido's break-through was expensive and time consuming, and that the result was confidential

---

*Studios, Inc. v. Grokster,* Ltd., 545 U.S. 913 (2005), created a new common law cause of action for inducement of copyright infringement.

proprietary information, they have filed a patent application on that invention, without mentioning Kido, so as to be able to unfairly compete with IMES, and exclude IMES from the use of its own invention.

The other cases cited by SEL are also of no help to it. First, as stated above, the question whether there has been unfair competition is highly fact dependent and SEL has simply cited some cases in which the courts have held, after reviewing the facts as developed by the parties, that the defendant's actions were not unfair. Second, and very significant in determining a motion at the pre-discovery stage, in several of the unfair competition cases cited by SEL, *the court already had before it factual development of the unfair competition claim*. *E.g.*, *Confold Pacific, Inc. v. Polaris Industries, Inc.*, 433 F. 3d 952 (7th Cir. 2006) (motion for summary judgment; factual development part of the record); *O'Brien v. Westinghouse Elec. Corp.*, 293 F. 2d 1 (3rd Cir. 1961) (trial held); *Nachtman v. Jones & Loughlin Steel Corporation*, 235 F. 2d 211 (3rd Cir. 1956) (trial held); *Catalyst & Chemical Services, Inc. v. Global Ground Support*, 350 F. Supp. 2d 1 (D.D.C. 2004) (summary judgment motion denied; fact issues as to what was revealed at an industry conference and whether information qualified as a trade secret); *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48 (D.D.C. 2001) (motion for summary judgment denied; affidavits show question of fact as to unfair competition claim).

In *Confold*, the Seventh Circuit held on the facts before it that there was no unfair competition by the defendant and therefore affirmed the trial Court's grant of summary judgment. The defendant Polaris sent a request for proposals for the design of a returnable container to nine firms, including Confold. Polaris advised that "your

design will be one of nine considered at this point." *Confold*, 433 F. 3d at 954.  Polaris accepted none of the proposals.  A few years later, Polaris designed a returnable container and gave the design to a firm for manufacture.  Confold then claimed that the design for the container was the design that it had submitted years ago in response to the request for proposals.  Polaris denied that it was using Confold's design.  The District Court granted summary judgment to the defendant Polaris.  Based upon the facts presented, there was no unjust enrichment and there was no evidence that whatever design Confold had submitted was wrongfully obtained by Polaris.[15]

In *O'Brien v. Westinghouse Electric Corp.*, 293 F. 2d 1 (3rd Cir. 1961), another case cited by SEL, the Court simply upheld the factual finding, after trial,  that there was no unfair competition.  The plaintiff employee had placed a suggestion in the defendant company's suggestion box on a form bearing the legend, "All suggestions become the property of the Company." *Id.* at 14.  Moreover, the Company paid to the employee the amount that it represented it would pay for suggestions that it actually used, and the Court emphasized that the employee "desired to have his suggestion used to the point of insistence." *Id.*  The *O'Brien* case bears no resemblance to the allegations of the Complaint here and, if anything, its relevance is simply to emphasize, once again, that whether there has been unfair competition is most often a question of fact and that most cases are decided after trial, or on summary judgment after discovery, or, at least, after factual development through a preliminary injunction hearing.

---

[15]    The Court stated:  "It would be ridiculous to think that Confold could simply have mailed its container design to every company in the world that uses containers and then gone around and sued all the companies that used the design." *Id.* at 958.

As shown above, the Complaint here clearly states a claim for unfair competition, and the application of the well-known rules pertaining to the determination of motions to dismiss requires that the Court reject SEL's demand for dismissal of IMES' claim.

### 1.   IMES' Claim of Unfair Competition Is Timely; SEL Has Not Met Its "Heavy" Burden of Demonstrating That There Is No Issue of Fact As to the Date of Accrual

SEL claims that a three year statute of limitations applies to a claim of unfair competition and that IMES' claim against SEL accrued on December 4, 2002, when SEL *filed* the Tsutsui '843  patent application containing the Kido/IMES invention. SEL Memo. at 29.  This is incorrect; the statute of limitations for IMES' unfair competition claim accrued, at the earliest, when the Patent Office *published* the Tsutsui '843 patent application.  See *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 64 F. Supp. 2d 233, 247 (W.D.N.Y. 1999).  The Patent Office published the SEL application on July 10 2003 (Compl. at ¶ 49), and the original complaint was filed on July 7, 2006.  The shortest statute of limitations that would apply is three years, and therefore the unfair competition claim was timely interposed.

