# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

INTERNATIONAL MANUFACTURING
AND ENGINEERING SERVICES
COMPANY, LTD.,

                Plaintiff,

   v.

SEMICONDUCTOR ENERGY
LABORATORY COMPANY, LTD.,

                Defendant.

Case No. 1:06-CV-01230 JDB

**DEFENDANT SEMICONDUCTOR ENERGY LABORATORY CO., LTD.'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................3

I.      IMES' Clear Failure To Demonstrate That SEL Is A "Patentee" .......................................3
        As Required by 35 U.S.C. § 293 Requires Dismissal For Lack
        Of Personal Jurisdiction Over SEL

II.     IMES Has Failed To Demonstrate This Court's Subject Matter .........................................6
        Jurisdiction

        A.      IMES Cannot Establish A Patent "Right" And Related Tort .................................6
                Claim That "Necessarily Depends On Resolution Of A
                Substantial Question Of Federal Patent Law"

        B.      The Paris Convention Cannot Rescue The Fatal Deficiencies ............................11
                Of IMES' Complaint Because The 19th Century Treaty Is Not
                A Basis For A Federal Unfair Competition Claim Or Jurisdiction
                Before This Court

                1.      The Paris Convention Is Not Self-Executing And Yields No....................12
                        Cognizable Basis For IMES' Unfair Competition Claim

                2.      The Paris Convention Does Not Provide IMES With Subject .................14
                        Matter Jurisdiction Missing From Its Unfair Competition Claims

        C.      Because IMES Also Concedes That The "Real Question At Issue" ....................15
                In Its Injurious Falsehood And Unfair Competition Claims Is
                Whether SEL Or IMES Has Priority Of Invention, If IMES' Claims
                Are Found To Arise Under The Patent Laws, They Fail For Lack
                Of Subject Matter Jurisdiction

III.    IMES Failed To Rebut SEL's Demonstration That IMES Lacks Standing......................16
        To Bring The Present Action

IV.     IMES' Complaint Requires Dismissal Because It Fails To State Any ............................17
        Claims Upon Which Relief Can Be Granted Under Fed. R. Civ. P. 12(b)(6)

        A.      IMES' Unfair Competition Claims Must Be Dismissed........................................17

                1.      IMES' Failure To Allege Any Wrongdoing By SEL ...............................18
                        Related To A Recognized Right Precludes Its Claim
                        Of Unfair Competition

2.     To The Extent IMES Has Alleged Cognizable Claims ............................20
Of Unfair Competition, The Three-Year Statute Of
Limitations Precludes Them

B.     IMES' Injurious Falsehood Claim Must Be Dismissed........................................21

1.     IMES Concedes Its Failure to Allege Any Falsehoods ............................21
That "Concern Plaintiffs' Property Or Product"

2.     IMES Failed To Properly Allege "Special Damages"..............................22

3.     To The Extent IMES Has Alleged A Cognizable Claim Of
Injurious Falsehood, The Statute Of Limitations Precludes It..................23

CONCLUSION..........................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                              **Pages**

*Acoustical Manufacturing Co. v. Audio Times, Inc., 3 Media L. Rep* ..............................24
    2057 (D.C. Super. Ct. 1977)

*Airport Surface Tech., L.L.C. v. FieldTurf, Inc.* ................................................................16
    268 F. Supp. 2d 999 (N.D. Ill. 2003)

*Art Metal-U.S.A., Inc. v. United States* .....................................................................21, 24
    753 F.2d 1151 (D.C. Cir. 1985)

*Black v. Nat'l Football League Players Ass'n.* ................................................................24
    87 F. Supp. 2d 1 (D.D.C. 2000)

*Bd. of Regents, The Univ. of Texas Sys. v. Nippon Tel. & Tel. Corp.* ...........................7, 8
    414 F.3d 1358 (Fed. Cir. 2005)

*Bonner v. Chicago Title Ins. Co.* ....................................................................................25
    487 N.W. 2d 807 (Mich. App. 1992)

*Browning v. Clinton* .......................................................................................................23
    292 F.3d 235 (D.C. Cir. 2002)

*Catalyst & Chem. Servs., Inc. v. Global Ground Support* ...............................................19
    350 F. Supp. 2d 1 (D.D.C. 2004)

*Chou v. University of Chicago* .......................................................................................17
    254 F.3d 1347 (Fed. Cir. 2001)

*Christianson v. Colt Indus. Operating Corp.* ..........................................................6, 9, 11
    486 U.S. 800 (1988)

*City of Littleton v. Z .J. Gifts D-4, L.L.C.* ......................................................................17
    541 U.S. 774 (2004)

*Conroy v. Fresh Del Monte Produce Inc.* ........................................................................11
    325 F.Supp. 2d 1049 (N.D. Cal. 2004)

*Consol. World Housewares, Inc. v. Finkle* .....................................................................16
    831 F.2d 261 (Fed. Cir. 2005)

*Delmarva Sash & Door Co. v. Andersen Windows, Inc.* ...................................................19
    218 F. Supp. 2d 729 (D. Md. 2002)

*Deprenyl Animal Health, Inc. v. University of Toronto Innovations Found.* ..................5, 6
    297 F.3d 1343 (Fed. Cir. 2002)

*Diamond v. Huffman* .......................................................................................................25
    667 P.2d 1040 (Or. App. 1983)

*Empresa Cubana del Tabaco v. Culbro Corp.* ........................................................13, 15
    399 F.3d 462 (2d Cir. 2005)

*Empresa Cubana del Tabaco v. Culbro Corp.* ...............................................................15
    No. 97 Civ. 8399, 2004 WL 602295 (S.D.N.Y. 2004)

*Flotech, Inc. v. E.I. DuPont de Nemours Co.* ................................................................25
    627 F. Supp. 358 (D. Mass. 1985)

*Foster v. Neilson* .............................................................................................................12
    27 U.S. 253 (1829)

*Fowler v. Curtis Publ'g Co.* ...........................................................................................23
    182 F.2d 377 (D.C. Cir. 1950)

*FW/PBS, Inc. v. City of Dallas* .......................................................................................17
    493 U.S. 215 (1990)

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas* ........................................................17
    90 F.3d 479 (Fed. Cir. 1996)

*Gee v. Pima County* ........................................................................................................25
    612 P.2d 1079 (Ariz. App. 1980)

*Golden Palace, Inv. v. National Broadcasting Co.* .........................................................23
    386 F. Supp. 107 (D.D.C. 1974)

*Gruppo Gigante SA De CV v. allo & Co., Inc.* ..............................................................13
    391 F.3d 1088 (9th Cir. 2004)

*Helfgott & Karas, P.C. v. Dickenson* .............................................................................11
    209 F.3d 1328 (Fed. Cir. 2000)

*Hunter Douglas, Inc. v. Harmonic Design, Inc.* ...................................................7, 10, 11
    153 F.3d 1318 (Fed. Cir. 1998)

*Int'l Café, S.A.L. v. Hard Rock Café Int'l, Inc.* ....................................................12, 13, 14
    252 F.3d 1274 (11th Cir. 2001)

*International News Service v. Associated Press* ..............................................................19

248 U.S. 215 (1918)

*J & M Sidewinders, Inc. v. Valeo Sylvania, L.L.C.*........................................................20
    No. Civ. 05-40094, 2005 WL 1801987 (E.D. Mich. July 28, 2005)

*Kunkle v. Texas* ........................................................................................................2
    125 S. Ct 2898 (2004)

*LaBarge v. City of Concordia* ........................................................................25
    927 P.2d 487 (Kan. App. 1996)

*Lee v. Wolfson* ........................................................................................20, 21
    265 F. Supp. 2d 14 (D.D.C. 2003)

*Lehigh Chem Co. v. Celanese Corp. of Am.* ................................................24
    278 F. Supp. 894 (D. Md. 1968)

*Mannington Mills, Inc. v. Congoleum Corp.* ........................................12, 13, 14
    595 F.2d 1287 (3d Cir. 1979)

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.* ................22, 23
    No. 00 CV 1164, 2003 WL 259142 (N.D. Ill. 2003)

*Mattel, Inc. v. MCA Records, Inc.*........................................................14
    296 F.3d 894 (9th Cir. 2002)

*McBride v. Pizza Hut* ........................................................................24
    658 A.2d 205 (D.C. 1995)

*Midwest Indus., Inc. v. Karavan Trailers, Inc.* ........................................10
    175 F.3d 1356 (Fed. Cir. 1999)

*Montgomery v. Milam*........................................................................25
    910 S.W. 2d 237 (Ky. 1995)

