UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL MANUFACTURING AND ENGINEERING SERVICES COMPANY, LTD.<br><br>Plaintiff,<br><br>v.<br><br>SEMICONDUCTOR ENERGY LABORATORY COMPANY, LTD,<br><br>Defendant. | Case No.: 1:06-CV-01230(JDB)<br><br>**Oral Argument Requested** |

**PLAINTIFF'S SURREPLY MEMORANDUM OF
LAW IN FURTHER OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Daniel J. Healy, Esq. (Bar No. 476233)
ANDERSON KILL & OLICK, LLP
2100 M Street, NW, Suite 650
Washington, DC 20037
Tel: (202) 218-0040
Fax: (202) 218-0055

David A. Einhorn, Esq. (Bar No. CT0001)
John M. O'Connor, Esq. (Bar No. NY0071)
Eugene Lieberstein, Esq. (Bar No. CT0002)
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 278-1000
Fax: (212) 278-1733
Attorneys for Plaintiff

## **TABLE OF CONTENTS**

Page

I. SUMMARY OF ARGUMENT ................................................................................... 1

II. ARGUMENT ............................................................................................................... 2

    A. Congress Has "Executed" The Paris Convention By Enacting The Provisions of The Lanham Act That Adopt The Convention's Unfair Competition Protections ............................................... 2

    B. The Paris Convention Creates a Federal Cause of Action for Unfair Competition ............................................................................. 6

    C. SEL Cites Cases With No Application To The Present Facts ..................... 9

III. CONCLUSION ......................................................................................................... 12

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

BP Chemicals Limited v. Jiangsu Sopo Corporation (Group) Limited,
    429 F. Supp. 2d 1179 (E.D. Missouri 2006) ..................................................... 7, 8

B.P. Chemicals, Ltd. v. Baloun,
    183 F. Supp. 2d 1158 (E.D. Mo. 2000) ............................................................. 5

Toho Co., Ltd. v. Sears, Roebuck & Co.,
    645 F.2d 788 (9th Cir. 1981) ....................................................................passim

General Motors Corp. v. Ignacio Lopez de Arriortua,
    948 F. Supp. 684 (E.D. Mich. 1996) ............................................................. 3, 6

Grupo Gigante SA de CV v. Dallo & Co., Inc.,
    391 F.3d 1088 (9th Cir. 2004) ......................................................................... 11

International Cafe, S.A.L. v. Hard Rock Cafe Intern. (U.S.A.), Inc.,
    252 F.3d 1274 (11th Cir. 2001) ................................................................. 10, 11

International News Service v. Associated Press,
    248 U.S. 215 (1918) ..................................................................................... 4, 9

Litton Sys., Inc. v. Ssangyong Cement Indus. Co., Ltd.,
    Nos. 96-1034, 96-1047, 1997 WL 59360 (Fed. Cir. Feb. 13, 1997) ................. 6

Maison Lazard et Compagnie v. Manfra, Tordella & Brooks, Inc.,
    585 F. Supp. 1286 (S.D.N.Y. 1984) ................................................................. 6

Majorica, S.A. v. Majorica Int'l, Ltd.,
    687 F. Supp. 92 (S.D.N.Y. 1988) ..................................................................... 6

Mannington Mills, Inc. v. Congoleum Corp.,
    595 F.2d 1287 (3d Cir. 1979) ......................................................................... 10

Mattel, Inc. v. MCA Records, Inc.,
    296 F.3d 894 (9th Cir. 2002) .................................................................. 2, 4, 11

Ortman v. Stanray Corp.,
    371 F.2d 154 (7th Cir. 1967) .......................................................................... 10

## TABLE OF AUTHORITIES
### (continued)

Page

In re Rath,
    402 F.3d 1207 (Fed. Cir. 2005)......................................................................... 10, 11

Rousseau v. Brown,
    21 App. D.C. 73, 1903 WL. 18571 (App. D.C. 1903) .......................................... 10

Scimed Life Systems, Inc. v. Medtronic Vascular, Inc., No. Civ. 01-2015 (RJL),
    2006 WL 1102834 (D.D.C. Mar. 31, 2006) ..................................................... 9, 10

Plaintiff International Manufacturing and Engineering Services Company, Ltd. ("IMES" or "Plaintiff") submits the following surreply memorandum in further opposition to the motion of the Defendant Semiconductor Energy Laboratory Company, Ltd. ("SEL" or "Defendant") to dismiss plaintiff's complaint ("SEL's Motion"). This memorandum is limited to addressing arguments relating to the Paris Convention, which were raised for the first time in SEL's Reply Memorandum in Support of It's Motion to Dismiss Plaintiff's Complaint and Amended Complaint ("SEL's Reply").[1]

## I.  SUMMARY OF ARGUMENT

In addition to other bases for federal jurisdiction, this Court has jurisdiction over Plaintiff's claim for unfair competition by misappropriation pursuant to the Paris Convention for the Protection of Industrial Property (the "Paris Convention").

