UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INT'L MFG. & ENG'G SERVS. CO.,

    Plaintiff,

    v.

SEMICONDUCTOR ENERGY LAB. CO.,

    Defendant.

Civil Action No. 06-1230 (JDB)

MEMORANDUM OPINION

Plaintiff International Manufacturing and Engineering Services Company, Ltd. ("IMES") filed this action against defendant Semiconductor Energy Laboratory Company, Ltd. ("SEL") on July 7, 2006. IMES's amended complaint alleges claims of unfair competition under both the common law and the Paris Convention for the Protection of Industrial Property, Mar. 20, 1883 (as revised on July 14, 1967), 21 U.S.T. 1583, 24 U.S.T. 2140, as well as a common-law tort claim for injurious falsehood. Now pending before the Court are SEL's motion to dismiss, which raises challenges based on lack of subject-matter and personal jurisdiction as well as failure to state a claim, and IMES's motion for a stay of proceedings. For the reasons explained herein, the Court concludes that it has no personal jurisdiction over SEL and therefore dismisses the complaint in its entirety.[1]

---

[1] The Supreme Court has clarified that in "appropriate circumstances . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S. Ct. 1184, 1191 (2007); see also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 588 (1999) (holding that district court does not abuse its discretion when addressing "straightforward personal jurisdiction issue" before more

**BACKGROUND**

Both plaintiff and defendant in this action are Japanese corporations that have filed applications with the United States Patent and Trademark Office ("PTO") seeking patents for a particular type of organic light emitting device ("OLED").[2] As described by plaintiff, the technology at issue enables an OLED to attain and exceed 100% quantum efficiency through the arrangement of organic layers in a unique, stacked structure. Am. Compl. ¶¶ 16-19. IMES alleges that this novel stacking technology was developed by Dr. Junji Kido, a professor at Yamagata University in Japan, in the course of his work as an independent contractor for IMES. Id. ¶¶ 13-16. As part of his research, Dr. Kido also allegedly discovered the revolutionary concept of "multi-photon emission" -- the theoretical underpinning that made possible the development of the stacked OLED structure. Id. ¶ 18.

According to the complaint, the following course of events gave rise to plaintiff's claims. Dr. Kido presented a lecture about OLEDs entitled "Where We Are and Where We Go" at the European Conference on Organic Electronics and Related Phenomena 2001, held in Potsdam, Germany on November 18-21, 2001. Id. ¶¶ 26-27. As part of this lecture, Dr. Kido revealed the concept of multi-photon emission and explained that it promised to increase the brightness and lifetime of OLED devices. Id. ¶¶ 34-38. In the audience was a professor named Dr. Tetsuo

---

complex question of subject-matter jurisdiction); Hwang Geum Joo v. Japan, 413 F.3d 45, 48 (D.C. Cir. 2005). This Court therefore chooses to address the straightforward question of personal jurisdiction over SEL before reaching the merits of defendant's more complicated arguments based on subject-matter jurisdiction.

[2]The complaint explains that OLEDs are "devices composed of organic layers connected to a transparent anode and a cathode so that light will be emitted from the device when connected to a source of electrical energy." Id. ¶ 12. OLEDs are primarily used as a source of back-up lighting for various electrical products. Id.

Tsutsui from Kyushu University in Japan.  Id. ¶¶ 28, 39.  Dr. Tsutsui, who is himself an accomplished OLED researcher, id. ¶ 30, challenged Dr. Kido on the concept of multi-photon emission during a public question-and-answer session that followed Dr. Kido's lecture, id. ¶¶ 40-41.  At the end of the question-and-answer session, Dr. Kido raised the concept of stacking.  Id. ¶ 42.  A conversation about multi-photon emission and stacking continued between Dr. Kido, Dr. Tsutsui, and other scientists for hours after the presentation.  Id. ¶¶ 43-47.  During this conversation, "Tsutsui continued to press Kido . . . for details and proof that 'Multi-Photon Emission' could be achieved."  Id. ¶ 45.  "In the excitement to dispel the skepticism of his peers regarding the scientific feasibility of Kido's novel ideas and concepts, Dr. Kido answered Tsutsui's questions . . . ."  Id. ¶ 84.  As IMES alternatively describes the situation, "Kido was induced into disclosing certain details [about the stacking arrangement], when Tsutsui pressed him for details and explanations after his presentation had concluded."  Id. ¶ 47.

On December 4, 2002, defendant SEL filed patent application serial number 10/309,843 (hereinafter "SEL '843") with the PTO, id. ¶ 49; other derivative patent applications by SEL followed, id. ¶ 50.  The SEL '843 application listed Dr. Tsutsui and others as the inventors of the OLED stacking technology described therein.  Id. ¶¶ 119, 122.  Plaintiff IMES alleges that SEL knew or should have known that, in fact, "Kido was the inventor of the novel concepts and ideas embodied in" the SEL '843 patent application and the derivative patent applications.  Id. ¶¶ 51, 52. On March 1, 2003, IMES filed its own patent application with the PTO, identified by serial number 10/393,952 (hereinafter "IMES '952"), which listed Dr. Kido and others as joint inventors

of the pertinent OLED technology.[3]  Id. ¶ 22.  Both the SEL '843 and IMES '952 applications are still pending before the PTO.