The Patent Office does not immediately publish applications for patents and the application and its contents are held confidential by the Patent Office. Accordingly, at the time that SEL filed the Tsutsui '843 patent application,  the IMES proprietary information contained in that application was not disclosed to the world. IMES was not aware of SEL's patent application until sometime after the Patent Office published the SEL application. Under District of Columbia law, in cases such as this in which the plaintiff could not reasonably know of the defendant's actions creating injury to the plaintiff, the statute of limitations does not begin to run until the plaintiff has actual

knowledge, or reasonably should have known, that injury has been suffered as a result of the defendant's wrongdoing. *Lee v. Wolfson*, 265 F. Supp. 2d 14, 17 (D.D.C. 2003). Accordingly, the earliest possible date on which the statute of limitations could begin to run on IMES' unfair competition claim was the date that the Patent Office published the Tsutsui '843 patent application, July 7, 2006.

Moreover, the burden of proof and of persuasion on a statute of limitations defense is with the defendant and that burden is a very "heavy" one, since determining when accrual occurs in a specific case is a question of fact.  Thus, a court may dismiss a claim on statute of limitations grounds only if "no reasonable person could disagree on the date on which the cause of action accrued." *Lee v. Wolfson, supra*, 265 F. Supp. 2d at 19.  In *Bausch & Lomb, supra*, the court held that the accrual date of a cause of action for unfair competition based upon misappropriation of a trade secret "depends upon what the party alleged to have committed the misappropriation did with the information." 64 F. Supp. 2d  at 247.  If the defendant does not publicly disclose the plaintiff's information, but rather makes use of it for its own commercial advantage, then the misappropriation is a continuing tort. *Id.*  In *Bausch & Lomb*, the court denied a motion for summary judgment based upon the statute of limitations, holding that there was an issue of fact as to when the plaintiff's cause of action for unfair competition accrued. *Id.* at 247-48.

Here, the IMES' proprietary confidential information that SEL misappropriated was not publicly disclosed by SEL but rather was used by SEL for its own commercial advantage by its application for a patent.  Accordingly, the earliest that IMES' unfair competition claim accrued was on July 10, 2003, when the Patent Office

made public the SEL patent application that was based upon the confidential proprietary

information SEL had misappropriated from IMES.  The actual accrual date would be the

date that IMES in fact discovered that SEL had caused it injury, or the date on which it

reasonably should have known of the injury – a question of fact that cannot be resolved

on motion to dismiss.  *Lee v. Wolfson, supra.*

 An argument that a claim is time barred is an affirmative defense on which

a defendant has a "heavy" burden.  However, SEL cites no authority for the proposition

that the *filing* of an application with the Patent Office marks the accrual of a claim for

unfair competition based upon misappropriation of proprietary information and trade

secrets contained in the application.   The two cases cited by SEL do not involve filings

with the Patent Office and do not apply District of Columbia law.  The first case,

*Norbrook Labs. Ltd v. G.C. Hanford Mfg. Co.*, 297 F. Supp.2d 463, 491 (N.D.N.Y.

2003), involved a filing with the FDA.  In the second, *Mopex, Inc. v American Stock

Exch., LLC*, No. 02 Civ. 1656, 2002 WL 342522 (S.D.N.Y. May 5, 2002), the filing at

issue was with the SEC.  As stated above, the Patent Office keeps applications

confidential and Kodak's patent application was kept confidential and was not publicly

available when filed.  There is no discussion in either of the two cases cited of filings

with the Patent Office or the effect on accrual of the government office processing an

application in confidence, an issue of significance here.

 In *Norbrook Labs*, the Court rejected the defendant's claim that the

plaintiff's unfair competition claim accrued when the defendant used plaintiff's trade

secret and proprietary information to create 1,000 litre batch of the animal drug at issue

for purposes of developing the capability of large scale production.  *Norbrook Labs*, 297

F. Supp. 2d at 476-77.  Noting that the plaintiff Norbrook only discovered the defendant's activity through an FOIA request to the FDA,  the Court held that the claim for unfair competition claim accrued when the defendant applied to the FDA to amend its commercial manufacturing process so as to include the new process that was based on the plaintiff's trade secret and proprietary information.  *Id.* at 469, 491.  In short, the Court recognized that if the defendant misappropriates the plaintiff's trade secret or proprietary information and is using that information in a non-public way, there is no way for the plaintiff to know of that use.