*Mopex, Inc. v. Am. Stock Exch., LLC*........................................................20
    No. 02 Civ. 1656, 2002 U.S. Dist. LEXUS 3532 (S.D.N.Y. Mar. 4, 2002)

*Murray v. Gemplus Int'l, S.A.* ........................................................................7
    No. Civ. A. 02-6265, 2002 WL 32107942 (E.D. Pa. Oct. 29, 2002)

*Nat'l Patent Devel. Corp. v. T.J. Smith & Nephew Ltd.* ................................3, 4, 5
    877 F.2d 1003 (D.C. Cir. 1989)

*Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co v. Am. Stock Exch., LLC*........................20
    297 F. Supp. 2d 463 (N.D.N.Y. 2003)

*Ortman v. Stanray Corp.* ............................................................................12, 14
    371 F.2d 154 (7th Cir. 1967)

*Pro Gold Mfg., Inc. v. Tribune Review Newspaper Co.* ....................................24
    809 A.2d 243 (Pa. 2002)

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.* ..........................................4
    332 F. Supp. 2d 63 (D.D.C. 2004)

*In re Rath* .......................................................................................................12
    402 F.3d 1207 (Fed. Cir. 2005)

*Rousseau v. Brown* ..........................................................................................12
    21 App. D.C. 73 (D.C. Cir. 1903)

*Roy Exp. Co. v. Columbia Broad. Sys., Inc.* ....................................................21
    672 F.2d 1095 (2d Cir. 1982)

*Shatterproof Glass Corp. v. Guardian Glass Co.* ............................................21
    322 F. Supp. 854 (E.D. Mich. 1970)

*Schoen v. Washington Post* ..............................................................................23
    246 F.2d 670 (D.C. Cir. 1957)

*Scimed Life Sys., Inc. v. Medtronic Vasular, Inc.* ............................................12
    No. Civ. A. 01-2015, 2006 WL 1102834 (D.D.C. 2006)

*Scott Paper Co. v. Fort Howard Paper Co.* ......................................................24
    343 F. Supp. 229 (E.D. Wis. 1972)

*Struthers Scientific & International Corp. v. General Foods Corp.* ..................17
    290 F. Supp. 122 (S.D. Tex. 1968)

*Thompson v. Microsoft Corp.* .............................................................................9
    No. Civ. A. 06-1073, 2006 WL 3590797 (Fed. Cir. Dec. 8, 2006)

*Uroplasty, Inc. v. Advanced Uroscience, Inc.* ...................................................7
    239 F.3d 1277 (Fed. Cir. 2001)

*Whetstone Candy Co., Inc. v. Nat'l Consumers League* ..............................23, 24
    360 F. Supp. 2d 77 (D.D.C. 2004)

## **STATUTES**

28 U.S.C. § 1331 ...............................................................................................14

28 U.S.C. § 1332 .................................................................................................6

28 U.S.C. § 1338 ..............................................................6, 7, 8, 9, 10, 11, 14

35 U.S.C. § 135 .............................................................................................5, 16

35 U.S.C. § 145 .................................................................................................5

35 U.S.C. § 256 ...............................................................................................17

35 U.S.C. § 293 .........................................................................................3, 4, 5, 6

District of Columbia Official Code §§ 12-301, 36-401 ..............................19, 20

## RULES

Fed. R. Civ. P. 9 ........................................................................................22, 23

Fed. R. Civ. P. 12 ..........................................................11, 13, 14, 15, 17, 22

## SECONDARY SOURCES

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* .........22, 23
§§   1310, 1311 (2006)

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice
and Procedure* § 1476 (2d ed. 1990) ..................................................................12

Dobbs, Dan B., *The Law of Torts* § 456 ...................................................18, 19

S. Rep. No. 87-1019 (1961) ............................................................................12

## INTRODUCTION

This case is unprecedented.  We are unaware of, and IMES has failed to cite, any case that supports its present attempt to bring tort claims based on statements made to the Patent Office regarding inventorship in connection with the filing of a patent application that remains pending and that may never even issue as a patent.  Lacking any foundation, IMES unsuccessfully seeks to shoehorn its case into amorphous catch-all tort claims, and the result is a collection of convoluted causes of action that are jurisdictionally deficient, nonjusticiable, and fail to state a claim upon which relief may properly be granted.  Indeed, after the filing of a Complaint, an Amended Complaint, and a number of briefs attempting to articulate its case, IMES' cause of action is still hopelessly vague and wholly unsupported by any rooted concepts of law or precedent.  IMES' belated, eleventh-hour filing of its Amended Complaint that adds unfair competition allegations under an 1883 international treaty (which cannot possibly provide rights to IMES) only highlights the fatal flaws in IMES' case.

IMES' shortcoming is evident from its own characterization of this case in its summary – "[a]t issue in this case are claims that turn on questions of inventorship and ownership of the Invention and the enforceability of SEL's [patent application]."  But patent applications are never enforceable, inventorship issues relating to pending patent applications can only be resolved by the Patent Office, and there are no patent rights to an "invention" until the Patent Office says so, something that is pure speculation now.  These principles are all based on well-entrenched statutory law and policy regarding the respective roles of the Patent Office and courts with respect to patent applications on the one hand and issued patents on the other.

IMES seeks to cloak the flaws of its case with rhetoric – accusing SEL and Tsutsui of "disgraceful and unethical behavior" and "predatory taking," and Tsutsui of commencing "a

campaign to goad and trick Kido" at the academic conference in Germany over five years ago and of "deliberately, intentionally, and in bad faith, engaging in the wrongful conduct of goading Kido into refuting Tsutsui's implications that Kido had not been truthful." These hollow allegations are simply absurd on their face and, more importantly here, cannot save the Complaint from dismissal.

IMES' Complaint and briefing in connection with this motion assail the good reputations of SEL and Dr. Tsutsui, and are nothing more than sophomoric mudslinging. This Court should not permit IMES to hold SEL and Dr. Tsutsui hostage to IMES' unfettered whim, a tactic that IMES blatantly admits as its objective here: "Should IMES choose not to prosecute the case because the USPTO alters the Tsutsui '843 patent application in a manner that significantly restricts the scope of this case, this case could become effectively moot." IMES Brief at 14.[1] If IMES' ill-advised Complaint is accepted here, it will stifle innovation and the patent prosecution process by encouraging others (including well-funded, litigation-worthy corporations) to file lawsuits like this based on the mere filing of a patent application by others (including research institutions like SEL) and to sack innovators with the substantial human and financial burdens associated with Federal district court litigation, even before a patent is granted which would at least permit appropriate weighing of merits, costs, benefits, and risks. IMES filed this case in haste, as evidenced from its innumerable flaws and its "cut and paste" of the Kodak complaint

---

[1]  Precedent demands that this case be dismissed. However, in the event that the Court denies SEL's motion, this case should proceed with haste and certainly should not be stayed as requested by IMES. On this point, in its reply brief in support of its motion to stay, IMES cites the concurring opinion of Justice Stevens on *Kunkle v. Texas*, 125 S. Ct 2898 (2004) for the proposition that this Court need not rule on SEL's motion to dismiss before ruling on IMES' motion to stay. This assertion completely misses the mark. The three paragraph Stevens concurrence was in support of a denial of a writ of certiorari that left in place a Texas state court order of execution. Justice Stevens merely commented that his prior stay of execution for the purpose of determining whether the Supreme Court had jurisdiction was appropriate and, since it was determined that the Court did not have jurisdiction, the stay was lifted and the death sentence imposed. That case has nothing to do with the relief IMES requests here and it is improperly cited (and is also the only case IMES could find to rebut the wealth of cases cited by SEL holding that the Court must rule on the motion to dismiss before entertaining the motion to stay).

(alleging that it was someone other than Tsutsui at the academic conference that did the "goading"); indeed, despite our clear and repeated reference to the Kodak case in the SEL motion papers, nary a word from IMES about it in opposition. The Court should not leave the prosecution of this case as something for IMES to "choose," but rather should swiftly grant SEL's motion to dismiss as required by law and the demands of justice.

## ARGUMENT

### I.    IMES' Clear Failure To Demonstrate That SEL Is A "Patentee" As Required By 35 U.S.C. § 293 Requires Dismissal For Lack Of Personal Jurisdiction Over SEL

IMES concedes that there is no personal jurisdiction over SEL in this matter because IMES cannot show that SEL is a "patentee" as required by 35 U.S.C. § 293. The plain language of section 293 expressly limits the jurisdictional scope of the Section to foreign "patentees," *see* 35 U.S.C. § 293, and the Court of Appeals for the District of Columbia found that there was "no cause to depart from 'the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself'" with respect to section 293. *Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1008 (D.C. Cir. 1989). IMES did not address either of these dispositive points—IMES failed to allege (because it cannot) that SEL is a foreign patentee[2] and failed to demonstrate (because it cannot) why the plain language of the statute should not apply here—and, thus, this case should be dismissed for lack of personal jurisdiction over SEL.