SEL claims that the Paris Convention is not "self-executing" and then argues that it has no application here. However, Congress has "executed" the Paris Convention as it applies to unfair competition claims in the provisions of the Lanham Act and therefore the Paris Convention applies here whether or not it is self-executing. Lanham Act § 44, 15 U.S.C. § 1126. Accordingly, federal courts have jurisdiction over common law claims of unfair competition brought by foreign nationals of countries that are signatories to the Paris Convention. The Paris Convention therefore provides a federal jurisdictional basis for IMES' common law claims alleging unfair competition by misappropriation and injurious falsehood. In addition to providing foreign nationals of

---

[1] While Plaintiff relied upon 28 U.S.C. § 1331 as a jurisdictional basis in its original Complaint, it did not refer to the Paris Convention, which was referred to for the first time in Plaintiff's opposition papers and in its Amended Complaint.

signatory nations access to federal court for their common law unfair competition claims, the Paris Convention also provides an independent cause of action.

Accordingly, this Court has federal question jurisdiction over the claims in this case.

## II.   ARGUMENT

### A.   Congress Has "Executed" The Paris Convention By Enacting The Provisions of The Lanham Act That Adopt The Convention's Unfair Competition Protections

Section 44 of the Lanham Act provides:

(b) Benefits of section to persons whose country of origin is party to convention or treaty

Any person whose country of origin is a party to any convention or treaty *relating to . . . the repression of unfair competition*, to which the United States is also a party, . . . shall be entitled to the benefits of this section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law *in addition to* the rights to which any owner of a mark is otherwise entitled by this chapter.

\*          \*          \*

(h) Protection of foreign nationals against unfair competition

Any person designated in subsection (b) of this section as entitled to the benefits and subject to the provisions of this chapter *shall be entitled to effective protection against unfair competition*, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition.

15 U.S.C. § 1126 (b) and (h) (West 2006) (emphasis added).

As explained by the Ninth Circuit Court of Appeals, Congress enacted §§ 44(b) and (h) of the Lanham Act to execute the unfair competition protections afforded by treaties, including the Paris Convention. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 908 (9th Cir. 2002).

The Lanham Act thus serves as the federal statute "executing" the Paris Convention. Accordingly, federal courts have jurisdiction to determine unfair competition claims brought by foreign plaintiffs that are nationals of the signatory countries. *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 684, 690 (E.D. Mich. 1996):

> As discussed above, section 44(h) provides foreigners with "effective protection against unfair competition." The inclusion of this language is consistent with Congress' concern that it fully implement the Paris Convention, including the Convention's broad prohibition of unfair competition.

Therefore, the Paris Convention provides access to federal courts for Plaintiff's common law unfair competition claims as well as an independent substantive claim. *Cf., Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981) ("*Toho*").

In *Toho*, *supra*, the Ninth Circuit considered a treaty similar in pertinent respects to the Paris Convention: the Friendship, Commerce and Navigation Treaty and Protocol between the United States of America and Japan, April 2, 1953, 4 U.S.T. 2063, T.I.A.S. No. 2863 (the "Friendship Treaty"). The Friendship Treaty required Japanese corporations to be treated at least as favorably as domestic corporations with respect to unfair competition claims. *Id.* at 792. *Toho* held that the "practical effect of section 44 [of the Lanham Act] and this treaty is to provide a federal forum in which Toho can pursue its state claims." *Id.* at 793. Thus, the court proceeded to address the merits of the foreign plaintiff's unfair competition claims, including the plaintiff's claim under the misappropriation branch of unfair competition law, drawn from the United States

Supreme Court's holding in *International News Service v. Associated Press*, 248 U.S. 215 (1918).[2]

The Ninth Circuit, which held in *Toho* that the Friendship Treaty provided a basis for common law unfair competition claims, held in *Mattel* that the Paris Convention also provided a basis for federal jurisdiction over common law claims for unfair competition brought by foreign nationals of signatory countries. *Mattel*, 296 F.3d at 909.[3]