IMES now alleges that it has been harmed by the filing and publication of the SEL '843 patent application and the derivative SEL applications because those applications "have placed a cloud over IMES ownership of [the stacking technology] and caused the diminution in value of Plaintiff's Invention and of Plaintiff corporation as a whole."  Id. ¶ 73; see also id. ¶ 72.  The amended complaint asserts an unfair competition claim under the common law and the Paris Convention based on the alleged "misappropriation" of Dr. Kido's ideas by Dr. Tsutsui during the question-and-answer session and subsequent discussion at the 2001 European conference.  IMES also asserts an injurious falsehood claim based on the statement in the SEL '843 patent application that Dr. Tsutsui and others were the inventors of the OLED technology described therein.

Defendant SEL has filed a motion to dismiss for lack of subject-matter and personal jurisdiction pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure.  SEL also argues that plaintiff has failed to state any claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  IMES has filed its own motion requesting that the Court stay this action until the PTO has made a determination regarding the still-pending patent applications filed by SEL.  The Court concludes, for the reasons explained below, that it lacks personal jurisdiction over SEL and therefore declines to reach the remainder of defendant's myriad arguments for dismissal.

## STANDARD OF REVIEW

Plaintiff bears the burden of establishing personal jurisdiction over the defendant.  In order

---

[3]IMES also filed patent applications in Japan.  The first -- Patent Application Number 2002-86599 -- was filed on March 26, 2002; the second -- Patent Application No. 2003-70135 -- was filed on March 13, 2003.  Am. Compl. ¶¶ 21, 23.

to meet that burden under Rule 12(b)(2), a plaintiff must allege "specific facts upon which personal jurisdiction may be based," Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998), and cannot rely on conclusory allegations, see GTE New Media Servs., Inc. v. Ameritech Corp., 21 F. Supp. 2d 27, 36 (D.D.C. 1998), remanded on other grounds sub nom. GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000). When considering challenges to personal jurisdiction, the Court need not treat all of plaintiff's allegations as true and "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000); see also Novak-Canzeri v. Al Saud, 864 F. Supp. 203, 206 (D.D.C. 1994) ("[T]he Court must accept Plaintiff's claims as true in ruling on a 12(b)(2) motion, unless they are directly contradicted by an affidavit . . . .").

## ANALYSIS

Plaintiff has described defendant SEL as "a Japanese corporation with a principal place of business at 398 Hase, Atsugi-shi, Kanagawa 243-0036 Japan." Am. Compl. ¶ 3. IMES has asserted only one basis for personal jurisdiction over SEL -- the federal patent long-arm statute, 35 U.S.C. § 293 (2000). Am. Compl. ¶ 4. Section 293 provides in full:

> Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

SEL argues that § 293 is inapplicable because it is not a "patentee" within the meaning of

the statute. Instead, SEL contends, it is an <u>applicant</u> for a patent. The Court agrees. The plain language of § 293 limits the exercise of personal jurisdiction to a foreign "patentee." The definitions provision of the Patent Code states that "[w]hen used in this title unless the context otherwise indicates . . . [t]he word 'patentee' includes not only the patentee <u>to whom the patent was issued</u> but also the successors in title to the patentee." 35 U.S.C. § 100(d) (2000) (emphasis added). The generally applicable definition of the word "patentee" in Title 35 thus presupposes the issuance of a patent, either to the patentee or to the patentee's predecessor in title, as distinguished from the mere filing of a patent application.

      The statutory language used throughout Title 35 further supports the distinction between patents and patentees on the one hand and patent applications and applicants on the other. For example, the provisions governing applications for patents and the examination of patent applications repeatedly refer to the "applicant" and not at all to a "patentee." <u>See, e.g.</u>, <u>id.</u> §§ 111, 112, 113, 114, 115, 119, 122, 131, 132, 133, 134, 135. In other statutory sections, Congress has directly contraposed patentees and applicants. Most notably, § 135 states that "[w]henever an application is made for a patent which . . . would interfere with any pending application, or with any unexpired patent, an interference may be declared and the Director [of the PTO] shall give notice of such declaration to the applicants, or applicant and patentee, as the case may be." The structure of this sentence makes plain that when two pending applications are in conflict, it is the "applicants" who are notified of an interference, but when an application conflicts with an unexpired <u>patent</u>, an "applicant and <u>patentee</u>" are the parties that must be provided with notice. <u>See</u> § 135 (emphasis added); <u>see also</u> § 104 (governing how "an applicant for a patent, or a patentee" may establish in PTO or court proceedings the date of an invention made abroad).