*Mopex, Inc.*, the other case cited by SEL, involves a series of complicated procedural issues. 2002 WL 342522 at *3-4.  The plaintiff brought an action in Illinois instead of interposing its claims as counterclaims in a prior New York action, which led the *plaintiff* Mopex to the unusual position of arguing that *its own* causes of actions were barred by the New York statute of limitations. *Id.* at *4, n. 10.[16]  The Court took Mopex's position at face value: according to Mopex's complaint, its claim for misappropriation of trades secrets and its claim for unfair competition accrued when an application was made to the SEC for authority to trade financial products based upon the trade secrets; and based upon that date Mopex's claims were time barred. *Id.* *11.[17]  Again, there is no discussion in *Mopex* as to the effect on accrual of the Patent Office's processing

---

[16]    The Illinois action was transferred to New York.  In order to justify its commencement of an action in Illinois, and to obtain the application of Illinois law, and to avoid the dismissal of its claims on the ground that they were compulsory counterclaims that should have been interposed in a prior New York action, Mopex argued that its claims could not have been brought in the prior New York action – because they would all have been time-barred by New York law.

[17]    The *Mopex* court noted that New York decisions were divided as to whether the six year limitation period applicable to claims involving fraud, or the three year statute to recover damages for injury to personal property, was applicable to a claim of unfair competition. Since it wanted its claims to be time-barred, the plaintiff Mopex itself argued for a three year statute. *Id.* at *11

patent application in confidence and the decision does not apply District of Columbia law or its discovery rule.

### E.    IMES Properly Has Alleged A Claim of Injurious Falsehood Against SEL

The tort of injurious falsehood, also known as trade libel, is separate from the torts of defamation, libel or slander.  Injurious falsehood involves disparagement of the plaintiff's interest in property or of a product of the plaintiff's.  *See Prosser & Keeton on Torts* § 128 at 963 (5th ed. 1984) (stating that injurious falsehood relates to disparagement of a property right as opposed to the person); Restatement Second Torts § 623A (2006) (stating that the tort of injurious falsehood applies in cases where disparagement is of land, chattels or intangible things or their quality).

The elements of injurious falsehood are:  (1) defendant's unprivileged publication of false statements concerning plaintiff's property or product, (2) with knowledge or reckless disregard of the falsity that the defendant, (3) was the proximate cause of pecuniary harm to the plaintiff.  *Whetstone Candy Co. Inc. v. National Consumers League*, 360 F. Supp.2d 77, 81 (D.D.C. 2004).

### 1.    IMES Has Alleged The Elements of Injurious Falsehood, Including Pecuniary Harm

SEL does not contest that IMES has sufficiently alleged that SEL made a false statement to the USPTO in a patent application that incorporated IMES' Invention and that SEL made that false representation with knowledge and/or with reckless disregard for the falsity.  *See* SEL's Motion at p.31 (citing original Compl. at ¶¶ 104, 108 & 112).  SEL argues that IMES has not alleged that SEL's false statement to the USPTO caused IMES pecuniary harm.  *Id.*

The District of Columbia requires that a plaintiff pleading an injurious falsehood claim set forth by allegations that state what pecuniary loss the plaintiff has suffered. *Schoen v. Washington Post*, 246 F.2d 670, 671-72 (D.C. Cir. 1957). Federal courts applying Rule 9(g) of the Federal Rules of Civil Procedure ("FRCP") apply generally the same standard. The rule requires such damages to be specially pleaded with some specificity in order to demonstrate the sufficiency of the plaintiff's claim for relief, but does not require that the dollar amount be pleaded. Wright, Charles Alan and Miller, Arthur R., 5A *Federal Practice & Procedure* § 1310 (2006).

In *Schoen*, the United States Court of Appeals for the District of Columbia denied a motion to dismiss an injurious falsehood claim where the plaintiff alleged that he lost gross revenue as between the year preceding the false statement and the year subsequent to that statement. *Id.* at 672. Schoen alleged damages from a claim of trade libel based on the facts that: it operated a dance studio; it lost approximately $9,000 from the year before to the year after publication of the allegedly libelous statement; the decrease was caused by a loss of existing customers; and the libelous publication caused the loss of many potential and unknown customers. *Id.* The court held that Scheon had sufficiently alleged pecuniary harm by special damages. *Id.*

The general purpose of pleading special damages is to put the defendant on notice of the claimed damages. Wright, Charles Alan and Miller, Arthur R., 5A *Federal Practice & Procedure* § 1311 (2006). That treatise states:

> [A]llegations of special damage will be deemed sufficient for the purpose of Rule 9(g) if they are definite enough to enable the opposing party to prepare his or her responsive pleading and a defense to the claim

*            *            *

> [D]istrict judges, guided by the liberal philosophy of the pleading rules,
> have not been too demanding as to the amount of accompanying detail
> required to be included in the pleading inasmuch as the defendant may
> obtain any further desired information through the discovery process.