Instead, IMES resorts to misleading overgeneralizations (Opp'n at 4-5) and conclusory attorney argument (Opp'n at 5) relying on just some of the words of the statute -- "respecting the

---

[2] Instead, IMES repeatedly explained that the gravamen of its action is based on the contents of a still-pending patent application. *See* Opp'n at 8 ("to determine IMES' claim [of injurious falsehood], the Court will need to determine…whether… Tsutsui is the inventor of the subject matter claimed **in the Tsutsui '843 patent application**"); Opp'n at 9 ("Plaintiff's unfair competition claim turns on the validity and enforceability of the patent **that SEL is seeking**"); Compl. ¶ 1; Am. Compl. ¶ 1 (emphases added).

3

patent or rights thereunder." Although unnecessary due to IMES' concession, IMES' assertions

are easily dispatched. First, IMES argues that any case "alleging that plaintiff owns the patent

rights alleged by the defendant falls within section 293" and provides a partial quotation of the

*National Patent Development* case for support. Opp'n at 4. However, a review of the full text

shows that the holding only supports SEL's reading of the statute:

> The statutory language broadly authorizes the assertion of jurisdiction over a
> nonresident owner of a U.S. patent in cases "respecting the patent *or rights*
> *thereunder.*" 35 U.S.C. § 293. A suit over patent ownership surely respects or
> affects the rights under a patent: if one does not own a patent, one certainly lacks
> the rights of a patentee.

*Nat'l Patent Dev.*, 877 F.2d at 1007 (emphasis in original). As seen, the Court of Appeals is not

discussing the scope of the term "patentee" in section 293 but rather the phrase "or rights

thereunder;" the case does not expand the reach of the statute by permitting jurisdiction over

cases not involving an issued patent.[3] It is clear even in this discussion of the statute that the

Court presupposes the existence of an issued U.S. patent when it expressly limits the assertion of

jurisdiction under section 293 to "a nonresident **owner of a U.S. patent**" (*i.e.*, a patentee) and

discusses the "rights of a **patentee**." *Id.*; *see also Purdue Research*, 332 F. Supp. 2d at 70 ("The

bare fact that defendant is a **nonresident patent owner**…").

Because the language of the statute cannot support IMES, it turns to its purported

"rationale" of the statute, referring to principles of "purposeful availment." Opp'n at 5. This

argument also fails. First, it flatly ignores the plain language of section 293, which is limited to

---

[3] Indeed, unlike here, in *Nat'l Patent Dev.*, the court was considering jurisdiction under claims respecting an ISSUED patent. 877 F.2d at 1004 (noting that patent at issue was originally granted in 1972 and was reissued as two reissue patents in 1985—more than a year before suit was filed); *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 332 F. Supp. 2d 63, 65 (D.D.C. 2004) (noting that subject patents were awarded in 1994 and 1995—more than six years before suit was filed).

nonresident patentees.[4]  Second, it ignores the jurisprudence of both this Circuit and the Federal

Circuit limiting section 293 to nonresident patentees.  Indeed, in the very case cited by IMES in

its opposition papers, the Federal Circuit recognized that even under the "purposeful availment"

rubric, section 293 can only reach foreign parties that have been issued a patent by the Patent

Office.  *See Deprenyl Animal Health, Inc. v. University of Toronto Innovations Found.*, 297 F.3d

1343, 1353-54 (Fed. Cir. 2002).[5]  Notwithstanding the plain language of the statute, the Federal

Circuit further expounded on why the jurisdictional scope of section 293 logically would be

limited to foreign parties that have obtained a U.S. patent—namely, because the foreign party

can only then avail itself of a significant benefit of United States law:

> **By obtaining the '164 patent** and licensing it to DAHI in Kansas, UTIF
> purposefully availed itself of significant benefits of United States law.  **The '164
> patent affords UTIF the right to exclude others** from making, using, selling, or
> offering the claimed invention for sale in the United States.  *See* 35 U.S.C. §
> 154(a)(1).

*Id.* at 1344 (emphases added); *see also Nat'l Patent Dev.*, 877 F.2d at 1010 n.9 (noting that a

defendant avails itself of its rights under and benefits of United States law by seeking to enforce

the patents-at-issue against infringers).  IMES' attempt to twist the holdings of these cases to

support its improper reading of section 293 should be rejected.  Clearly, while the ownership of a

U.S. patent may be a factor considered in a broader "minimum contacts" analysis, the inverse is

---

[4] IMES' very statement "if you file an application for a patent under Section 293…" is nonsensical because section 293 does not apply to patent "applicants," only "patentees."  *See* 35 U.S.C. § 293.  Title 35 of United States Code distinctly uses the terms "applicant" and "patentee" differently when fashioning the jurisdiction of this Court— *compare id.* § 145 ("An **applicant** dissatisfied with the decision…may…have remedy by civil action against the Director in the United States District Court for the District of Columbia") *with id.* § 293 ("Every **patentee** not residing in the United States…")—and more generally throughout the statute.  *See, e.g., id.* § 135(a) ("…shall give notice of such declaration to the applicants, or **applicant** and **patentee**, as the case may be").  The term "applicant" is conspicuously absent from the language of section 293, and this Court should reject IMES' attempt to read it in.

[5] In the *Deprenyl Animal Health* case, the Federal Circuit found that there was sufficient minimum contacts to justify personal jurisdiction over the foreign patentee (UTIF) in the United States District Court for the District of Kansas based on UTIF's actual licensing activities in Kansas related to the negotiation and execution of a license between the plaintiff and UTIF.  *See Deprenyl Animal Health*, 297 F.3d at 1352.  Moreover, in that case, the foreign defendant UTIF already had been issued the U.S. Patent that was the subject of the action at the time the action was filed.  *See id.* at 1346.

not true—no such "minimum contacts" analysis is permitted in section 293; the only pertinent

question is whether SEL is a nonresident patentee, which it is not.  Moreover, in the present

action, IMES has not alleged any of the facts supporting jurisdiction in the *Deprenyl Animal*

*Health* case, such as the existence of a patent or licensing activities within the United States;

therefore, even if such a "minimum contacts" analysis was proper, IMES' search for jurisdiction

fails.

## II.    IMES Has Failed To Demonstrate This Court's Subject Matter Jurisdiction

### A.    IMES Cannot Establish A Patent "Right" And Related Tort Claim That "Necessarily Depends On Resolution Of A Substantial Question Of Federal Patent Law"

IMES fails to rebut SEL's demonstration that this Court lacks subject matter jurisdiction

over IMES' claims of unfair competition (original and amended) and injurious falsehood

pursuant to 28 U.S.C. § 1338(a).[6]  IMES' claims of unfair competition and injurious falsehood—

which are based on allegations of misappropriation of an ***idea*** and subsequent filing of a patent

***application*** based on that idea—do not meet the *Christianson* conditions for federal question

subject matter jurisdiction for at least two reasons.  *See Christianson v. Colt Indus. Operating*

*Corp.*, 486 U.S. 800, 808-09 (1988).

First, because there is no patent involved in this case, IMES cannot allege that there is

any patent "right, title, or interest" that will be affected by a construction of federal patent law.

*See id.*  Second, because IMES' unfair competition and injurious falsehood tort claims were

neither "create[d]" by federal patent law nor "depend[] on resolution of a substantial question of

federal patent law," "patent law is not a necessary element of one of the well-pleaded claims"

---

[6] Recognizing the futility of its allegations of subject matter diversity jurisdiction pursuant to 28 U.S.C. § 1332, IMES has dropped it from its amended complaint—thus, IMES concedes that no such subject matter jurisdiction exists.  *Compare* Original Compl. ¶ 4 *with* Am. Compl. ¶¶ 4-10; *see also* SEL Motion at 10-11.  Instead, IMES added the Paris Convention as an equally futile, alternate basis for subject matter jurisdiction—a contention SEL refutes separately below.

and jurisdiction under § 1338(a) is lacking.  *Id.* at 809.  IMES does not rebut either of these points.  Indeed, under the facts plead by IMES, it is situated just as the plaintiffs in the *Uroplasty* and *Murray* cases[7] were, and the courts in each of those cases failed to accept subject matter jurisdiction, which may be one reason why IMES completely avoids them in its opposition.