Moreover the Friendship Treaty itself is pertinent to the claims in this case because IMES is a Japanese company seeking protection from unfair competition in the United States courts. Under Arts. 4 and 10 of the Friendship Treaty, Japanese "[n]ationals and companies" shall be accorded national treatment, including access to and "all degrees" of jurisdiction in federal courts, "both in pursuit and in defense of their rights." It further provides that companies like IMES, "not engaged in activities within the [United States]" shall enjoy national treatment. *See* Friendship Treaty at Arts. 4 & 10. Article 10 goes on to specifically provide that the national treatment provision applies "with respect to . . . <u>industrial property of every kind</u>." *See id.* at Art. 10 (emphasis added). The Friendship treaty thus provides a second international

---

[2] On the facts present in *Toho*, the Court held that the plaintiff's claims failed. Of course, the holding on the merits of the claims in that case has no bearing on the analytically prior holding that there was federal subject matter jurisdiction to decide the claims alleged.

[3] Mattel, a domestic corporation, argued that it should be treated the same as a foreign national of a signatory country. The Court agreed with Mattel. The Court then held that, standing in the shoes of a such a foreign national, Mattel was entitled under the Paris Convention to "assert state law claims for unfair competition." 296 F.3d at 909.

agreement upon which this Court has subject matter jurisdiction over the claims in this case.[4]

Returning to the Paris Convention, the same conclusion that was reached in *Toho* also was also reached in *B.P. Chemicals, Ltd. v. Baloun*, 183 F.Supp.2d 1158, 1161-62 (E.D. Mo. 2000). *Baloun* involved a claim brought under the Paris Convention and § 44(h) of the Lanham Act. The Court held:

> Because the Lanham Act does provide at a minimum a federal forum for state law claims of misappropriation of trade secrets to foreign nationals, Baloun and Acetec's motion seeking dismissal of [the foreign company's] Lanham Act claim will be denied.

*Id.* at 1159. The Court further held that, "It is well-settled . . . that the United States accomplished the Paris Convention's directive to assure appropriate legal remedies to foreign nationals by enacting section 44 of the Lanham Act." *Id.* at 1161-62.

The above cases make clear that, at a minimum, the Paris Convention as executed by Congress in section 44 of the Lanham Act affords to foreign nationals of signatory countries the right to assert in federal court common law claims of unfair competition. Here, IMES is a foreign national from Japan, a signatory to the Paris Convention. IMES has alleged common law claims of unfair competition by misappropriation and injurious falsehood. Accordingly, IMES has properly invoked the jurisdiction of this Court under section 1331, federal question jurisdiction -- the interpretation of a United States treaty, the Paris Convention, which was further executed by Congressional action through the Lanham Act, clearly and properly

---

[4] IMES acknowledges that it has not previously invoked the Friendship Treaty. If the Court determines it to be appropriate, IMES will file a Second Amended Complaint expressly asserting the Friendship Treaty as a jurisdictional basis for its claims.

involves federal questions. Accordingly, IMES' common law claims are properly before this Court and this Court has jurisdiction to decide them.

### B. The Paris Convention Creates a Federal Cause of Action for Unfair Competition

While it is clear that the combination of the Paris Convention and the Lanham Act provide a jurisdictional basis for IMES' claims of unfair competition, there appears to be a split in authority as to whether there is also an independent substantive cause of action for unfair competition based upon the Paris Convention.

Numerous courts have recognized that the Paris Convention creates a separate cause of action for unfair competition that may be brought in federal courts. *Litton Sys., Inc. v. Ssangyong Cement Indus. Co., Ltd.*, Nos. 96-1034, 96-1047, 1997 WL 59360 (Fed. Cir. Feb. 13, 1997) (reversing the district court's dismissal of a federal unfair competition claim and stating holding that it had federal jurisdiction over a "federal cause of action that incorporates state law rights and remedies" created by the Paris Convention); *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 684, 688-90 (E.D. Mich. 1996) (refusing to dismiss federal unfair competition claim and stating, "Because the Lanham Act incorporates the Paris Convention's broad prohibition against unfair competition, plaintiffs have stated a claim" by alleging a federal claim for unfair competition); *Majorica, S.A. v. Majorica Int'l, Ltd.*, 687 F. Supp. 92 (S.D.N.Y. 1988) ("a foreign plaintiff may invoke the Paris Convention together with the Lanham Act to assert a federal claim for unfair competition"); *Maison Lazard et Compagnie v. Manfra, Tordella & Brooks, Inc.*, 585 F. Supp. 1286 (S.D.N.Y. 1984) (refusing to dismiss federal unfair competition claim and stating "[t]he Paris Convention . . . assures nationals of [signatory] countries 'effective protection against unfair competition'" and

thus the French plaintiff's "federal cause of action for acts of unfair competition" exists as a valid, independent claim).