Finally, the use of the word "patentee" within the context of § 293 is consistent with the definition found in § 100(d) -- a definition that assumes the issuance of a patent and hence does not encompass patent applicants.  See § 100 (setting out definitions as "used in this title unless the context otherwise indicates").  In particular, the patent long-arm statute provides for service upon a patentee "of proceedings affecting the patent or rights thereunder" -- language which suggests that a patent has already been issued.  § 239 (emphasis added).

Plaintiff argues nonetheless that the word "patentee" must be read to encompass applicants to whom patents have not yet been issued in the context of a jurisdictional statute like § 293 because a foreign defendant who has filed a patent application with the PTO has purposefully availed itself of the laws of the United States.  IMES relies upon Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd., 877 F.2d 1003 (D.C. Cir. 1989) (en banc), which explained that "due process would not have inhibited the district court's assertion of personal jurisdiction" over the patent-owning foreign defendant because "[b]y registering a patent in the [PTO], a party residing abroad purposefully avails itself of the benefits and protections patent registration in this country affords."  Id. at 1009 (citing World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)).  IMES also cites Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343 (Fed. Cir. 2002), which upheld the exercise of personal jurisdiction over a foreign patentee pursuant to a Kansas long-arm statute because "obtaining . . . a patent is a meaningful contact with the United States" that satisfies due process.  Id. at 1353.

In seizing upon the principle of purposeful availment as a basis for jurisdiction, IMES overlooks the distinction between a source of "authorization for service of summons on the defendant," Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) -- which here

takes the form of the federal patent long-arm statute -- and the constitutional limitation on the exercise of personal jurisdiction embodied in the Due Process Clause. See, e.g., Deprenyl Animal Health, Inc., 297 F.3d at 1349 ("[B]efore a federal court can exercise personal jurisdiction over a defendant in a federal question case, the court must determine whether an applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and whether the exercise of jurisdiction would satisfy the requirements of due process." (emphasis added)). See generally Omni Capital Int'l, 484 U.S. at 104; Mwani v. bin Laden, 417 F.3d 1, 8 (D.C. Cir. 2005).  While some long-arm statutes (for example, the Kansas long-arm statute applied in Deprenyl Animal Health, Inc., see 297 F.3d at 1350) are coextensive with the limits of due process, § 293 is more restrictive in its reach. Thus, the cases cited by plaintiff explain why the exercise of personal jurisdiction over a foreign patentee, pursuant to § 293 or otherwise, is consistent with the Constitution, but they do not obviate the requirement under § 293 that the defendant actually be a "patentee."

      Plaintiff makes one additional argument for the exercise of personal jurisdiction over SEL. IMES contends that the reference in § 293 to "proceedings affecting the patent or rights thereunder" extends the reach of the statute to all claims "alleging that plaintiff owns the patent rights alleged by the defendant," and that somehow its claims fit within this description. Pl.'s Opp'n to Mot. to Dismiss at 4. IMES again cites Nat'l Patent Dev. Corp., this time for the D.C. Circuit's holding that "§ 293 authorizes the assertion of personal jurisdiction by the United States District Court for the District of Columbia over a nonresident patentee in a suit over patent ownership." 877 F.2d at 1010 (emphasis added). In reaching this result, the en banc court overruled a panel decision that, constrained by then-controlling precedent, had construed § 293 to

authorize suits only if "the complaint shows that the court will be obliged to resolve an issue of patent law." Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd., 865 F.2d 353, 357 (D.C. Cir.), overruled by Nat'l Patent Dev. Corp., 877 F.2d 1003, 1007 (D.C. Cir. 1989) (en banc).

With this argument, IMES has conflated two different limiting phrases found in § 293. The first phrase requires the defendant to be a "patentee not residing in the United States"; the second requires the action to "affect[] the patent or rights thereunder." § 293. The D.C. Circuit in Nat'l Patent Dev. Corp. was clarifying the scope of the second phrase when it explained that a "suit over patent ownership surely respects or affects rights under a patent." 877 F.2d at 1007. The court of appeals did not purport to analyze the meaning of "patentee" in its opinion. If anything, as this Court has noted above, the statutory limitation that a proceeding must affect "the patent or rights thereunder" reinforces this Court's reading of "patentee" as referring to an entity to which a patent was in fact issued or later assigned. See also id. at 1008 & n.7 (reviewing legislative history of § 293, which includes congressional references to "foreign patent owners" and "foreign owners of United States patents"). Moreover, it is difficult to understand why, to use plaintiff's own words, a patent applicant should be considered to have "patent rights" for purposes of § 293 prior to the issuance of any patent.

To summarize, § 293 provides personal jurisdiction over a foreign "patentee." This Court holds that an applicant for a patent is not encompassed within the meaning of "patentee" for purposes of § 293. According to the complaint, although defendant has filed the SEL '843 application and derivative applications with the PTO, the PTO has not yet issued the patents therefor. Thus, SEL is not a patentee within the meaning of § 293, and this Court lacks personal jurisdiction over it.

**CONCLUSION**

For the reasons explained herein, the Court lacks personal jurisdiction over defendant.  A separate order dismissing the complaint without prejudice pursuant to Rule 12(b)(2) is issued herewith.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Dated:  July 16, 2007