*Id.* (citing *Schoen*, 246 F.2d 670).  Thus, Rule 9(g), while constituting an exception to

the liberal pleading standard under rule 8, does not establish a rigid pleading standard

for special damages.

IMES has pled significant facts in support of its claims of pecuniary harm,

including that the harm was caused by SEL's false statements to the USPTO.  IMES

has set forth allegations that SEL's unfair competition by misappropriation has caused

harm to IMES' interest in its Invention (Compl. at ¶¶ 71,72) and that SEL's acts of

injurious falsehood have caused harm to those same interests (Compl. at ¶¶ 124 and

130).  IMES invested several million dollars worth of research and development costs in

developing the Invention and these costs constitute special damages.  (Compl. at ¶ 87.)

IMES has also alleged that SEL's acts have placed a cloud over IMES' ownership of the

Invention and caused the diminution in value of the Invention and of Plaintiff corporation

as a whole.  (Compl. at ¶ 73.)  Now that the harm has been caused, IMES has the

additional damages of the attorneys' fees required to dispel this cloud on title to IMES'

Invention.  Thus, it is clear that the nature of the harm alleged is pecuniary.

Courts have recognized that the special damages recoverable in a slander

of title action are the pecuniary losses that result "directly and immediately from the

effect of the conduct of third persons, including impairment of vendibility or value

caused by disparagement and the expense of the measures reasonably necessary to

counteract the publication, including litigation." *Huff v. Jennings*, 319 S.C. 142, 150-51

(1995). Here, the conduct of third parties, namely SEL, has directly impaired the vendibility and value of Plaintiff's Invention.

Moreover, as noted in *Huff,* special damages also includes the expenses necessary to counteract the disparagement of title, such as litigation. In *Rayl v. Shull Enterprises, Inc.,* 108 Idaho 524 (1985), a tenant farmer sued his corporate landlord alleging that the landlord had not given proper notice of termination of the lease. The tenant also sought to foreclose a labor lien that had been filed on the property. The landlord counterclaimed seeking eviction and removal of the lien, as well as alleging slander of title. In connection with the latter claim, the trial court found that no special damages were alleged and proven. The Supreme Court of Idaho held that this was error:

> [T]he trial court erred when it ruled that the attorney fees and costs expended by Shull in its attempt to remove the false lien from its property did not constitute those special damages required in a slander of title action.

*Id.* at 530. The court reviewed a number of cases dealing with this question and found that, while a minority of courts have ruled that a slander of title actions fails if it does not allege the loss of a particular pending sale, the majority view is that attorneys' fees and costs of a suit to remove the slander are appropriately viewed as pecuniary damages. *Id. See also TXO Production Corp. v. Alliance Resources Corp.,* 187 W. Va. 457, 468 (1992) ("clear majority rule" is that attorneys' fees incurred in removing spurious clouds from title qualify as special damages), *aff'd* 509 U.S. 443 (1993).

Finally, IMES notes that, in the absence of discovery, it has been unable to determine whether SEL has received any money in connection with its exploitation of the stolen technology. This is directly relevant to the issue of impairment of vendibility

or value.  These facts are obviously solely within the knowledge of SEL and the Court

should allow discovery to proceed on this matter.  *Cf.* Fed. R. Civ. P. 56(f).

SEL's Reliance on *Browning v. Clinton*, 292 F.3d 235 (D.D.C. 2002) is

misplaced.  *Browning* involved a plaintiff who alleged that she had a longstanding

extramarital affair with former President Clinton during the time that Clinton was

Governor of Arkansas.  *Id.* at 240.  She had written a semi-autobiographical novel about

her relationship with Clinton, but allegedly had been prevented from publishing the book

by the defendants, who included, among others, Clinton, his aides, a journalist and The

New Yorker magazine.  *Id.* Of her eight counts, one alleged "disparagement of

property," but only was alleged against two co-defendants, The New Yorker magazine

and Jane Mayer, a journalist whose article about Browning had been published by The