IMES' effort to distinguish *Board of Regents, The University of Texas System v. Nippon Telephone & Telegraph Corp.*, 414 F.3d 1358 (Fed. Cir. 2005), comes up short.  *See* Opp'n at 9; SEL Motion at 14-15.  IMES argues that, because the "plaintiff[8] claimed jurisdiction under Section 1338(a) based only on its claim for tortuous [*sic*] interference with prospective advantage," the analysis in *Board of Regents* "does not apply here."  Opp'n at 9.  However, while the analysis in the case was directed to the tortious interference claim, the jurisdictional questions regarding intersection of torts with patent law are the same as those presented here.  *Id.* at 1362.  In *Board of Regents*, to justify the removal of the case from state court, NTT argued that UT's tort claims raised a substantial question of patent law.  The district court agreed finding that UT's claim for tortious interference "required UT to 'show that the '382 patent overlaps the subject matter of NTT's Japanese patent'" which "is a substantial question of federal law."  *Id.* at 1361.  To support this finding, the district court cited, *inter alia*, the *Hunter Douglas* case.  *Id.*

In the Federal Circuit, NTT asserted that section 1338(a) subject matter jurisdiction was justified because UT would have to show that it is the ***rightful inventor*** of the claimed invention (LiFePO$_4$) and ***owner*** of the '382 patent and that the '382 patent is ***valid***" to bring its tortious interference claim, and, accordingly, it argued, a substantial question of U.S. patent law existed.

---

[7] *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001); *Murray v. Gemplus Int'l, S.A.*, No. Civ. A. 02-6265, 2002 WL 32107942 at *3-5 (E.D. Pa. Oct. 29, 2002)

[8] IMES misidentifies the parties in this case.  The University of Texas originally filed suit against NTT in state court.  *Bd. of Regents*, 414 F.3d at 1360.  Later, NTT removed the case to the U.S. District Court for the Western District of Texas over the objections of the University.  *Id.* at 1361.  NTT then sought to appeal a matter to the Federal Circuit, which the court rejected for lack of subject matter jurisdiction.  *Id.*

*Id.* at 1362-63. IMES makes the same argument here. Specifically, according to IMES, jurisdiction is proper because this Court needs to resolve whether Dr. Tsutsui was the **rightful inventor** of the present OLED invention and whether SEL is the **owner** of a **valid** patent that may mature from the '843 application to resolve the unfair competition and injurious falsehood claims. Opp'n at 7-9.

The Federal Circuit rejected NTT's assertion reversing the district court. The Federal Circuit held that "the district court erred in holding that it had jurisdiction to hear this case pursuant to 28 U.S.C. § 1338(a)" and transferred appeal of *all* claims at issue for lack of subject matter jurisdiction, including unfair competition and other torts centering on an alleged misappropriation of ideas and subsequent patenting activities. *Bd. of Regents*, 414 F.3d at 1360, 1365-66. Indeed, the Federal Circuit expressly rejected the contention made then by NTT and now by IMES:

> NTT correctly asserts that this court has held that issues of inventorship, infringement, validity and enforceability present sufficiently substantial questions for patent law to support jurisdiction under Section 1338(a). **NTT is incorrect, however, in asserting that such issues are raised by Plaintiff's claim**….This is so primarily because the patent law issues identified by NTT are not essential to the resolution of Plaintiff's claim. … Similarly, a determination of the true inventor of LiFePO$_4$ may give rise to future claims regarding the validity of the '382 patent, but the presence of *a possible question of inventorship does not convert the state law action into one arising under the patent laws*.

*Id.* at 1363 (citations omitted).

Similarly, the alleged patent law issues identified here by IMES are not essential to the resolution of IMES' claims of unfair competition and injurious falsehood.[9] Indeed, the Federal

---

[9] As noted in SEL's motion to dismiss, because IMES' tort claims involve pending patent applications, IMES finds itself caught between a subject matter jurisdiction Scylla and Charybdis. If the alleged patent law issues raised by IMES' tort claims are not essential to their resolution, then there is no subject matter jurisdiction under 1338(a) and the claims must be dismissed for lack of jurisdiction. However, if IMES' tort claims do turn on the alleged patent law issues identified by IMES (namely inventorship and issues—such as ownership, enforceability, and validity— flowing directly therefrom), then the claims necessarily turn on a determination of priority of invention between

Circuit explained that state-law misappropriation claims based on allegations of misconduct comprising "improperly claiming ownership of [another's] proprietary technology by filing [one's own] patent application" is an "independent tort" that does not depend on the resolution of a substantial question of patent law and cannot support subject matter jurisdiction under section 1338(a). *Id.* at 1364. The holding of this case clearly dictates the dismissal of IMES' tort claims for lack of subject matter jurisdiction, and the Court should resist IMES' invitation to error.

Adding to the growing list of cases rejecting IMES' flawed theory of jurisdiction under section 1338 (*see, e.g.,* SEL Mot. at 15 n.8), the Federal Circuit recently decided *Thompson v. Microsoft Corp.*, No. 06-1073, 2006 WL 3590797, at *1 (Fed. Cir. Dec. 8, 2006). Although not raised by the parties there, the Court sua sponte requested oral argument on section 1338 jurisdiction regarding plaintiff's unjust enrichment claim and, applying *Christianson*, decided such jurisdiction was lacking:

> Although Thompson's complaint alleges that Microsoft filed a patent application for intellectual property that Thompson invented, ***such a fact—even if true—is not a necessary element of Thompson's claim*** …Because ***inventorship is not necessary to the success of Thompson's unjust enrichment claim, and because "a claim supported by alternative theories in the complaint may not form the basis for [section] 1338(a) jurisdiction unless patent law is essential to each of those theories***," *Christianson*, 486 U.S. at 810, Thompson's well-pleaded complaint does not establish that the right to relief necessarily depends on resolution of a substantial question of federal patent law. Thus, the district court's jurisdiction does not "aris[e] under" section 1338.

*Id.* at *6-7 (emphasis added). Likewise, as shown above, the elements of IMES' claims of unfair competition and injurious falsehood stand independent of any substantial question of federal patent law regarding SEL's filing of the '843 application.

---

pending patent applications, which is solely the jurisdiction of the Patent Office, and the claims must be dismissed for lack of jurisdiction. *See* Section III, *infra.* The case is dismissed either way.

Rather than address the great body of law identified by SEL that has rejected IMES' attempts to extend subject matter jurisdiction under section 1338(a) to its alleged tort claims, IMES tries and fails to manufacture support from a Federal Circuit case inapposite to the present action—namely, *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). Opp'n at 6-8. IMES vastly overstates the holding of *Hunter Douglas* claiming that "a claim of injurious falsehood raises a substantial question under the patent laws when the injurious falsehood identified is that the defendant falsely claimed its exclusive right to an invention in procuring a patent." *Id.* at 6.

A review of the actual facts and language of the case reveals that the holding is much more limited than proffered by IMES—it only applies to alleged falsehoods made in the marketplace about an issued patent—and thus is of no help to IMES. First, the alleged injurious falsehood was not "that defendant falsely claimed its exclusive right to ***an invention in procuring a patent***" [Opp'n at 6], it was that defendants "claimed to have an exclusive license to sell motorized shades that are covered by ***the Harmonic patents***" and "'by claiming to hold exclusive rights' under the Harmonic patents, 'acted with willful and wanton disregard' because they 'knew or should have known' that claims of the Harmonic patents were invalid and unenforceable." *Hunter Douglas*, 153 F.3d at 1322. This is an important distinction, because the alleged falsehood was about rights to claims of an issued patent, not a pending patent application as suggested by IMES.

Second, IMES' characterization is also too broad because the alleged falsehood was not made to the Patent Office "in procuring a patent" [Opp'n at 6], it was made in the marketplace to "one or more purchasers of motorized window shades…covered by the Harmonic patents." *Id.*

at 1322; *see also id.* at 1321 ("In this appeal, we consider…state law causes of action prohibiting tortious activities *in the marketplace*").  Third, the Court's holding that "the questions of federal patent law—validity and unenforceability—are 'substantial' enough to convey 1338(a) jurisdiction" [*id.* at 1329], becomes nonsensical when applied to the present facts as IMES suggests.  Patent applications are not "valid" or "enforceable" like issued patents may be; thus, applications cannot raise such "questions of federal patent law."[10]

IMES has failed to present a *single* argument or case to rebut SEL's showing that section 1338(a) jurisdiction over IMES' state law tort claims is lacking in this action, as seen by its silence toward *Christianson* and mischaracterization of *Hunter Douglas*.  Section 1338 proscribes jurisdiction only where there is a patent "right" and related tort claims that "necessarily depend on resolution of a substantial question of federal patent law."  Because IMES can not meet these conditions, its Complaint must be dismissed.  *See* Fed. R. Civ. P. 12(h)(3) ("whenever it appears…that the court lacks jurisdiction of subject matter, the court shall dismiss the action.").