The foregoing case law establishes that the Paris Convention in fact creates an independent cause of action for "unfair competition" as alleged in the Amended Complaint. Amended Complaint at ¶¶ 109-115. Each of the above cases involved unfair competition claims, as opposed to claims involving patent or trademark procedure. They each specifically held that an independent cause of action alleging unfair competition in accordance with the Paris Convention (and other like treaties) exists. Thus, the specific cause of action alleged by IMES for unfair competition under the Paris Convention as against "[A]ny act of competition contrary to honest practices in industrial or commercial matters constitutes an act of unfair competition" has been held to exist and to be a claim over which federal courts have jurisdiction. Paris Convention Art. 10*bis.*

In *BP Chemicals Limited v. Jiangsu Sopo Corporation (Group) Limited*, 429 F. Supp. 2d 1179 (E.D. Missouri 2006) ("*Jiangsu*"), the District Court recognized the above cases as well as another line of cases that the court referred to as the "national treatment approach." *Id.* at 1187. As analyzed by the *Jiangsu* court, the difference in the approaches is that under the line of cases cited above, the combination of the Lanham Act and the Paris Convention do in fact provide a foreign national from a signatory nation with substantive rights *in addition to* the substantive rights otherwise provided in the Lanham Act; whereas, under the second line of case representing the "national treatment approach," the same foreign national receives only the substantive

rights that an American citizen would have under the Lanham Act in the absence of a treaty such as the Paris Convention.

Based upon the plain language of both the pertinent Lanham Act provisions and the pertinent Paris Convention provisions concerning unfair competition, it is clear that the more persuasive approach is that the combination of the Paris Convention and the Lanham Act do indeed create additional substantive rights.

As the Court noted in *Jiangsu*:

> The language of § 44(b) of the Lanham Act gives foreign nationals whose countries are parties to treaties rights "in addition to" the rights to which they would otherwise be entitled under the Lanham Act. This "in addition to" language, along with § 44(h), must have been intended to give foreign nationals something more that regular rights under the Lanham Act.

*Id.* at 1188.[5] The Paris Convention provides that there must be protection against unfair competition, defined as "any act of competition contrary to honest practices in industrial or commercial matters." Although recognizing this provision, the decision in *Jiangsu* faltered on the final step of the analysis. Instead of applying the Paris Convention's requirement that dishonest business practices be prohibited as unfair competition, the court in *Jiangsu* stated that "this language is too general to include all possible torts of unfair competition recognized by any state's common or statutory law." *Id.* at 1188. Contradicting its earlier holding, the Court then held that the Paris Convention did <u>not</u> give foreign nationals rights "in addition to" those otherwise provided in the Lanham Act. *Id.* at 1189.

---

[5] While holding that the plain language of the Lanham Act provided treaty rights in addition to those otherwise contained in the Lanham Act, as described in the text the *Jiangsu* court failed to follow through correctly on this analysis.

However, there is no basis for reading language out of a treaty because it is "too general." If "generality" were a basis for nullifying requirements in treaties, statutes, or constitutions, then "equal protection under law," "due process of law," and a host of other requirements described in general terms would be totally without effect. This is especially true in an area such as "unfair" competition, in which, as IMES has pointed out in its prior memoranda of law, the "bottom line" question under United States law is whether the conduct complained of was "fair" on "unfair." The Paris Convention, as executed by the Lanham Act, is part of federal law, and when faced with a requirement stated in general language the obligation is not simply to read it out of the law, but rather to interpret the law and apply it to the facts at hand. In this case, there is ample precedent, both in the decisions of the United States Supreme Court and the decisions of the states, that give more detailed meaning to such general words and phrases as "unfair competition," "honest practices," etc.[6]

Accordingly, IMES' second cause of action in the Amended Complaint, for unfair competition under the Paris Convention, should not be dismissed.

C.  **SEL Cites Cases With No Application To The Present Facts**

SEL cites a number of cases that involve causes of action other than unfair competition or which actually support IMES' position. SEL cites *Scimed Life Systems, Inc. v. Medtronic Vascular, Inc.*, No. Civ. 01-2015 (RJL), 2006 WL 1102834,

---

[6] Here, IMES relies upon precedent from the United States Supreme Court (*e.g.*, *International News*), as well as state law cases interpreting the common law of unfair competition. In *Jiangsu,* a concern stated was that giving substantive effect to the language in the Paris Convention, would "incorporate all fifty states' laws into the Lanham Act." *Id.* at 1189. This concern is misplaced, especially here where IMES is relying upon a cause of action created by the United States Supreme Court. With respect to common law claims, as opposed to statutory claims, the forum court will apply common law using the decisions of other states and jurisdictions for guidance – the same as would be done for American nationals.