New Yorker.  *Id.* at 241-42.  Browning alleged that Mayer had published an article in

The New Yorker that attributed comments about her book to Alfred Regnery, a book

publisher.   Browning alleged that Mayer had written that although it seemed plausible

that a book like Browning's would end up at a publisher like Regnery, Regnery had said

he "'wouldn't touch [Browning's book] with a ten foot pole' because it wasn't 'particularly

newsworthy' and was 'far below [Regnery's] standards.'"  *Id.* at 241.  Browning alleged

that she had never sent her manuscript to Regnery.  *Id.*

The Court in *Browning* dismissed the disparagement of property claim

because plaintiff had only alleged that "'[a]s a proximate result of the publication of

[Mayer's article], . . . neither [] Browning or Direct Creations Corporation were [sic] able

to sell the publishing and other rights in the manuscript,' and therefore that they suffered

damages 'including but not limited to marketing and other business expenses

incurred . . . loss of goodwill, [and] emotional distress and mental anguish.'" *Id.* at 246. Thus, Browning had only alleged "in general terms that The New Yorker article cost her financially" and did not meet the standard of Rule 9(g). *Id.*

*Browning* is inapposite. First, Browning improperly sought damages for emotional distress and mental anguish, which are not recoverable as pecuniary damages for injurious falsehood. Second, Browning did not allege the nature of her damages, such as whether they were lost royalties, or even whether they were out-of-pocket damages or lost profits. In contrast, as set forth above, IMES has alleged that it seeks recovery of several million dollars that it actually spent on research and development, for the diminution in value of its Invention and of its corporate value, and for attorneys' fees required to protect its property interest in its Invention. IMES also alleges that these damages were directly caused by SEL's having filed patent applications, subsequently published, that falsely represent that SEL is the owner of the Invention, and that Tsutsui is the inventor, thereby created a cloud over IMES' title to its Invention. Thus, IMES has met the standard set forth by *Browning* by alleging the nature of the damages and the way in which they resulted from SEL's actions.

SEL also cites *Henneberry v. Sumitomo Corp. of America*, 415 F.Supp.2d 423 (S.D.N.Y. 2006), for the proposition that SEL's false representation to the USPTO that SEL owns IMES' Invention and that Tsutsui invented it did not concern IMES' interest in its Invention. *Henneberry* sheds no light on SEL's argument, as that case involved comments that a corporate chairman lacked the personal skill and ability to manage a corporation and otherwise disparaged his business acumen. *Id.* at 472. The same is true for *Flotech, Inc. v. E.I. DuPont de Nemours Co.*, 627 F. Supp. 358 (D.

Mass. 1985), and *Aflex Corp. v. Underwriters Laboratories, Inc.*, No. 89-55440, 1990 WL 129482 (9th Cir. 1990), which both involved statements expressly about the products of someone other than the plaintiff. Here, as set forth above, SEL's false statements created a cloud over IMES' title to and interest in its Invention.

None of the cases SEL cites involved sunk research and development costs or diminution of corporate value. IMES' damages for diminution of value, while clearly and directly caused by SEL's tortuous conduct, will require expert testimony, third-party discovery and discovery from SEL.[18]

**2.    IMES Has Brought This Action Within The Applicable Statute of Limitations**

**(a)    The District of Columbia's Three Year Statute of Limitations Applies to Claims of Injurious Falsehood**

As stated above, a defendant seeking to dismiss a claim based on statute of limitation grounds bears a "heavy" burden, since determining when accrual occurs in a specific case is a question of fact. *Lee v. Wolfson*, 265 F. Supp. 2d 14, 19 (D.D.C. 2003). Thus, a court may dismiss a claim on statute of limitations grounds only if "no reasonable person could disagree on the date on which the cause of action accrued." Id. (quoting *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998)).

The District of Columbia has set up is statutes of limitation in the same fashion as many states, in that certain, specific claims are identified as subject to a one year limitations period, while the remainder of the claims fall under a catch-all provision: Under District of Columbia Official Code § 12-301, the statute of limitations for the

---

[18]    Should the Court find it necessary for IMES to plead damages with greater specificity, IMES respectfully requests the opportunity to supplement the Amended Complaint.

recovery of damages from injury to real or personal property is three years.  D.C. Code § 12-301 (3).  Similarly, that statute provides a catch-all period of three years for all claims that are not otherwise designated as having another limitations period.  D.C. Code § 12-301 (8).  The statutory section cited by SEL provides a one year limitations period and identifies any "libel, slander, assault, battery. . . ." it does not identify injurious falsehood.  D.C. Code § 12-301 (4).