**B.    The Paris Convention Cannot Rescue The Fatal Deficiencies Of IMES' Complaint Because The 19th Century Treaty Is Not A Basis For A Federal Unfair Competition Claim Or Jurisdiction Before This Court**

In a effort to "clarify" its claims, IMES has amended its Complaint to allege "Unfair Competition under Paris Convention"—specifically Articles 10*bis* and 10*ter*—as a new Count

---

[10] The other two cases cited by IMES in support of its position are equally unavailing.  *Helfgott & Karas, P.C. v. Dickenson*, 209 F.3d 1328 (Fed. Cir. 2000) stands for the unremarkable proposition that a federal court has Section 1338 jurisdiction over a patent applicant's claim, under the federal Administrative Procedures Act, that the Patent Office Commissioner had failed to properly execute *federal patent law*.  *Id.* at 1333-35.  *Conroy v. Fresh Del Monte Produce Inc.*, 325 F. Supp. 2d 1049 (N.D. Cal. 2004) is actually *contrary* to IMES' position.  In *Conroy*, the Northern District of California (not the Federal Circuit, as IMES incorrectly states in its Opposition at 8) held it did *not* have Section 1338 jurisdiction over state law claims including unfair competition because "the harm alleged did not arise out of the validity or invalidity of the '863 patent….Plaintiff would be entitled to relief on each and every one of her causes of action without resolution of patent law issues."  *Id.* at 1056.

11

and basis for jurisdiction.[11]  Am. Compl. ¶¶ 6-9 & 109-115.  While the Paris Convention for the Protection of Industrial Property—a multilateral treaty opened for signature on March 20, 1883—is no doubt a landmark development in the annals of international intellectual property law, its alleged import to the present action collapses under IMES' specious efforts to use it to establish subject matter jurisdiction or support its flawed unfair competition claim against SEL.

### 1. The Paris Convention Is Not Self-Executing And Yields No Cognizable Basis For IMES' Unfair Competition Claim

More than 175 years ago, the Supreme Court recognized there are two types of treaties binding on the Unites States—"self-executing," which are the equivalent of legislation and require no Act of Congress to implement, and "non-self-executing," which have no domestic force of law and may only be implemented by a specific Act of Congress.  *See, e.g., Foster v. Neilson*, 27 U.S. 253 (1829).  Both this Court and the Court of Appeals for the District of Columbia have held the Paris Convention is ***not*** self-executing and requires a further Act of Congress to be implemented.  *See, e.g., Scimed Life Sys., Inc. v. Medtronic Vascular, Inc.*, No. Civ. 01-2015, 2006 WL 1102834, at *6 n.6 (D.D.C. 2006) ("The Paris Convention is not self-executing and, therefore, the U.S. was free to implement the Paris Convention in the manner and form that Congress deemed appropriate."); *Rousseau v. Brown*, 21 App. D.C. 73, XX (D.C. Cir. 1903) (holding the Paris Convention to be "not self-executing.  It requires the action of Congress to give it full force and effect.").[12]

---

[11] SEL "should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1476 at 558 (2d Ed.1990).

[12] These findings are consistent with those of other courts that have decided the issue during the Paris Convention's 123-year pendency.  *See, e.g., In re Rath*, 402 F.3d 1207, 1209-10 (Fed. Cir. 2005) (holding Paris Convention not self-executing); *Int'l Café, S.A.L. v. Hard Rock Café Int'l, Inc.*, 252 F.3d 1274, 1277 n.5 (11th Cir. 2001) (same); *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1298-99 (3d Cir. 1979) (same); *Ortman v. Stanray Corp.*, 371 F.2d 154, 157 (7th Cir. 1967) (same); *see also* S. Rep. No. 87-1019 (1961), *reprinted in* 1961

Ignoring this basic legal tenet, IMES simply forges ahead with its ill-founded allegation of a new "unfair competition" cause of action under the Paris Convention. However, it is well-established that, in the United States, the Paris Convention alone does not create a cause of action for unfair competition and the Paris Convention's unfair competition notions—expressed in Articles 10*bis* and 10*ter*—have not been implemented in such a way as to provide IMES the private Federal cause of action it so hopelessly seeks. For example, in *Gruppo Gigante SA De CV v. Dallo & Co., Inc.*, the Ninth Circuit affirmed the lower court's rejection of a plaintiff's effort to claim unfair competition under the Paris Convention:

> Article 10*bis* itself does not create additional substantive rights….[T]he Paris Convention was not intended to define the substantive law in the area of 'unfair competition' of the signatory 'countries….Because **the Paris Convention creates neither a federal cause of action nor additional substantive rights**, the district court properly dismissed Grupo Gigante's Paris Convention claims."

391 F.3d 1088, 1099-1100 (9th Cir. 2004) (citations omitted). Similar attempts by litigants like IMES to invoke an unfair competition claim under the Paris Convention are routinely dismissed.[13] Just like IMES' original "Unfair Competition" claim, its so-called "clarified" "Unfair Competition under Paris Convention" claim should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Indeed, IMES' "clarified" claim suffers from even more deficiencies than its "original" flawed unfair competition claim,

---

U.S.C.C.A.N. 3044, 3045 ("the provisions of the Convention of Paris are not self-executing, and legislation is therefore needed to carry into effect any provision not already in our present law."); 19 Op. Att'y Gen. 273, 279 (1889) (same).

[13] *See, e.g., Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 484 (2d Cir. 2005) (affirming dismissal because "Cubatabaco cannot maintain a claim for unfair competition under Article 10*bis* of the Paris Convention….*[T]he Paris Convention …does not define the substantive law of unfair competition*") (citations omitted); *Int'l Café, S.A.L. v. Hard Rock Café Int'l, Inc.*, 252 F.3d 1274, 1277-78 (11th Cir. 2001) (affirming dismissal of Paris Convention claim because "*the Paris Convention…creates no new cause of action for unfair competition*"); *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1298-99 (3d Cir. 1979) ("Finding **no indication that a private right of action was conferred by the treat[y]**, we conclude that the district court did not err is dismissing" plaintiff's Paris Convention claim").

13

because IMES "*has no claim to a nonexistent federal cause of action for unfair competition*."

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 907-8 (9th Cir. 2002) (affirming summary

judgment denial of Paris Convention Article 10*bis* claim).

> **2.    The Paris Convention Does Not Provide IMES With Subject Matter Jurisdiction Missing From Its Unfair Competition Claims**

In its Amended Complaint, IMES alleges that this Court has subject matter jurisdiction

over its unfair competition claims under 28 U.S.C. §§ 1331 and 1338 and the Paris Convention.

Am. Compl. ¶ 6.  Because the Paris Convention does not provide an independent source of

subject matter jurisdiction for unfair competition claims, IMES' recitation of section 1331 and

Paris Convention is futile and cannot prevent dismissal of IMES' claims pursuant to Rule

12(b)(1).

IMES broadly asserts that the "adoption of an international treaty such as the Paris

Convention constitutes an Act of Congress" and thus provides IMES with subject matter

jurisdiction for its new unfair competition claim.  Am. Compl. ¶ 9.  This broad statement clearly

is not correct.  Indeed, courts that have examined this precise question have found that the Paris

Convention, as specifically incorporated by the United States Congress, creates no new cause of

action for unfair competition and requires the dismissal of any such action.  *Int'l Café, S.A.L. v.

Hard Rock Café Int'l, Inc.*, 252 F.3d 1274, 1278-79 (11th Cir. 2001); *see also Ortman v. Stanray

Corp.*, 371 F.2d 154, 156-57 (7th Cir. 1967) ("The [Paris] Convention is not self-executing.  The

ratification of the treaty by the President by and with the advice and consent of the Senate, and

without any further action by Congress, is not sufficient to make the provisions of the

Convention a basis for federal jurisdiction."); *Mannington Mills, Inc. v. Congoleum Corp.*, 595

F.2d 1287, 1298-99 (3d Cir. 1979) (holding there was "no…private right of action" under Paris

Convention and dismissing for lack of jurisdiction).

IMES cites only to a single case to support its novel jurisdiction argument—*Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399, 2004 WL 602295 (S.D.N.Y. 2004). The district court there, however, actually dismissed plaintiff Cubatabaco's Paris Convention claim, citing *International Café* and concluding: "Because a United States citizen could not file a distinct Paris Convention claim alleging unfair competition, neither can Cubatabaco." *Id.* at *28. The Second Circuit affirmed: "Cubatabaco cannot maintain a claim for unfair competition under Article 10*bis* of the Paris Convention….[T]he Paris Convention …does not define the substantive law of unfair competition." *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 484 (2nd Cir. 2005) (citations omitted).