*6n.6 (D.D.C. Mar. 31, 2006), for the proposition that the Paris Convention is not self-executing.  See SEL's Reply at 12.  SEL fails to point out that *Scimed* states, in the very footnote SEL cites, that Congress *did* execute the portion of the Paris Convention at issue in that case.  *Id.* (stating "Congress executed Article 4 of the Paris Convention first with R.S. 4887, and then with Section 119…").  Thus, regardless of whether or not the Paris Convention is self-executing, the portion of the Paris Convention at issue did apply with the force of law in the United States – just as does the portion that IMES relies upon in the present case.

SEL also cites *Rousseau v. Brown*, 21 App. D.C. 73, 1903 WL 18571 (App. D.C. 1903), for the proposition that the Paris Convention is not self-executing.  SEL's Reply at 12.  That case involved a French national who claimed that his filing of a patent application in the French patent office entitled him to have the same rights as if that application had been filed in the USPTO on the same date, even though no such application had been filed in the USPTO on that date.  *Rousseau*, 21 App. D.C. 73.  Accordingly, *Rousseau* involved a foreign party attempting to parlay a foreign filing into a USPTO filing and/or priority date.  Second, and importantly, the case also held that an act of Congress that touches upon the subject matter of the Paris Convention, such as the Lanham Act, executes that portion of the of the convention.

SEL cites a number of other inapposite cases from other jurisdictions for the proposition that the Paris Convention is not self-executing.  See SEL's Reply at 12 citing:  *In re Rath*, 402 F.3d 1207 (Fed. Cir. 2005); *International Cafe, S.A.L. v. Hard Rock Cafe Intern. (U.S.A.), Inc.*, 252 F.3d 1274 (11th Cir. 2001); *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287 (3d Cir. 1979) and *Ortman v. Stanray Corp.*, 371

F.2d 154 (7th Cir. 1967). As indicated above, it does not matter whether the Paris Convention is self-executing, since it has been executed by the Lanham Act for purposes of claims of unfair competition. In *In re Rath*, the court held that "[t]here is no question but that Congress generally intended section 44 of the Lanham Act to implement the Paris Convention. *In re Rath*, 402 F.3d at 1211. Similarly, in *International Cafe*, the Eleventh Circuit held that section 44 of the Lanham Act *does* incorporate, to some degree, the Paris Convention. *International Cafe*, 252 F.3d at 1277 -1278.

The *Grupo Gigante SA de CV v. Dallo & Co., Inc.*, 391 F.3d 1088 (9th Cir. 2004), and *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002), cases cited by SEL are not contrary to plaintiff's position regarding federal question jurisdiction. In fact, *Mattel* cites with approval that same court's ruling in *Toho* that Lanham Act subsection 44(h) provides a federal forum in which a foreign national can bring a common law unfair competition claim. *Mattel*, 296 F.3d at 907.

## III.  CONCLUSION

Based on the foregoing and on the arguments submitted in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, Plaintiff IMES respectfully submits that Defendant SEL's motion to dismiss the Complaint should be denied in its entirety, together with such further relief as the Court deems just and equitable.

Dated:  January 11, 2007

Respectfully submitted,

By:   /s/ Daniel J. Healy
Daniel J. Healy, Esq. (Bar No. 476233)
ANDERSON KILL & OLICK, LLP
2100 M Street, NW, Suite 650
Washington, DC  20037
Tel: (202) 218-0040
Fax: (202) 218-0055

David A. Einhorn, Esq. (Bar No. CT0001)
John M. O'Connor, Esq. (Bar No. NY0071)
Eugene Lieberstein, Esq. (Bar No. CT0002)
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York  10020
Tel:  (212) 278-1000
Fax:  (212) 278-1733

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on January 11, 2007, I electronically filed the Plaintiff's Surreply Memorandum of Law In Further Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record in this matter who are registered on the CM/ECF.

> Michael J. McKeon, Esq.
> Joshua B. Pond, Esq.
> Brian T. Racilla, Esq.
> Fish & Richardson, P.C.
> 1425 K Street, NW
> Washington, D.C. 20005

Counsel for Defendant Semiconductor Energy Laboratory Co., Ltd.

By:  /s/ Daniel J. Healy
     Daniel J. Healy, Esq. (Bar No. 476233)