The District of Columbia statute of limitations specifically sets forth that claims alleging injury to property must be filed within three years, not one year.  It also specifically limits the one year category to traditional libel and slander, not injurious falsehood.  As discussed above, injurious falsehood is specifically meant for addressing injury to a party's interest in property; *i.e.*, pecuniary harm.  IMES has alleged that the damages it seeks are for the cloud over its title to its Invention that SEL's action have created.  (Compl. at ¶¶ 69-79, 124, 128, 130 and pp. 21, 22).  It follows that, as in many other states, the statute of limitations addressing causes of action for claims concerning property damage controls IMES' claim for injurious falsehood.  Accordingly, IMES had three years to bring its claim.

A claim for injurious falsehood is separate and distinct from a defamation claim.  It is generally recognized that a court can determine whether a claim sounds in defamation or injurious falsehood by reviewing the nature of the injury claimed by the plaintiff.  Injurious falsehood is not libel or slander.  *Whetstone*, 360 F. Supp.2d at 82 n.5. (stating that although the torts are closely related, defamation is injury to personal reputation while injurious falsehood is injury to the plaintiff's interest in personal property).

SEL disingenuously cites *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 (D.C. Cir. 1985), which is a case with no bearing on the statute of limitations issue*. Art Metal* dismissed a trade libel claim because it was barred under the provisions of the Federal Tort Claims Act ("FTCA"), and specifically held that its holding was narrowly limited to FTCA claims. *Id.* at 1156 n.8. SEL withheld this express limitation in its citation to this case  and improperly cited the case for totally unrelated proposition that the statute of limitations for injurious falsehood should be the same as that for a claim for defamation, libel or slander. *See* SEL's Motion at 30-34. The appellate court further stated that it recognized that there are differences between defamation and injurious falsehood and that in contexts other than the analysis of FTCA claims those differences may be of significance. *Art Metal*, 753 F.2d at 1156 n.8. As courts nationwide have recognized, the statute of limitations issue is a context in which the distinctions between defamation and injurious falsehood are crucial.

Courts have held that a plaintiff may seek to recover for both defamation and injurious falsehood based on the same false statements "so long as he avoids duplication of damages." *Proctor & Gamble Co. v. Amway Corp.*, 80 F. Supp.2d 639, 656 (S.D. Tex 1999)  The difference in the torts is that a claim for defamation seeks damages for injury to personal reputation caused by the false statement, such as humiliation and mental anguish, while an injurious falsehood claim seeks damages for injury to property caused by the false statement, such as lost sales or revenue. *Id.* With respect to statutes of limitation, courts nationwide have found the difference between the torts to be of critical importance.

It is generally recognized that even though some states have statutes seeking a one year statute of limitations period for defamation claims, those statutes do not apply to injurious falsehood, as the nature of the injury is different. *See e.g.*, *Patel v. Soriano,* 848 A.2d 803, 832 (N.J. Super. 2004). In *Patel*, the court held that the catch-all six year statute of limitations applied to an injurious falsehood claim and that the one year statute specifically for libel and slander did not. *Id.* The court noted that the defendant had made false statements concerning the plaintiff's medical and surgical abilities. *Id.* at 834. Thus, the claim was for injurious falsehood and not defamation. The one year statute specifically identified libel and slander, defamation claims, and did not identify either injurious falsehood or trade libel. *Id.* Thus, the Court held that the injurious falsehood claim was not subject to the same one year period as defamation, but was subject to the general six year period.

Similarly, in *State of Missouri ex rel. BP Products North America Inc. v. Ross*, 163 S.W.3d 922 (2005) (en banc), the Supreme Court of Missouri found that the plaintiff's claim alleging false statements were subject to a five year statute of limitations to the extent that they sought damages for pecuniary harm and were subject to a two year statute of limitations to the extent they sought for reputational injury. *Id.* 927-28. Thus, claims seeking damages for harm to the business interests of the plaintiff were not time barred, while the claims seeking damages for harm such as humiliation, emotional trauma and mental anguish were time barred. *Id.*; *see also Smith v. Magnolia Lady, Inc.*, 925 So.2d 898, 906 (Miss. App. Mar 28, 2006) (citing *State of Missouri* and *Whetstone*, *supra*, for the proposition that injurious falsehood is for pecuniary harm and defamation is for reputational harm).