IMES' struggle to find subject matter jurisdiction fails again, and its Paris Convention claim should be dismissed pursuant to Rule 12(b)(1).

**C.    Because IMES Also Concedes That The "Real Question At Issue" In Its Injurious Falsehood And Unfair Competition Claims Is Whether SEL Or IMES Has Priority Of Invention, If IMES' Claims Are Found To Arise Under The Patent Laws, They Fail For Lack Of Subject Matter Jurisdiction**

In its Motion, SEL demonstrated that, if IMES' claims are found to arise under the patent laws, the "real question at issue" underlying IMES' so-called injurious falsehood and unfair competition claims was whether SEL or IMES has priority of invention in the subject matter alleged to be common to the Tsutsui '843 patent application and the Kido '952 patent application. SEL Mot. at 17-18; *see, e.g.*, Compl. ¶ 114; Am. Compl. ¶ 127. Rather than disputing this, IMES repeatedly admits as such in its responsive papers. Opp'n at 7-8; *see also id.* at 8 ("Plaintiff's unfair competition claim turns on the validity and enforceability of the patent that SEL is seeking.")

As seen, IMES' injurious falsehood and unfair competition claims (including the "Unfair Competition under Paris Convention" claim added to the Amended Complaint) turn on the

question of inventorship of the common subject matter in the Tsutsui and Kido patent applications, which is really a determination of priority of invention (*i.e.*, an interference proceeding) that is outside the jurisdiction of this Court.  *Airport Surface Tech., L.L.C. v. FieldTurf, Inc.*, 268 F. Supp. 2d 999, 1002 (N.D. Ill. 2003).

IMES does not address SEL's "real question at issue" point, but instead simply states the "claims alleged are not at all equivalent to an interference proceeding" because IMES is also seeking damages and constructive trust remedies.  Opp'n at 44.  However, neither the remedies sought by IMES nor the terms used by IMES to describe its alleged claims negate the fact that the "real question at issue" underlying the injurious falsehood and unfair competition claims is a determination of priority of invention involving solely pending patent applications, which is the exclusive jurisdiction of the Patent Office.  *See* 35 U.S.C. § 135(a); *Airport Surface Tech.*, 268 F. Supp. 2d at 1002.  Indeed, such arguments by IMES ring hollow in light of its earlier admissions.  As noted previously, IMES has recognized that the proper forum for its grievance is the Patent Office, because it has already requested an interference proceeding between the Tsutsui and Kido patent applications at issue here.  SEL Mot. at 6.[14]

## III.  IMES Failed To Rebut SEL's Demonstration That IMES Lacks Standing To Bring The Present Action

IMES' startling admission that "this case could become effectively moot" pending Patent Office adjudication of the Tsutsui '843 application (Opp'n at 14) highlights IMES' failure to meet its "burden…clearly to allege facts demonstrating" all three prongs of Article III standing.

---

[14] IMES also fails to meaningfully distinguish the two cases cited by SEL.  While IMES attempts to distinguish the facts of *Consolidated World Housewares* case, it does not and cannot question the basic holding that if a party requests a determination of the question of priority of inventions that includes patent applications, such a proceeding must be performed in the first instance by the Patent Office.  *Consol. World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 2005).  Next, IMES unsuccessfully tries to find solace in the fact that certain claims for misappropriation of trade secrets, Lanham Act violations, state deceptive trade practice act violations and breach of contract were not dismissed in the *Airport Surface Technologies* case.  Opp'n at 45.  However, the defendant in that case simply did not move to dismiss any of these claims.  *Airport Surface Tech.*, 268 F. Supp. 2d at 1001.

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).[15]  IMES presents no concrete, particularized, or imminent harm for standing, a shortcoming that goes hand in hand with its absence of special damages in its injurious falsehood claim.  Abstract assertions of "cloud over title" and "diminution of value" of "a possible future patent not then in existence" do not meet the standard:

> "Patent rights are created only upon the formal issuance of the patent; thus, ***disputes concerning patent validity and infringement are necessarily hypothetical before patent issuance***."

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 482-483 (Fed. Cir. 1996) ("GAF"). [16]  *GAF* was not limited to infringement related to a pending application—validity was at issue there, as IMES insists it is here: "Plaintiff's unfair competition claim turns on the validity and unenforceability of the patent that SEL is seeking**.**" Opp'n at 9.[17]

Nor has IMES established standing's second and third prongs, traceability and redressability.  This Court could not redress IMES' claim by "clearing title to the Invention"— there is no title to clear—*establishing* title remains squarely in the realm of the Patent Office, including that agency's potential determination of priority in an interference proceeding.

## IV.    IMES' Complaint Requires Dismissal Because It Fails To State Any Claims Upon Which Relief Can Be Granted Under Fed. R. Civ. P. 12(b)(6)

### A.    IMES' Unfair Competition Claims Must Be Dismissed

---

[15] *Overruled on other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004).

[16] Nor can the issuance of a patent from the '843 application cure IMES standing deficiencies—"justiciability must be judged as of the time of filing, not as of some indeterminate future date when the court might reach the merits and the patent has issue." *GAF*, 90 F.3d at 483.

[17] *Struthers Scientific & International Corp. v. General Foods Corp.*, cited by IMES for the proposition that a plaintiff does not necessarily "lack[] standing until [a] patent application is issued" (Opp'n at 11) is entirely contrary to its position—plaintiff Struthers *waited to file its complaint until the day the Patent Office issued the disputed patent*.  290 F. Supp. 122, 125 (S.D. Tex. 1968).  *Chou v. University of Chicago* is no more availing to IMES—the court there held a putative inventor had standing to bring an action under 35 U.S.C. § 256 related to an *issued patent*. 254 F.3d 1347, 1356-60 (Fed. Cir. 2001).

### 1.     IMES' Failure To Allege Any Wrongdoing By SEL Related To A Recognized Right Precludes Its Claim Of Unfair Competition

IMES makes Herculean efforts to stretch both its allegations against SEL and the law of unfair competition to create cognizable claims against SEL. Opp'n at 15-27. In its Motion to Dismiss, SEL demonstrated that while the tort of unfair competition may be broad generally, the scope of the tort is much more limited where, as here, there is an intangible "idea" at issue. Mot. at 23-25. In order to plead unfair competition regarding an intangible idea, IMES must establish an "independent wrongdoing" by SEL—such as fraud, breach of confidence, or infringement— related to a "recognized right" in IMES' intangible idea. *See id.*; Dobbs, *The Law of Torts* § 456.

IMES states that the "independent wrongdoing" in this case is that "Tsutsui is charged with deliberately, intentionally, and in bad faith, engaging in the wrongful conduct of goading Kido into refuting Tsutsui's implications that Kido had not been truthful." Opp'n at 20. Even assuming *arguendo* the allegations in the Complaint (and Amended Complaint) actually demonstrate such "goading," this is not an "independent wrongdoing" recognized by the law. *See, e.g.*, Dobbs, The Law of Torts § 456; SEL Mot. at 25-27. SEL also demonstrated that the allegations as pleaded in the Complaint cannot establish any type of "independent wrongdoing." Mot. at 26-27. In response, IMES appears to argue that the timing of Tsutsui's questions to Kido (*i.e.*, "after the presentation" [Opp'n at 20]) somehow transforms an interaction that one would expect to see at any academic conference into an "independent wrongdoing" that supports an unfair competition claim regarding misappropriation of intangible ideas.[18] This argument is without merit.

---

[18] Despite IMES' efforts to cast the most ominous light upon the events of the European Conference in its memoranda, the allegations in the Complaint (and reasonable inferences therefrom) simply cannot support IMES' unfair competition claims. The allegations indicate that Dr. Tsutsui merely "questioned" [Am. Compl. ¶ 41], "discussed" [*id.* ¶ 42], and "pressed" [*id.* ¶¶ 45-47] about information discussed by Kido during the "question and answer" session [*id.* at 42]. The allegations also indicate that all of this occurred publicly. *See id.* ¶ 43 ("After

IMES' reliance on the minority progeny of *International News Service v. Associated Press*, 248 U.S. 215 (1918) ("*INS*") to support its deficient claims of unfair competition is similarly unavailing. *See* Opp'n at 21-23. As shown in SEL's motion, the *INS* decision has, "[t]o a very large extent…been superseded." *See* Mot. at 28-29; Dobbs, *The Law of Torts* § 456. Also, in each of these cases, the courts relied upon a "high degree of flexibility" that is not allowed here for IMES' unfair competition claims regarding intangible ideas. *See, e.g.*, *Delmarva Sash & Door Co. v. Andersen Windows, Inc.*, 218 F. Supp. 2d 729, 733 (D. Md. 2002); *Roy Exp. Co. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982). Indeed, IMES' repeated resort to behavior such as name-calling (*e.g.*, labeling SEL as "disgraceful" and "unethical" [Opp'n at 18]) rather than addressing the issues raised by SEL indicates that the allegations in IMES' Complaint comprise no more than a "mischievous application" of the claim of unfair competition as warned against by the Second Circuit. *Roy Exp. Co.*, 672 F.2d at 1105.