IMES has alleged pecuniary harm that it suffered as a direct result of SEL's acts of injurious falsehood. There is no support for SEL's contention that a one year statute of limitations applies to IMES' claim for the damages that SEL's false statements have caused to IMES' interest in its product, namely the Invention. The cases SEL cites are inapposite. *McBride v. Pizza Hut, Inc.*, 658 A.2d 205 (D.C. 1995) concerned allegations of injurious falsehood sounding in defamation for reputational injury. There, the alleged falsehood was that a waiter in defendant's restaurant alleged that the defendant had been discharged for theft. *Id.* Thus, the one year statute of limitations applied. Given that IMES' allegations of injurious falsehood do not concern injury to a person's reputation, *McBride* is not relevant. Similarly, *Dove v. Wash. Metro. Area Transit Auth.*, 402 F. Supp.2d 91 (D.D.C. 2005), is inapposite because it deals solely with a defamation claim for reputational injury to a person, not injury to the plaintiff's interest in property.

(b)    The District of Columbia Applies A Discovery Rule

In addition the District of Columbia applies a discovery rule in circumstances such as this where the injurious false statement was not immediately made public. A cause of action accrues, for statute of limitations purposes, when the plaintiff has knowledge of, or by the exercise of reasonable diligence should have knowledge of: (1) the existence of the injury; (2) its cause in fact; and (3) some evidence of wrongdoing. *Lee v. Wolfson*, 265 F. Supp.2d at 17-19; *Kropinski v. World Plan Executive Council-US*, 853 F.2d 948 (D.C. Cir. 1988); *see also Smith v. Brown & Williamson Tobacco Corp.*, 108 F. Supp.2d 12 (D.D.C. 2000) ("actual notice," for limitations purposes, is that notice which a plaintiff actually possesses; "inquiry notice" is that notice which a plaintiff would have possessed after due investigation). Thus, at the

earliest, it was not until the date of publication of SEL's Tsustui '843 patent application that the three year statute of limitations began to run.

SEL filed the Tsutsui '843 patent application as a confidential application that IMES could not have known about or discovered through any diligence.  That patent application was published on July 10, 2003.  (Compl. at ¶ 49.)  That is the earliest time at which IMES could possibly have learned of SEL's false statement to the USPTO concerning IMES' Invention.  (Compl. at ¶ 62.)  Under SEL's own characterization of the tort of injurious falsehood, it requires "an unprivileged publication."  *See* SEL's Motion at 30.  Thus, IMES' claim is within the applicable three year limitations period, as the Complaint was filed on July 10, 2006.

        (c)      Even If A One Year Statute of Limitations Applies, IMES'
                     Claim Was Timely Filed

Each publication of an injurious falsehood is considered an independent tort that is actionable.  *See Patel v. Soriano*, 848 A.2d at 834 (noting that the statute of limitations had **not** run on a series of false statements that continued up to and after the filing of the complaint); *Carlson v. Trans Union, LLC*, No. Civ. 3:02-CV2654-H, 2003 WL 21750706 (N.D. Tex. July 22, 2003) (each publication is a separate tort).

IMES has plead not only that the Tsutsui '843 patent application falsely represented that SEL is the exclusive owner of, and Tsutsui is the inventor of, IMES' Invention, but also that SEL has filed continuation-in-part applications (defined in the Complaint as SEL Derivative Patent Applications) claiming the benefit of the Tsutsui '843 patent application.  (Compl. at ¶¶ 50 and 121).  According to the USPTO Web site, at least two patent applications filed by SEL claim the benefit of the Tsutsui '843 patent application as continuation patent applications:  (1) Patent Application Ser. No.

11/061,500 that was published as Pub. No. US 2005/0156197 on July 21, 2005 and

(2) Patent Application Serial No. 11/273,442 that was published as Pub. No. US

2006/0091797 on May 4, 2006 (collectively the "SEL Derivative Patent Applications").

IMES filed its Complaint on July 10, 2006.  The publication dates for both

these SEL Derivative Patent Applications are within the one year period prior to the

filing of the Complaint.  Moreover, both of these applications are separate publications

by SEL claiming falsely that SEL is the exclusive owner of, and Tsutsui is the inventor

of, IMES' Invention.