Nor has IMES shown it has a "recognized right" in its alleged idea. Neither SEL nor IMES has received a patent from the applications at issue. Moreover, while IMES persists in trying to label Dr. Kido's alleged disclosure to Dr. Tsutsui as a "trade secret" or "confidential proprietary" information, the fact remains that any secrecy or confidentiality there may have been was destroyed by Dr. Kido when "in the excitement to dispel the skepticism of his peers" he allegedly "answered Tsutsui's questions." Am. Compl. ¶ 84; *see, e.g., Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 8-9 (D.D.C. 2004) ("information must be secret" for protection as a trade secret under D.C. Code § 36-401; "[T]he hallmark of a trade secret is not its novelty but its secrecy.").

---

Kido's presentation, Kido, Tsutsui, **and others**…). Nor do IMES' recent re-characterization of SEL's alleged actions as "unethical commercial conduct" bring it any closer to stating a federally actionable claim for unfair competition. *See, e.g.*, Opp'n at 15. IMES presumably is trying to extract this language from Article 10*bis* of the Paris Convention of 1883. As shown above, however, the Paris Convention yields no federal cause of action.

## 2.    To The Extent IMES Has Alleged Cognizable Claims Of Unfair Competition, The Three-Year Statute Of Limitations Precludes Them

IMES fails to rebut SEL's showing that IMES' unfair competition claims are time barred by the statute of limitation.  IMES concedes three years is the applicable period of limitation for an unfair competition claim in the District of Columbia, but attempts to extend this period by misapplying the "discovery rule" and "continuing tort" doctrines in direct contravention of the language of Section 12-301 of the District of Columbia Official Code.

In support of its flawed "discovery rule" argument, IMES cites to a single distinguishable District of Columbia case—*Lee v. Wolfson*, 265 F. Supp. 2d 14 (D.D.C. 2003)—that examines the propriety of the "discovery rule" in product liability cases, not unfair competition cases, which, in any event, supports SEL not IMES.  This case confirms that the "discovery rule" is only a limited exception to the rule that "a cause of action accrues for the purposes of the statute of limitations at the time the injury occurs", *id.* at 17, and does not advocate the application of the rule beyond malpractice, latent disease, and product liability cases.  *Id.* at 18.  As alleged by IMES, it was injured by SEL's alleged misappropriation and application for patent.  Am. Compl. ¶¶ 80-108.  Thus, when applied to the facts of this case, the *Lee* case confirms that IMES accrued its right to maintain it unfair competition claims in November 2001 during the European Conference or on December 2, 2002, when the '843 patent application was filed at the Patent Office.[19]  Because Plaintiff filed its original Complaint on July 7, 2006, it is time barred.[20]

---

[19] Many courts have declined to apply the discovery rule to tort claims, including unfair competition, due to "strong public policies favoring finality in commercial transactions, protecting a defendant from stale claims, and requiring a plaintiff to diligently pursue his claim."  *See, e.g., J & M Sidewinders, Inc. v. Valeo Sylvania, L.L.C.*, No. Civ. 05-40094, 2005 WL 1801987 (E.D. Mich. July 28, 2005) (holding discovery rule not applicable, and thus barring claims for unjust enrichment, misappropriation, conversion, and unfair competition related to defendants alleged use of plaintiff's patented vehicle headlight system).

[20] Despite IMES' averments to the contrary, *Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, and *Mopex, Inc. v. Am. Stock Exch., LLC* do not turn on publication or discovery.  297 F. Supp. 2d 463, 491 (N.D.N.Y. 2003); No. 02 Civ. 1656, 2002 U.S. Dist. LEXIS 3532, at * 40-42 (S.D.N.Y. Mar. 4, 2002).  The courts in both cases determined the

Similarly, the "continuous tort" doctrine cited by IMES is a rare exception that does not apply to IMES' unfair competition claim. *See, e.g., Shatterproof Glass Corp. v. Guardian Glass Co.*, 322 F. Supp. 854 (E.D. Mich. 1970) *aff'd* 462 F.2d 1115 (6th Cir. 1972), *cert. denied* 409 U.S. 1039 (1972) ("[T]he ***misappropriation of trade secrets is not a continuing offense***. The wrong occurs at the time of the improper acquisition…The cause of action arises but once….[T]he Complaint is clearly barred by the statute of limitations."). Consequently, accepting IMES' standard, "no reasonable person could disagree on the date on which the cause of action accrued" [Opp'n at 28]—November 2001 and December 4, 2002, when SEL had allegedly misappropriated and used IMES' property before the Patent Office—IMES has failed to present any relevant precedent to the contrary and its unfair competition claims should be dismissed. *See Lee v. Wolfson*. 265 F. Supp. 2d at 18.

## B.    IMES' Injurious Falsehood Claim Must Be Dismissed

### 1.    IMES Concedes Its Failure To Allege Any Falsehoods That "Concern Plaintiffs' Property Or Product"

IMES' effectively concedes it cannot meet the "concerning plaintiff's property or product" prong of the tort of injurious falsehood. *See Art Metal-U.S.A.*, 753 F.2d 1151, 1155 n.6 (D.C. Cir. 1985). As explained by SEL in its motion to dismiss, the alleged "injurious falsehood" in this case—that Tsutsui is the inventor of the subject matter in SEL's '843 patent application—is directed to and concerns only SEL and SEL's application. *See* Mot. at 31, 33; Am. Compl. ¶ 119. Statements concerning one's own property cannot support an injurious falsehood claim. Mot. at 33-34. IMES does not dispute this; rather, IMES argues that the cases cited by SEL "shed[] no light on SEL's argument" because the cases "involved statements expressly about the products of someone other than the plaintiff." Opp'n at 36-37. But, that is

---

statute of limitations commenced upon the defendants' misappropriation and subsequent "exploitation" of plaintiff's property before a government body. *Id.*

precisely the same situation here—the statement at issue is about SEL's application and not IMES (the plaintiff).  Indeed, IMES has failed to cite a single case supporting its contention that a defendant's statement to the Patent Office in its own patent application constitutes an injurious falsehood.  Thus, the alleged falsehood at issue does not meet the requisite "concerning plaintiff's property or product" prong and IMES' claim must be dismissed under Rule 12(b)(6).

## 2.    IMES Failed To Properly Allege "Special Damages"

Conceding that its original Complaint failed to meet the heightened pleading standards for injurious falsehood, IMES added two additional paragraphs to its Amended Complaint (paragraphs 75 & 76) in a last-ditch attempt to rescue its injurious falsehood claim.  These two additional paragraphs are not sufficient to allege special damages and do not address any of the deficiencies in the original Complaint.[21]

Injurious falsehood is one of a handful of torts that are "disfavored" because it seeks recovery for "special damages" that are "not the necessary or usual consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstances of the case"—thus special damages "require the pleading of ***considerable detail***" under Rule 9(g). 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1310 (2006).[22] IMES' Opposition gives lip service to Rule 9(g)'s heightened pleading standard for such torts, yet its Amended Complaint—with its vague connotations of "diminution in value" due to a "cloud over…ownership"—still falls short.  *See, e.g.,* Am. Compl. at ¶ 73.

---

[21] IMES' attempt to remedy its complaint by adding attorneys fees as a form of "special damages" is also to no avail.  *See, e.g.,* Am. Compl. ¶ 75, IMES Opp'n at 33, 36.  Attorneys fees may be a form of special damages, but only those that have been actually incurred to correct the falsehood—not those associated with litigation seeking compensation related to the falsehood.  *See, e.g., Marseilles Hydro Power, LLC,* 2003 WL 259142, at *5.

[22] Contrary to IMES' misleading patchwork of quotes from Wright & Miller, the treatise clearly lays out a *heightened* standard—"None of the foregoing should be construed as suggesting that the federal courts have eliminated the requirement that special damages be pleaded with some degree of specificity."  Wright & Miller § 1311.