Further, SEL continues affirmatively to prosecute the Tsutsui '843 patent

application as its own claim to IMES' Invention.  SEL has been reaffirming repeatedly its

false statement to the USPTO that it is the exclusive owner of IMES' Invention.  SEL's

latest filing with the USPTO in furtherance of the Tsutsui '843 patent application,

according to the USPTO web site, was on August 1, 2006.  In the absence of SEL's

continued filings, the Tsutsui '843 patent application, with its false statements, would

become abandoned.  Such conduct constitutes a continuing tort, as SEL continues to

re-publish its false statements.  In such cases, courts have stated that the most recent

publication of a false statement causing the alleged injury is the date from which the

statute of limitations is measured.

Based on the foregoing, SEL's motion to dismiss IMES' claim of injurious

falsehood should be denied in its entirety.

## F.    IMES' Claims Are Not Merely An Interference

SEL argues that even if IMES' claims do arise under the patent law, those

claims are the equivalent of an action before the Patent Office Board of Patent Appeals

and Interferences.  *See* SEL's Motion at 16.  According to SEL, the USPTO should

therefore have exclusive jurisdiction over IMES' claims of unfair competition and injurious falsehood.

A review of the Complaint demonstrates that the claims alleged are not at all equivalent to an interference proceeding. *See* SEL's Motion at 16. Interference proceedings are limited to a determination of questions of priority of the inventions and [determinations of] questions of patentability." 35 U.S.C. § 135 (a). Furthermore, the USPTO cannot award damages or constructive trust remedies. *Montecatini Edison, S.P.A. v. Ziegler,* 486 F.2d 1279, 1283, (D.C. Cir. 1973). Moreover, no interference has been declared and an interference proceeding may never be declared.

In contrast, IMES alleges, among other things, that SEL misappropriated IMES' proprietary ideas and concepts. Those issues, while arising under the patent laws, as described above, present issues well outside the scope of an interference proceeding before the USPTO.

*Consolidated World Housewares, Inc. v. Finkle*, 831 F.2d 261 (Fed. Cir. 1987). Cited by SEL, involved a plaintiff that had entered into two separate assignment agreements to obtain the rights to two separate patent applications for arguably the same invention. The second assignment agreement, made with three of the four defendants, required the plaintiff to bring a lawsuit against them and the first assignee. *Id.* at 262. The plaintiff then sought a judicial declaration as between the defendant-assignors as to which patent application was valid and enforceable based on priority of invention. *Id.* at 262-63. These facts, based on an agreement between the plaintiff and three of the four named defendants "to collusively prosecute" that case, bear no resemblance to the facts in the present case.

SEL also cites *Airport Surface Techs, L.L.C. v. FieldTurf, Inc.*, 268 F. Supp.2d 999 (N.D. Ill. 2003).  That case involved a claim seeking "a declaratory judgment as to who is the inventor of the subject matter common to both [plaintiff's] and FieldTurf's Patent Applications."  *Id.* at 1001.  Just as in *Consolidated World*, the claim at issue essentially sought a declaration as to priority of invention.  Neither of those claims set forth causes of action for unfair competition or injurious falsehood.  Moreover, in *Airport Surface Techs*, the plaintiff's other claims, including claims for misappropriation of trade secrets, Lanham Act violations, state deceptive trade practice act violations and breach of contract were *not* dismissed from the case.  *Id.*

IMES' claims are not analogous to an interference proceeding before the USPTO and should be heard in this Court.

## IV.    CONCLUSION

Plaintiff IMES respectfully requests that the Defendant SEL's motion to dismiss be denied in its entirety, together with such further relief as the Court deems just and proper.

Dated:  December 15, 2006                    Respectfully submitted,

By:    /s/ Daniel J. Healy
        Daniel J. Healy, Esq. (Bar No. 476233)
        ANDERSON KILL & OLICK, LLP
        2100 M Street, NW, Suite 650
        Washington, DC  20037
        Tel: (202) 218-0040
        Fax: (202) 218-0055

David A. Einhorn, Esq. (Bar No. CT0001)
John M. O'Connor, Esq. (Bar No. NY0071)
Eugene Lieberstein, Esq. (Bar No. CT0002)
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York  10020
Tel:  (212) 278-1000
Fax:  (212) 278-1733

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on December 15, 2006, I electronically filed the Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record in this matter who are registered on the CM/ECF.

Michael J. McKeon, Esq.
Joshua B. Pond, Esq.
Brian T. Racilla, Esq.
Fish & Richardson, P.C.
1425 K Street, NW
Washington, D.C. 20005

Counsel for Defendant Semiconductor Energy Laboratory Co., Ltd.

By:    /s/ Daniel J. Healy
        Daniel J. Healy, Esq. (Bar No. 476233)