Far from bolstering its position, IMES' citation to *Schoen v. Washington Post* only highlights the deficiencies of its Complaint.  246 F.2d 670 (D.C. Cir. 1957).  There, the D.C. Circuit found sufficient specificity where the plaintiff Schoen had set forth his business' precise income in the year prior to the publication at issue ($39,255.58) and in the year following ($30,946.26), as well as the names of customers that allegedly withdrew their business due to the publication and facts linking the publication to the lost income and customers; "The complaint sets forth the ***precise*** nature of the losses as well as the way in which the special damages resulted from the alleged false publication."  *Id.* at 671-72.  As shown, IMES' allegations of damage look nothing like this.  Moreover, this is exactly the same standard the D.C. Circuit applied in *Browning v. Clinton*, discussed in SEL's Motion at 32.[23]

IMES' Complaint—both before and after amendment—is like Browning's, not Schoen's. *See* Am. Compl. ¶¶ 69-79; *see also Marseilles Hydro Power, LLC, v. Marseilles Land & Water Co.*, No. 00 CV 1164, 2003 WL 259142 (N.D. Ill. 2003) (dismissing in part slander of title claim based on vague assertions of "cloud over title.").

### 3. To The Extent IMES Has Alleged A Cognizable Claim Of Injurious Falsehood, The Statute Of Limitations Precludes It

Moreover, IMES has failed to rebut SEL's demonstration that, under the weight of District of Columbia and concurring nationwide authority, IMES' injurious falsehood claim is

---

[23] IMES' additional efforts to distinguish *Browning* fail. Opp'n at 35-36.  Both of IMES' characterization of Rule 9 and its claim that it "met the standard set forth by *Browning* by alleging the nature of the damages" (IMES Opp'n at 26) were specifically ***rejected*** in *Browning*:

> According to Browning, these allegations satisfy Rule 9(g) because they "notify the defendant as to the nature of the claimed damages."…We find no support for this proposition.  Indeed, it runs counter to the very case Browning cites, *Schoen v. Washington Post*

*Browning,* 292 F.3d at 246.  Finally, *Browning* is not at odds with Wright & Miller—each cites the other extensively.  *See e.g., Browning*, 292 F.3d at 245: Wright & Miller at §§ 1310, 1311.  IMES is conspicuously silent as to other cases cited by SEL.  *See, .e.g., Fowler v. Curtis Publ'g Co.*, 182 F.2d 377 (D.C. Cir. 1950); *Golden Palace, Inc. v. National Broadcasting Co.*, 386 F. Supp. 107, 109 (D.D.C.1974); *Whetstone Candy Co., Inc. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 82 n.5 (D.D.C. 2004).

23

barred by the statute of limitations. IMES has failed to present a single District of Columbia case

applying a three year limitation period to an injurious falsehood claim. IMES Opp'n at 37-43.

Moreover, its effort to distinguish *McBride v. Pizza Hut* falls flat. 658 A.2d 205, 207 (D.C.

1995). In *McBride*, the D.C. Court of Appeals noted the application of the one year period of

slander and libel claims to an injurious falsehood claim. *Id.* Such application is in accord with

the close relation of injurious falsehood to slander and libel,[24] as well as with the "great weight

of authority" nationwide—including numerous federal and state cases that have specifically

dismissed IMES' contention that the longer "injury to property" period applies:

> "Neither law nor reason demand that the tort of disparagement of property [a.k.a. injurious falsehood] should be governed by a longer period of limitations than disparagement of the reputation of the individual."

*Scott Paper Co. v. Fort Howard Paper Co.*, 343 F. Supp. 229, 233-35 (E.D. Wis. 1972) (holding

that "Wisconsin courts would follow the great weight of authority and we hold...the two year

statue of limitations on actions for libel and slander" applicable to trade libel cases, rather than

the six year "injury to property" period); *Lehigh Chem. Co. v. Celanese Corp. of Am.*, 278 F.

Supp 894, 898 (D. Md. 1968) (holding "one-year period of limitations...for libel and slander is

applicable not only to actions for personal defamation but also for actions charging

disparagement of property.")[25]

---

[24] There is no "disingenuous[ness]" in SEL's citation to *Art Metal-U.S.A., Inc. v. United States* on this point (IMES Opp'n at 39)—while the case's ultimate holding may be limited to Federal Tort Claims Act claims, the D.C. Circuit's observations about injurious falsehood are not: "Although distinctions exist **at common law** between actions for injurious falsehood and defamation, the torts have always been closely related...Moreover, changes in the law of defamation...have further minimized the **common law** distinction between the two torts." 753 F.2d 1151, 1155 (D.C. Cir. 1985) (citing *Acoustical Manufacturing Co. v. Audio Times, Inc.*, 3 Media L. Rep. 2057, 2064 (D.C. Super. Ct. 1977) ("The cause of action based upon 'injurious falsehood' is closely related to traditional defamation"). This Court has cited *Art-Metal U.S.A.* for this very proposition. *See, e.g., Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 82 n.5 (D.D.C. 2004); *Black v. Nat'l Football League Players Ass'n.*, 87 F. Supp. 2d 1, 7 n.5 (D.D.C. 2000).

[25] State courts have also broadly applied slander and libel periods to injurious falsehood claims. *See e.g., Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002) (barring commercial disparagement claim because "the [one year] statute of limitations for slander is the same **whether the slander involves property or**

Furthermore, IMES' contention that injurious falsehood is a "continuing tort" triggered over and over is, once again, not supported by a single D.C. case and is, once again, at odds with authority elsewhere noting a "reluctance to extend the [continuing tort] theory further…based on a strong judicial preference to adhere to the purposes and policies of the statute of limitation." *Flotech, Inc. v. E. I. DuPont de Nemours Co.*, 627 F. Supp. 358, 370-71 (D. Mass. 1985) (declining to apply continuing tort doctrine to product disparagement claim); *see also LaBarge v. City of Concordia*, 927 P.2d 487, 494 (Kan. App. 1996) ("We do not believe that a plaintiff can discover that a slander [of title] exists and then wait as long as he or she pleases…on the theory that the slander is continuous. The theory advanced by the plaintiffs in this case would extend the period of limitations for an indefinite and unforeseeable period.")

Thus IMES has failed to refute that the applicable one year statute of limitations began to run on IMES' injurious falsehood claim—to the extent it even has one—when SEL "published" its Tsutsui '843 application to the Patent Office on December 4, 2002, over three years before IMES filed its Complaint on July 7, 2006. Even the Patent Office's subsequent July 10, 2003 publication of the Tsutsui '843 application predates the IMES Complaint by over two years. IMES' injurious falsehood claim is time-barred.

## **CONCLUSION**

For at least the many reasons set forth in SEL's Motion to Dismiss and herein, SEL respectfully requests that this Court dismiss the Complaint and Amended Complaint filed by IMES.

---

*the property*"); *Montgomery v. Milam*, 910 S.W.2d 237, 240 (Ky. 1995) ("We conclude **the great weight of the authority** is that the [one year] statute of limitations applicable to libel and slander is equally applicable to actions for slander of title."); *LaBarge v. City of Concordia*, 927 P.2d 487, 493 (Kan. App. 1996) (adopting "*majority view*" that one year slander and libel period applies to slander of title actions); *Bonner v. Chicago Title Ins. Co.*, 487 N.W.2d 807, 811 (Mich. App. 1992) (same); *Diamond v. Huffman*, 667 P.2d 1040, 1042 (Or. App. 1983) (one year slander and libel statute of limitation "establishes the period of limitation for defamation of title actions"); *Gee v Pima County*, 612 P.2d 1079, 1080 (Ariz. App. 1980) ("The majority of the courts that have considered the issue have held that the [one year] statute of limitations for libel governs actions for slander of title.").

Dated: December 29, 2006                    Respectfully submitted,

By: /s/ Michael J. McKeon
Michael J. McKeon (Bar No. 759780)
Brian T. Racilla (Bar No. 473395)
Joshua B. Pond (Bar No. 494722)
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, D.C.  20005
Tel:  (202) 783-5070
Fax:  (202) 783-2331

Counsel for Defendant Semiconductor Energy
Laboratory Company, Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to

electronic service are being served on this 29th day of December, 2006, with a copy of the

foregoing **REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

**PLAINTIFF'S COMPLAINT AND AMENDED COMPLAINT** via the Court's CM/ECF

system per LCvR 5.4.


**Daniel John Healy, Esq.** (**Bar No. 476233**)          Attorneys for Plaintiff International
ANDERSON KILL & OLICK, LLP                  Manufacturing and Engineering
2100 M Street, N.W.                                    Services Company, Ltd.
Suite 650
Washington, D.C.  20037
Tel: (202) 218-0048
Fax: (202) 218-0055

**David A. Einhorn, Esq.**
**John M. O'Connor, Esq.**
ANDERSON KILL & OLICK, LLP
1251 Avenue of the Americas
New York, New York  10020
Tel: (212) 278-1000
Fax: (212) 278-1733



                                                    /s/ Michael J. McKeon_____
                                                    Michael J. McKeon